No. 17-10812

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

DAVIDE M. CARBONE,

*Plaintiff-Appellee*,

v.

CABLE NEWS NETWORK, INC.,

*Defendant-Appellant*.

_____

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

THE HONORABLE ORINDA D. EVANS
CIVIL No. 1:16-CV-01720-ODE

---

**APPELLANT'S OPENING BRIEF**

---

Charles D. Tobin
BALLARD SPAHR, LLP
1909 K Street, NW
12th Floor
Washington, DC
20006-1157
Tel: (202) 661-2218

*Attorney for Appellant Cable News Network, Inc.*

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. App. P. 26 and 11th Cir. R. 26.1-1 and 26.1-2, Defendant-Appellant Cable News Network, Inc. submits the following complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

Cable News Network, Inc.

Carbone, Davide M.

Evans, Orinda D.

Evans, Stacey Godfrey

Historic TW Inc.

Holland & Knight LLP

L. Lin Wood, P.C.

S.G. Evans Law, LLC

Time Warner Inc. (stock ticker "TWX")[1]

Tobin, Charles D.

---

[1] No entity or person owns more than 10% of Time Warner Inc.'s issued outstanding common stock.

C-1

Turner Broadcasting System, Inc.

Wood, L. Lin

No entity or person owns more than 10% of Time Warner Inc.'s issued

outstanding common stock.

Respectfully submitted,

_s/ Charles D. Tobin_
Charles D. Tobin
BALLARD SPAHR, LLP
1909 K Street, NW
12th Floor
Washington, DC 20006-1157
Tel: (202) 661-2218

*Counsel for Appellant CNN*

## REQUEST FOR ORAL ARGUMENT

Appellant Cable News Network, Inc., ("CNN") respectfully requests oral argument. This case involves a question of first impression in the Eleventh Circuit regarding the applicability in federal court, in a federal diversity action, of the Georgia antiSLAPP law, as amended in 2016, OCGA § 9-11-11.1 (2016). The majority of federal circuits reviewing the issue, as this Court recently noted, reasonably have decided that antiSLAPP laws apply in federal courts. This case presents this Court with its opportunity to decide whether to join the majority of these circuits.

Moreover, this case involves journalism by a news media company operating in Georgia whose First Amendment rights have been challenged by an out-of-state plaintiff, in a matter of the utmost public concern. The novelty and import of these issues indicate that oral argument may aid this Court in its consideration of this appeal.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND  CORPORATE DISCLOSURE STATEMENT........................................................................1

REQUEST FOR ORAL ARGUMENT ................................................................i

Jurisdictional Statement ................................................................................1

Statement of the Issues..................................................................................3

Statement of the Case ....................................................................................4

Summary of the Argument............................................................................11

Argument......................................................................................................13

I.  Georgia's antiSLAPP law applies in this federal diversity action, and the district court erred in declining to apply it. ..................................15

A.  UNDER SHADY GROVE, THE COURT ASKS WHETHER THE FEDERAL RULE CONTROLS AND WHETHER ITS APPLICATION MAY ENCOURAGE FORUM SHOPPING..............................................................................18

B.  THE COURT SHOULD OVERRULE THE DISTRICT COURT'S ANALYSIS OF THE "PLAUSIBILITY" AND "PROBABILITY" STANDARDS. ..............................26

C.  THE COURT HAS FORESHADOWED ITS WILLINGNESS TO APPLY THE AMENDED GEORGIA ANTISLAPP LAW. ...................................29

II.  Georgia's antiSLAPP law requires striking Carbone's claim, and the district court erred in declining to strike it. ..................................30

A.  GEORGIA'S ANTISLAPP LAW APPLIES BECAUSE CARBONE'S CLAIM THREATENS CNN'S EXERCISE OF ITS CONSTITUTIONAL RIGHT OF FREE SPEECH. ..............................................................................31

B.  CARBONE HAS FAILED TO ESTABLISH A PROBABILITY THAT HE WILL PREVAIL, AND THEREFORE HIS DEFAMATION CLAIM MUST BE STRICKEN......32

III.  Carbone failed to sufficiently plead his defamation claim, and the district court should have granted the motion to dismiss. .........................44

A.  CARBONE FAILED TO SUFFICIENTLY PLEAD FALSITY, AND SO HIS COMPLAINT SHOULD BE DISMISSED.................................45

B.  CARBONE FAILED TO PLEAD THAT ANY OF THE CHALLENGED STATEMENTS "CONCERNS" HIM, AND SO HIS COMPLAINT SHOULD BE DISMISSED. ..............................................................................50

C.   CARBONE FAILED TO SUFFICIENTLY PLEAD FAULT IN PUBLISHING THE CHALLENGED STATEMENTS, AND SO HIS COMPLAINT SHOULD BE DISMISSED. ................................................................................51

D.   AS THE DISTRICT COURT CORRECTLY FOUND, THE STATEMENTS OF OPINION IN CNN'S REPORTING ARE NOT ACTIONABLE................................53

Conclusion ............................................................................54

CERTIFICATE OF COMPLIANCE .......................................................1

CERTIFICATE OF SERVICE .............................................................1

ADDENDUM ...........................................................................2

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

FEDERAL CASES

*Abbas v. Foreign Policy Group, LLC*,

    783 F.3d 1328 (D.C. Cir. 2015)................................................................2, 26, 44

*Adelson v. Harris*,

    774 F.3d 803, 809 (2d Cir. 2014) .........................................................22, 24, 25

*AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*,

    508 F.3d 995 (11th Cir. 2007) ........................................................................10

*Amadou v. Hawkins & Parnell, LLP*,

    445 F. App'x. 157 (11th Cir. 2011) ...................................................................5

*Bell Atlantic v. Twombly*,

    550 U.S. 544 (2007)..............................................................................5, 26, 45

*Block v. Tanenhaus*,

    815 F.3d 218 (5th Cir. 2016) ..............................................................22, 23, 28

*Bose Corp. v. Consumers Union of U.S., Inc.*,

    466 U.S. 485 (1984)........................................................................10, 31, 45

*Burke v. Air Serv. Intern, Inc.*,

    685 F.3d 1102 (D.C. Cir. 2012).......................................................................26

*Citizens United v. Fed. Election Comm'n*,

    558 U.S. 310 (2010)........................................................................................13

*Cohen v. Beneficial Industrial Loan Corp.*,

    337 U.S. 541 (1949)..................................................................................1, 23

*Cuba v. Pylant*,

    814 F.3d 701 (5th Cir. 2016) ................................................................22, 31

*Dilworth v. Dudley*,

    75 F.3d 307 (7th Cir. 1996) ...........................................................................38

*Erie R. Co. v. Tompkins*,

    304 U.S. 64 (1938).................................................................................passim

*Farah v. Esquire Magazine*,

    736 F.3d 528 (D.C. Cir. 2013)..............................................................13, 17

*Ferrero v. Associated Materials, Inc.*,

    923 F.2d 1441 (11th Cir. 1991) ....................................................................31

*Gardner v. Martino*,

    563 F.3d 981 (9th Cir. 2009) ..................................................................22, 28

*Gasperini v. Ctr. For Humanities, Inc.*,

    518 U.S. 415 (1996)........................................................................20, 24, 25

*Glob. Quest, LLC v. Horizon Yachts, Inc.*,

    849 F.3d 1022 (11th Cir. 2017) ....................................................................18

*Godin v. Schencks*,

    629 F.3d 79 (1st Cir. 2010)....................................................................passim

*Griffin Industries, Inc. v. Irvin*,

496 F.3d 1189 (11th Cir. 2007) ...........................................................35

*Hanna v. Plumer*,

380 U.S. 460 (1965)...............................................................19, 20, 24

*Harte-Hanks Comm. v. Connaughton*,

491 U.S. 657 (1989)...........................................................................52

*Henderson v. von Loewenfeldt*,

No. CV 414-187, 2015 WL 409656 (S.D. Ga. Jan 29, 2015) ...........................31

*Henry v. Lake Charles Am. Press, LLC*,

566 F.3d 164 (5th Cir. 2009) ........................................................1, 22

*Horowitch v. Diamond Aircraft Indus., Inc.*,

645 F.3d 1254 (11th Cir. 2011) ...........................................................18

*Horsley v. Feldt*,

304 F.3d 1125 (11th Cir. 2002) ...........................................................17

*Jones v. Heyman*,

888 F.2d 1328 (11th Cir. 1989) .............................................10, 31, 45

*Jones v. United Space All., LLC*,

494 F.3d 1306 (11th Cir. 2007) ...........................................................24

*Kahl v. Bureau of Nat'l Affairs, Inc.*,

856 F.3d 106 (D.C. Cir. 2017) (Kavanaugh, J.) ...................................14

*Konrath v. Vance*,

    No. 1:16-CV-02784-LJM-DKL, 2017 WL 1382778 (S.D. Ind. Apr. 18,

    2017) ................................................................................................22

*Lott v. Levitt*,

    556 F.3d 564 (7th Cir. 2009) ...............................................38, 39, 40

*Makaeff v. Trump Univ., LLC*,

    736 F.3d 1180 (9th Cir. 2013) (en banc) (Wardlaw, J., concurring)

    ("*Makaeff II*").............................................................................passim

*Michel v. NYP Holdings, Inc.*,

    816 F.3d 686 (11th Cir. 2016) ........................................35, 36, 45, 53

*Milam v. State Farm Mut. Auto. Ins. Co.*,

    972 F.2d 166 (7th Cir. 1992) ..............................................................27

*Monge v. Madison County Record, Inc.*,

    802 F. Supp. 2d 1327 (N.D. Ga. 2011).........................................36, 39

*New York Times Co. v. Sullivan*,

    376 U.S. 254 (1964)............................................................13, 17, 42

*Philadelphia Newspapers, Inc. v. Hepps*,

    475 U.S. 767 (1986)..............................................................35, 36

*Provisional Gov't of Rep. New Afrika v. Am. Broad. Cos.*,

    609 F. Supp. 104 (D.D.C. 1985)........................................................44

*Royalty Network, Inc. v. Harris*,

756 F.3d 1351 (11th Cir. 2014) ..........................................................1, 16, 17, 29

*S & Davis Int'l, Inc. v. The Republic of Yemen*,

218 F.3d 1292 (11th Cir. 2000) ..................................................................10, 45

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,

559 U.S. 393 (2010)...................................................................................passim

*Smith v. LePage*,

834 F.3d 1285 (11th Cir. 2016) .........................................................................1

*Southard v. Forbes, Inc.*,

588 F.2d 140 (5th Cir. 1979) ......................................................................13, 16

*Stewart v. Baldwin County Bd. of Educ.*,

908 F.2d 1499 (11th Cir. 1990) .........................................................................2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

551 U.S. 308 (2007)...........................................................................................30

*Thornburg v. Gingles,*

478 U.S. 30 (1986)............................................................................................10

*Time, Inc. v. McLaney*,

406 F.2d 565 (5th Cir. 1969) ......................................................................13, 17

*Tobinick v. Novella*,

848 F.3d 935 (11th Cir. 2017) .........................................................14, 17, 29, 30

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*,

    190 F.3d 963 (9th Cir. 1999) ................................................22, 26, 28

*Underwager v. Salter*,

    22 F.3d 730 (7th Cir. 1994) ..............................................................40

*United States v. Crawford*,

    407 F.3d 1174 (11th Cir. 2005) .......................................................10

*Walker v. Armco Steel Corp.*,

    446 U.S. 740 (1980)....................................................................18, 19

*Williams v. Sec'y, U.S. Dep't of Homeland Sec.*,

    741 F.3d 1228 (11th Cir. 2014) .................................................10, 30

*Xiaoyun Lucy Lu v. AirTran Airways, Inc.*,

    631 F. App'x 657 (11th Cir. 2015).........................................33, 42, 45

**OTHER CASES**

*Berryhill v. Georgia Community Support & Solutions, Inc.*,

    638 S.E.2d 278 (Ga. 2006) ........................................................15, 31

*Brewer v. Rogers*,

    439 S.E.2d 77 (Ga. Ct. App. 1993), *cert. denied* (Ga.), *cert denied*, 512

    U.S. 1222 (1994)..............................................................................52

*Cox Enterprises, Inc. v. Thrasher*,

    442 S.E.2d 740 (Ga. 1994) ..............................................................35

*Fiske v. Stockton*,

    320 S.E.2d 590 (Ga. Ct. App. 1984)...........................................................42, 43

*Gast v. Brittain*,

    589 S.E.2d 63 (Ga. 2003) .................................................................................43

*Lawton v. Georgia Television Co.*,

    456 S.E.2d 274 (Ga. Ct. App. 1995)...........................................................40, 41

*Lucas v. Cranshaw*,

    659 S.E.2d 612 (Ga. Ct. App. 2008)................................................................36

*Mathis v. Cannon,*

    573 S.E.2d 376 (2002) ....................................................................................42

*McCracken v. Gainesville Tribune, Inc.*,

    246 S.E.2d 360 (Ga. Ct. App. 1978)................................................................41

*Morton v. Stewart*,

    266 S.E.2d 230 (Ga. Ct. App. 1980)...........................................................40, 41

*Pillsbury Co. v. Milky Way Productions*,

    1981 U.S. Dist. LEXIS 17722 (N.D. Ga. Dec. 24, 1981) ...............................43

*Rogers v. Dupree*,

    340 Ga.App. 811 (Ga. Ct. App. 2017) (Barnes, J., concurring and

    dissenting) ........................................................................................................28

*Terrell v. Georgia Television Co.*,

    449 S.E.2d 897 (Ga. Ct. App. 1994)....................................................52

*Torrance v. Morris Publ'g Grp.*,

    656 S.E.2d 152 (Ga. Ct. App. 2007)....................................................51

**FEDERAL STATUTES**

28 U.S.C. § 1291 ..........................................................................................1

28 U.S.C. § 1332 ..........................................................................................1

28 U.S.C. § 2072 ........................................................................................20

**OTHER STATUTES**

La. Code Civ. Proc. Ann. Article 971 F.(1)(d) .........................................32

OCGA § 9-11-11.1...............................................................................passim

OCGA § 51-5-6..........................................................................................36

OCGA § 51-5-7..........................................................................................40

**RULES**

Cal. C. Civ. P. § 425.16 ................................................................21, 28, 32

Fed. R. Civ. P. 4 ...........................................................................................2

Fed. R. Civ. P. 11 ................................................................................16, 29

Fed. R. Civ. P. 12(b)(6)......................................................................passim

Fed. R. Civ. P. 56 ...............................................................................passim

**CONSTITUTIONAL PROVISIONS**

First Amendment..................................................................................passim

Seventh Amendment ................................................................30

U.S. Constitution..........................................................18, 30, 42

**OTHER AUTHORITIES**

9 Moore's Federal Practice ¶ 110.25 ........................................2

Restatement (Second) of Torts § 558 (1977)............................42

## Jurisdictional Statement

This is a defamation action under Georgia law. The district court had subject-matter jurisdiction under 28 U.S.C. § 1332 as the parties—Plaintiff Davide M. Carbone and Defendant Cable News Network, Inc. ("CNN")—are citizens of different states, and the amount in controversy exceeds $75,000.

This Court has appellate jurisdiction under 28 U.S.C. § 1291, pursuant to the collateral order doctrine, because this appeal seeks review of the district court's denial of CNN's antiSLAPP Motion to Strike Pursuant to OCGA § 9-11-11.1, ECF No. 5, and the order from which the appeal is taken erroneously deprives CNN of the protection conferred by the statute. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949); *Royalty Network, Inc. v. Harris*, 756 F.3d 1351 (11th Cir. 2014) (order denying an antiSLAPP motion immediately appealable under collateral order doctrine); *Henry v. Lake Charles Am. Press, LLC.*, 566 F.3d 164, 181 (5th Cir. 2009) (same).

Additionally, this Court has pendent jurisdiction over the district court's denial of CNN's Alternative Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 5, because the motion to dismiss is "inextricably intertwined" with the antiSLAPP motion. *See Smith v. LePage*, 834 F.3d 1285, 1292 (11th Cir. 2016) (considering denial of a Rule 12(b)(6) motion because it involved "essentially the 'same facts'" as the related appeal from a denial of

qualified and official immunity); *Stewart v. Baldwin County Bd. of Educ.*, 908 F.2d 1499, 1509 (11th Cir. 1990) ("[p]endent jurisdiction is properly exercised over non-appealable decisions of the district court when the reviewing court already has jurisdiction over one issue in the case"); *see also Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1337 (D.C. Cir. 2015) (dismissing the defamation suit on 12(b)(6) grounds after declining to apply D.C.'s antiSLAPP law); 9 Moore's Federal Practice ¶ 110.25 (noting that "once a case is lawfully before a court of appeals, it does not lack power to do what plainly ought to be done").

The district court entered its order denying CNN the protections of Georgia's antiSLAPP law and denying CNN's Alternative Motion to Dismiss on February 15, 2017. ECF No. 28). CNN timely filed its Notice of Appeal, ECF No. 29, on February 21, 2017. *See* Fed. R. Civ. P. 4.

## Statement of the Issues

1.    Does Georgia's antiSLAPP law, OCGA § 9-11-11.1 (2016), apply in a federal diversity action?

2.    Does Georgia's antiSLAPP law require striking Plaintiff-Appellee Davide M. Carbone's defamation claim because the law protects CNN's exercise of its constitutional right of free speech, and Carbone has failed to establish a probability that he will prevail?

3.    Did Carbone fail to state a claim for defamation, under Fed. R. Civ. P. 12(b)(6), because he failed to identify any statements by CNN that "concerned" him, because CNN's statements consisted of non-actionable opinions, or because his pleadings did not establish that CNN's statements were false and that CNN was at fault for publishing them?

## Statement of the Case

Defendant-Appellant Cable News Network, Inc. brought the appeal in this defamation action to vindicate its rights under Georgia's antiSLAPP law, the First Amendment, and Georgia's defamation law. The underlying dispute arose out of journalism on a matter of significant public concern. Carbone, the plaintiff below, alleged that CNN defamed him through its reporting on the aberrant mortality rate for pediatric open-heart surgery at St. Mary's Medical Center in West Palm Beach, Florida ("St. Mary's"). ECF No. 1. Beginning in June 2015, CNN reported that St. Mary's pediatric cardiothoracic surgery program's raw mortality rate for open-heart surgery was 12.5%, which was over three times the national average for the same procedures during the relevant time frame. ECF No. 5-1 at 2. Carbone was the Chief Executive Officer ("CEO") of St. Mary's at the time. ECF No. 5-1 at 3.

Carbone's unfounded claim should be stricken under Georgia's recently amended antiSLAPP law, OCGA § 9-11-11.1, and/or dismissed under Fed. R. Civ. P. 12(b)(6) as he has failed to adequately plead facts to support a defamation claim. Georgia's antiSLAPP law—short for "Strategic Lawsuits Against Public Participation"—requires courts to strike defamation claims like Carbone's that may chill free speech "through abuse of the judicial process" when the claimant has failed to establish a probability of success on his claim. *See* OCGA § 9-11-11.1(a). Alternatively, Rule 12(b)(6) tests the basic sufficiency of the claims in a complaint,

4

weeding out claims unsupported by facts that "raise a right to relief above the speculative level." *Amadou v. Hawkins & Parnell, LLP*, 445 F. App'x. 157, 158 (11th Cir. 2011) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007)).

The district court, however, declined to strike or dismiss Carbone's claim and allowed the lawsuit to proceed based on two erroneous premises: (1) it denied CNN antiSLAPP relief by incorrectly holding the state statute does not apply in the federal forum; and (2) it misread Carbone's complaint, and the incorporated CNN reporting, and held that Carbone stated a cause of action based on words that CNN did not, in fact, report. *See* ECF No. 28 at 1.

### Statement of Facts and Proceedings, and Dispositions Below

On June 1, 2015, CNN began a series of reports on the unusual mortality rate for infants undergoing open-heart surgery at St. Mary's.  Based on careful investigation, research, and writing, CNN's initially reported that for 2011-13, the raw mortality rate for this category of surgery was 12.5%, more than three times the national average for comparable surgeries during the relevant timeframe.  ECF No. 14-1.  Following this CNN report and further news coverage, the government and the hospital launched outside and internal investigations, and, ultimately, the program closed.  By January 2016, CNN's detailed reporting included telecasts and digital media reports relating the tragic stories of infants who died after operations at St. Mary's, explaining CNN's statistical calculations in detail, and chronicling

the government's review of the program.  *See* ECF No. 1 at 11, 13–16, 19–20; ECF No. 14-1.

By June 5, 2015, the Federal Centers for Medicare & Medicaid Services ("federal CMS") began an investigation into St. Mary's.  ECF No. 1 at 14; ECF No. 14-5 at 2.  Within three days, CNN reported that St. Mary's had launched its own "comprehensive review" of the program and "suspend[ed] elective pediatric heart surgeries."  *See* ECF No. 1 at 15–16; ECF No. 14-7 at 2.  Soon thereafter, CNN reported that the Joint Commission—the nation's largest medical accrediting agency—began an investigation into patient safety at St. Mary's.  ECF No. 1 at 17; ECF No. 14-10.  In August of that year, St. Mary's announced the program was permanently closed.  ECF No. 14-7 at 2; ECF No. 14-12 at 2.

On May 26, 2016, Carbone filed a single-count defamation complaint challenging CNN's reporting on the death rate for infants undergoing open-heart surgery at St. Mary's.[2]  ECF No. 1 at 11.  The district court characterized his "two chief allegations" as CNN's allegedly false comparison of St. Mary's and the nationwide mortality rates, and CNN's reporting about the Florida Agency for Health Care Administration ("AHCA").  ECF No. 28 at 13–14.

---

[2] Carbone was the CEO of St. Mary's during the launch of its pediatric heart surgery program and through most of CNN's reporting until his resignation in November 2015.  ECF No. 1 at 1, 6.  Although he was barely mentioned by name in the series, he alleges CNN's reporting defamed him because of his "oversight and operation" of the hospital's program.  ECF No. 1 at 1, 6.

In response, on July 25, 2016, CNN filed a special motion to strike Carbone's claim under Georgia's antiSLAPP law, OCGA § 9-11-11.1 (2016). ECF No. 5, 5-1 at 7–23; *see also* ECF No. 19 at 11–27. The law permits a defamation defendant like CNN to file a motion to strike when a plaintiff's claim "aris[es] from any act . . . which could reasonably be construed as an act in furtherance of the [defendant's] right of petition or free speech . . . ." OCGA § 9-11-11.1(b)(1). The reviewing court must strike the claim unless the plaintiff "has established that there is a probability that [he] will prevail on the claim." OCGA § 9-11-11.1(b)(1). CNN's antiSLAPP motion argued that Carbone failed to establish a probability that he would prevail on his defamation claim and his claim therefore should be stricken. ECF No. 5; 5-1. The district court never reached the merits of CNN's antiSLAPP argument, erroneously finding in its February 15, 2017 order that Georgia's antiSLAPP law does not apply in federal court. ECF No. 28 at 9.

In addition to its antiSLAPP motion, CNN also moved to dismiss pursuant to Rule 12(b)(6) for Carbone's failure to sufficiently plead defamation. ECF 5, 5-1 at 23–25; *see also* ECF No. 19 at 23–25. CNN set forth that his defamation claim failed because (1) CNN's reporting does not concern Carbone, (2) Carbone's academic disagreement with CNN's methodology cannot form the basis of a defamation claim, (3) CNN's chosen methodology is pure opinion and not a

statement of fact, and (4) certain challenged statements are protected by Georgia's fair report privilege. *See* ECF No. 5, 5-1 at 27–28; ECF No. 19 at 23–25.

The district court, in the same February 15 order, correctly found that numerous statements Carbone alleges are "generally a matter of opinion and cannot be proven true or false for purposes of a defamation claim." ECF No. 28 at 13. The district court described these nonactionable statements as "including statements from upset parents, statements that St. Mary's was 'extremely inexperienced at doing such complicated heart surgeries on newborns[,]' and CNN's alleged reliance on 'biased sources.'" ECF No. 28 at 13 (*quoting* ECF No. 1 at 12, 13, 18, 19, 20). The statements identified in the complaint, and that fit the district court's findings, include:

- "[T]he hospital [St. Mary's] their [the McCarthys's] baby was at was extremely inexperienced at doing such complicated heart surgeries on newborns." ECF No. 1 at 12.

- "Some of the parents now torture themselves. They trusted the cardiologists who referred them to St. Mary's for surgery." ECF No. 1 at 12.

- "She [Angie Loudon] says she, too, was lied to." ECF No. 1 at 12.

- "The quotation of a biased source's statement that 'It's horrible that [you] go into a program like that and they can be dishonest with you.'" ECF No. 1 at 13, 18, 20.

- "Why did so many babies die at St. Mary's?" ECF No. 1 at 13, 20.

- "Stating that the hospital program 'had a disturbing backstory.'" ECF No. 1 at 13, 18, 20.

- "The quotation of a biased source's statement that 'I don't think they should do any more surgery on kids at St. Mary's. St Mary's not qualified for surgery. That's that.'" ECF No. 1 at 13.

- "The quotation of a biased source's statement that 'Every day somebody's making a decision to allow some parent to bring their child and to turn them over into the care of a group of people that aren't fit to do what they're doing.'" ECF No. 1 at 13.

- "The quotation of a biased source's statement that St. Mary's should 'find something else to do; you're not good at this.'" ECF No. 1 at 14

- "The surgeon starts to tear up as he describes taking the baby off life support. He'd lost patients before; that's the reality when you operate on tiny, malfunctioning hearts. But this death was different, the surgeon says. This baby didn't have to die. The surgeon spoke on the condition of anonymity because he doesn't have permission from his employer to speak about the baby's case. The infant had been transferred to his hospital after having surgery at St. Mary's Medical Center in West Palm Beach, Florida. He and his team tried to save her. 'We were called in late to fix a problem caused by someone else,' he surgeon says. 'It makes you angry when you have to fix someone else's lethal mistakes.'" ECF No. 1 at 19.

However, the district court erroneously held that Carbone's complaint sufficiently pled defamation. ECF No. 28 at 18. This decision was based on its improper acceptance, for pleading purposes, of Carbone's facially speculative allegation about the statistics and the district court's critical misreading related to AHCA. *See* ECF No. 28 at 13–15.

9

*Standard of Review*

A *de novo* standard governs this Court's review of Georgia's antiSLAPP law's applicability in federal court, the statute's application to CNN's statements at issue here, and the district court's denial of CNN's motion to dismiss. *See S & Davis Int'l, Inc. v. The Republic of Yemen*, 218 F.3d 1292, 1298 (11th Cir. 2000); *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 999 (11th Cir. 2007); *Williams v. Sec'y, U.S. Dep't of Homeland Sec.*, 741 F.3d 1228, 1231 (11th Cir. 2014). The district court's findings of fact are reviewed for clear error. *S & Davis Int'l, Inc.*, 218 F.3d at 1298.

Overlaying that clear error standard, however, is the Court's duty to independently review the claim and examine the entire record because of the First Amendment rights at issue here. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485 (1984); *Jones v. Heyman*, 888 F.2d 1328, 1330 (11th Cir. 1989). Thus, the clear error standard "does not inhibit an appellate court's power to correct errors of law, including those that may infect a so-called mixed finding of law and fact." *Thornburg v. Gingles,* 478 U.S. 30, 79 (1986) (*quoting Bose Corp.,* 466 U.S. at 501); *see also United States v. Crawford,* 407 F. 3d 1174, 1177 (11th Cir. 2005) ("[T]he clear error standard is purposefully deferential to the district court . . . [but r]eview for clear error does not mean no review.").

## Summary of the Argument

The district court erred in two principal respects: first by holding that Carbone's defamation claims should not be stricken pursuant to the Georgia antiSLAPP statute, OCGA § 9-11-11.1, and second by holding that Carbone adequately stated a claim under Rule 12(b)(6).

Contrary to the district court's holding, the Georgia antiSLAPP statute should have been applied in this federal diversity action, pursuant to the Supreme Court's holdings in *Erie* and *Shady Grove*.  The statute provides substantive protections to Georgians exercising their Constitutional rights to freedom of speech.  The General Assembly has seen fit to enact a statute aimed at providing substantive protections for Georgia citizens' rights to free speech as well as the right to be free from baseless and vexatious lawsuits aimed at chilling speech.  The district court's holding will have the effect of denying Georgians those protections.  Moreover, the lower court's holding further contravenes the Supreme Court's direction in *Erie* by encouraging forum shopping and incentivizing plaintiffs with groundless claims to litigate in federal court.  The Court should follow the lead of the majority of other circuits to have considered whether analogous state antiSLAPP statutes should be applied in federal diversity cases and hold that these statutes do not conflict with Fed. R. Civ. P. 12(b)(6).

11

Further, the Court should hold that, under the Georgia antiSLAPP statute, Carbone is unable to establish a probability that he will prevail on his claim. Based upon the pleadings, he cannot establish the falsity or unprivileged nature of CNN's reporting, or that the statements he challenges even "concerned" him. Pursuant to Georgia law, Carbone's defamation claims should therefore be stricken.

Finally, separate and apart from Carbone's claim failing to satisfy the requirements of Georgia's antiSLAPP statute, he also fails to sufficiently plead a defamation claim under Rule 12(b)(6). Specifically, he failed to adequately plead that the statements at issue were false or that any of the statements at issue "concerned" him under the application of well-settled defamation law. Moreover, Carbone failed to adequately plead that CNN was at fault for reporting on the statistical comparison, a matter well within the common law protections for statements of opinion

The Court should reverse the lower court and remand with instructions to dismiss the plaintiff's claims.

12

**Argument**

CNN's journalism about a hospital's abnormally high infant death rate warrants the utmost legal protection. News coverage of this sort helps parents make better choices about their children's care, focuses the government's attention, and contributes vital information for the overall public health. This journalism falls well within the ambit of Georgia's antiSLAPP law as well as the stalwart First Amendment and common law protections that the Eleventh Circuit has recently reinforced.

Contrary to the order on appeal, which provided *no* protection at all to CNN, the Eleventh Circuit favors early disposal of libel actions against the media because "the very pendency of a lawsuit may exert the chilling effect which *New York Times Co. v. Sullivan* and its progeny seek to guard against." *Southard v. Forbes, Inc.*, 588 F.2d 140, 145 (5th Cir. 1979) (footnote omitted) (affirming summary judgment in favor of a defamation defendant); *see also Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 327 (2010) ("First Amendment standards . . . must give the benefit of any doubt to protecting rather than stifling speech." (internal quotation marks omitted)); *Time, Inc. v. McLaney*, 406 F.2d 565, 566 (5th Cir. 1969) (considering interlocutory appeal of denial of summary judgment because of the potential chilling effect of litigation on the First Amendment guarantee of freedom of the press); *accord Farah v. Esquire*

13

*Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013); *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017) (Kavanaugh, J.) (reversing denial of summary judgment against a media defendant and stating that "[c]ostly and time-consuming defamation litigation can threaten those essential freedoms. To preserve First Amendment freedoms and give reporters, commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits.").

In fact, Georgia's antiSLAPP law is the State's highest expression of its legislative objective to ensure that all courts in Georgia remain safe havens for free expression.  OCGA § 9-11-11.1.  As a panel of this Court recently noted, the majority of federal circuits to consider the issue have held state antiSLAPP laws applicable in the federal courts. *Tobinick v. Novella*, 848 F.3d 935 (11th Cir. 2017).

This Court should reverse the district court and hold that under Georgia's antiSLAPP law, properly applied in federal courts, Carbone has failed to demonstrate a probability of success on the merits, and his complaint should be stricken.  Alternatively, the Court should reverse the district court's denial of CNN's Rule 12(b)(6) motion, and hold that the motion should have been granted as Carbone has failed to state a claim for defamation.

14

I.   **Georgia's antiSLAPP law applies in this federal diversity action, and the district court erred in declining to apply it.**

The Georgia General Assembly in 1996 first provided its citizens with special protections for speech on matters of public concern through enactment of the state's original antiSLAPP law, following the lead of its California counterparts. After the Georgia Supreme Court narrowly interpreted its protections to apply only in the context of an official proceeding,[3] the General Assembly in 2016 amended the statute's scope. Again following the California model, the Georgia statute now even more comprehensively protects its citizens from speech-chilling lawsuits:

> The General Assembly of Georgia finds and declares that it is in the public interest to encourage participation by the citizens of Georgia in matters of public significance ***and public interest*** through the exercise of their constitutional rights of petition and freedom of speech. The General Assembly of Georgia further finds and declares that the valid exercise of the constitutional rights of petition and freedom of speech should not be chilled through abuse of the judicial process. To accomplish the declarations provided for under this subsection, this Code section ***shall be construed broadly***.

OCGA § 9-11-11.1(a) (emphasis supplied to show key language added by amendment).

To give maximum strength to this forceful expression of public policy, and to ensure free speech is not chilled, the General Assembly broadened the definition

---

[3] *See Berryhill v. Georgia Community Support & Solutions, Inc.*, 638 S.E.2d 278 (Ga. 2006).

15

of protected activity to include "[a]ny . . . conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with a public issue or an issue of public concern."  OCGA § 9-11-11.1(c)(4).  The General Assembly further bolstered the statute's protections by mandating the award of attorney's fees to the prevailing moving party on an antiSLAPP motion and adding a right of immediate appeal of the denial of a motion.  *See* OCGA §§ 9-11-11.1(b.1), (e).

Additionally, taking its cue from the Eleventh Circuit's decision in *Royalty Network, Inc. v. Harris*, 756 F.3d 1351 (11th Cir. 2014), the General Assembly removed the prior statute's verification requirement, which this Court had held conflicted with Fed. R. Civ. P. 11.  That amendment brought the statute in line with the statutes of California, Louisiana, and Maine—each of which, as this Court noted in *Royalty Network*, has been applied in their respective federal circuits.  *See* 756 F.3d at 1361–62.

Georgia's current statute now stands as one of the most protective in the Nation.  It reflects the State's unwavering public policy against speech-chilling litigation on matters of public concern: "The General Assembly of Georgia further finds and declares that the valid exercise of the constitutional right[] of . . . freedom of speech should not be chilled through abuse of the judicial process."  OCGA § 9-11-11.1(a).  Georgia's statute also mirrors this Circuit's recognition that, by its very nature, the litigation process dampens free speech and

hurts the First Amendment. *See Southard*, 588 F.2d at 145 ("the very pendency of a lawsuit may exert the chilling effect which *New York Times Co. v. Sullivan* and its progeny seek to guard against"); *Times, Inc*, 406 F.2d at 566 ("failure to dismiss a libel suit might necessitate long and expensive trial proceedings, which, if not really warranted, would themselves offend [First Amendment] principles . . . because of the chilling effect of such litigation."); *accord Farah*, 736 F.3d at 534 (same).

The district court here, rather than promote the "uninhibited, robust, and wide-open" exercise of speech that the General Assembly and this Court both encourage, *see Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002) (*quoting New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)), adhered to a minority view in holding that the Georgia statute does not apply in the federal forum. Ironically, the district court issued its ruling on the same day this Court held that Southern District of Florida Court "acted reasonably" in applying California's antiSLAPP law, noting the California statute has been applied in numerous federal courts. *Tobinick*, 848 F.3d at 944.

This Court reviews the district court's refusal to apply the Georgia antiSLAPP law in federal court *de novo*. *Royalty Network,* 756 F.3d at 1354. The Court should reverse the district court and apply the statute in this action.

17

### A.    Under *Shady Grove*, the Court asks whether the federal rule controls and whether its application may encourage forum shopping.

In *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), the Supreme Court held that there is no general, federal common law, except in matters governed by the U.S. Constitution, or by acts of Congress, and the law to be applied in federal diversity actions is the law of the state. *Id.* at 78. Under the *Erie* Doctrine, a federal court, sitting in diversity, must apply the substantive law of the forum state alongside federal procedural law. *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2017) (citing *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011). The Supreme Court has turned away from rigid applications of the *Erie* terms "substantive" and "procedure" in determining whether state laws will apply in the federal courts. *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010). Now, under the Supreme Court's holding in *Shady Grove*, the federal court first asks whether the state law "answers the [same] question in dispute" as the federal rule. 559 U.S. at 398. In other words, a court asks whether the federal rule is "sufficiently broad to control the issue before the Court." *Id.* at 398 (internal quotes omitted). If instead the federal rule and state law "can exist side by side . . . each controlling its own intended sphere of coverage without conflict," the state law may control. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 741 (1980); *see Godin v. Schencks*, 629 F.3d

79, 86 (1st Cir. 2010) (adopting the same language in antiSLAPP context). Justice Stevens's concurrence in *Shady Grove* noted that if a federal rule "would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right," then the federal procedural rule "cannot govern" such a case. *Shady Grove*, 559 U.S. at 423 (Stevens, J., concurring in part and concurring in the judgment).

*Second*, if the federal rule is not so broad as to control the issues raised, a federal court might nonetheless decline to apply state law if that would better advance the dual aims of *Erie*: "discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna v. Plumer*, 380 U.S. 460, 468 (1965); *see also Shady Grove*, 559 U.S. at 417 n.2 (Stevens, J., concurring in part and concurring in the judgment); *Walker*, 446 U.S. at 752–53.

Here, the Georgia General Assembly has provided its citizens with enhanced protection against inappropriate threats to their freedom of expression. The assembly decided, as a matter of state policy, that upon invocation of the law's protections, only plaintiffs showing a "probability of success"—a standard that neither countermands nor contradicts Rule 12(b)(6)—may proceed. *See* OCGA § 9-11-11.1(b)(1). The federal rules continue to operate independently as pre-trial dismissal mechanisms in federal courts, while the antiSLAPP law "functions to

define the scope of the state-created right." *Shady Grove*, 559 U.S. at 423 (Stevens, J., concurring).

Moreover, application of the Georgia law will not encourage forum shopping. To the contrary, as this case illustrates—where a Florida plaintiff has brought an action against a Georgia citizen in federal court and has vigorously opposed application antiSLAPP law in federal court—application of the law here will discourage forum shopping, serving a key aim of *Erie*.[4]

### Georgia's antiSLAPP law controls a different issue than Fed. R. Civ. P. 12(b)(6).

As other federal circuits have found with similar state laws, Georgia's antiSLAPP law and the Federal Rules do not conflict because they are "addressed to different (but related) subject matters." *Godin*, 629 F.3d at 88. Georgia's antiSLAPP law "on its face is not addressed to [Rule 12(b)(6) or Rule 56] procedures, which are general federal procedures governing all categories of cases." *Id*. Rather, Georgia's law specifies a narrow class of litigation that targets the "exercise of the constitutional right of petition or free speech in connection

---

[4] Even if the federal law controls the issue, it may be inapplicable in federal courts if it conflicts with the Rules Enabling Act ("REA"), 28 U.S.C. § 2072, or is unconstitutional. *Hanna*, 380 U.S. at 469–74; *Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 n.7 (1996). Here, CNN does not contest Rule 12(b)(6)'s validity under the REA or its constitutionality.

with a public issue or an issue of public concern" and for which the plaintiff has failed to show a "probability of success."  OCGA § 9-11-11.1.

Indeed, when the Ninth Circuit last considered California's antiSLAPP law—which contains the identical "probability" requirement to Georgia's law—the court found that the state law "conflicts with neither Rule 12 nor Rule 56." *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1182–83 (9th Cir. 2013) (en banc) (Wardlaw, J., concurring) ("*Makaeff II*") (emphasis in original) (citing Cal. C. Civ. P. § 425.16).   Carefully analyzing the applicability of California's law in federal courts, the Ninth Circuit rejected rehearing in *Makaeff II*—over the dissent on which the district court here relies—and cautioned against "turn[ing] *Shady Grove*'s lens into a kaleidoscope." *Id*. at 1182.

The Ninth Circuit noted that California's antiSLAPP law (as with Georgia's) "does not attempt to answer [the] question" posed by Rule 12(b)(6): "whether the plaintiff has stated a claim that is plausible on its face and upon which relief can be granted." *Id*. at 1182.   The Ninth Circuit noted that California's own procedural rules (just like Georgia's) provide for the analogous relief as Rule 12(b)(6)— "strong evidence that the provisions are intended to serve different purposes and control different spheres." *Id.*  Rather than conflict with Rule 12(b)(6), the Ninth Circuit correctly found that the antiSLAPP law, "by creating a separate and

additional theory upon which certain kinds of suits may be disposed of before trial, supplements rather than conflicts with the Federal Rules." *Id*.

Similarly, the Second Circuit, in *Adelson v. Harris*, indicated under a choice-of-laws analysis that applying the immunity and fee-shifting provisions from Nevada's antiSLAPP law "seems to us unproblematic." 774 F.3d 803, 809 (2d Cir. 2014). The Second Circuit found that these provisions "do[] not squarely conflict with a valid federal rule." *Id*.

Additionally, the Fifth Circuit also regularly applies both Louisiana's and Texas's antiSLAPP laws and has definitively held that the Louisiana antiSLAPP does not conflict with Fed. R. Civ. P. 56. *See, e.g.*, *Block v. Tanenhaus*, 815 F.3d 218, 221 (5th Cir. 2016) ("Instead, we assume that [Louisiana's antiSLAPP law] does apply and reject [the plaintiff's] argument that, because it provides a stricter standard than Rule 56, it does not apply in federal court.") (internal citations omitted); *see also Cuba v. Pylant*, 814 F.3d 701, 706 (5th Cir. 2016) (assuming, without deciding, that the Texas antiSLAPP controls as state substantive law in diversity suits); *Henry*, 566 F.3d at 181 (same, as to Louisiana's statute).[5]

---

[5] *See also Konrath v. Vance*, No. 1:16-CV-02784-LJM-DKL, 2017 WL 1382778 (S.D. Ind. Apr. 18, 2017) (slip op.) (recently holding that Indiana's antiSLAPP does not conflict with state or federal Rule 56); *Godin*, 629 F.3d at 91(finding no conflict between the federal rules including Rule 56 and Maine's antiSLAPP statute's "probability" requirement); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 972 (9th Cir. 1999) (same as to California's antiSLAPP statute); *Gardner v. Martino*, 563 F.3d 981, 991 (9th Cir. 2009) (same

Likewise, the First Circuit in *Godin v. Schencks*, 629 F.3d 79, 89 (1st Cir. 2010), held that Maine's antiSLAPP law, while containing "both substantive and procedural aspects," also did not conflict with Rule 12(b)(6). The Maine law "serves the entirely distinct function of protecting those specific defendants that have been targeted with litigation on the basis of their protected speech." *Id*. at 89. Moreover, as the Ninth Circuit noted in the context of California's rules, Maine also has its own state analog to Rule 12(b)(6), further supporting "the view that Maine has not created a substitute to the Federal Rules, but instead created a supplemental and substantive rule to provide added protections." *Id.* at 89.

Here, as with the other states, the Georgia Code provides its own rule for challenging the legal sufficiency of a complaint in state court. *See* OCGA § 9-11-12(b)(6). Moreover, as with the other jurisdictions, Georgia's General Assembly has provided its citizens with a separate, enforceable right to challenge a narrow class of litigation that threatens "the exercise of the constitutional right of petition or free speech in connection with a public issue or an issue of public concern." OCGA § 9-11-11.1(c). The General Assembly also bolstered this protection with the bulwark of a mandatory attorney's fee award to successful defendants, another state-law protection routinely held applicable in the federal

---

as to Oregon's antiSLAPP statute); *see also Block v. Tanenhaus*, 815 F.3d 218, 221 (5th Cir. 2016) (implying, without specifically holding, that Louisiana's antiSLAPP statute is not in conflict with Rule 56).

forum. *See Cohen*, 337 U.S. at 555–56 (fee-shifting state law to a prevailing defendant in a shareholder derivative suit applied in federal court); *Jones v. United Space All., LLC*, 494 F.3d 1306, 1309–10 (11th Cir. 2007) (Florida state attorney's fees provision is substantive and applies in federal court); *see also Adelson*, 774 F.3d at 809 (fee shifting provision of Nevada's antiSLAPP law applied in federal court).

For these reasons, this Court should disagree with the district court's holding below and find that, under *Shady Grove*, Georgia's antiSLAPP law does not "answer the same question" as Rule 12(b)(6) and applies in this action.

### *Application of Georgia's antiSLAPP law will discourage, and not encourage, forum shopping.*

This Court also should satisfy the aim of *Erie* to discourage forum shopping, which the district court's decision surely will enable. Discouragement of forum shopping is critical to ensuring that application of a federal law, rather than a state law, will not "unfairly discriminate against citizens of the forum State or be likely to cause a plaintiff to choose federal court." *Gasperini*, 518 U.S. at 428 (*quoting Hanna*, 380 U.S. at 468 n.9) (internal quotation marks and brackets omitted). Here, if Georgia's antiSLAPP law does not apply in federal court, diverse defamation plaintiffs—especially those with groundless claims—have an incentive to bring their claims in federal courts to avoid the protections afforded by Georgia's antiSLAPP law.

24

The Ninth Circuit, following its careful analysis in finding that the federal rules were not in conflict with antiSLAPP laws, also noted that declining to apply these laws "in federal court is bad policy." *Makaeff II*. at 1187. In addition to "flush[ing] away state legislatures' considered decisions on matters of state law," the Ninth Circuit noted, refusing to apply these laws "also put[s] the federal courts at risk of being swept away in a rising tide of frivolous state actions that would be filed in our circuit's federal courts." *Id*. Rather than discourage forum shopping, "SLAPP plaintiffs would have an incentive to file or remove to federal courts strategic, retaliatory lawsuits" that are more likely to chill speech. *Id*.

The First Circuit also noted that declining to apply Maine's statute in the federal forum would "result in an inequitable administration of justice" in like cases in the state and federal courts, and that "the incentives for forum shopping would be strong." *Godin*, 629 F.3d at 92. Similarly, the Second Circuit, in *Adelson v. Harris*, found that the mandatory fee shifting provision of the antiSLAPP law at issue there "seem[s] to us unproblematic" because it is "consequential enough that enforcement in federal proceedings will serve to discourage forum shopping and avoid inequity." 774 F.3d at 809 (applying California law).

Here, the district court's decision serves to encourage this precise form of rank forum shopping. In this case, a Florida plaintiff has sued a citizen of Georgia

25

in the federal court and has now vigorously contested the invocation of Georgia's maximum protections for freedom of expression.  In addition to the other valid reasons, to serve *Erie*'s aim at bringing consistency and dissuading forum shopping, this Court should hold the antiSLAPP law applies.

### B.    The Court should overrule the district court's analysis of the "plausibility" and "probability" standards.

The district court, rather than follow the cogent, *Erie*- and *Shady Grove*-based reasoning of the other Circuits, followed the D.C. Circuit decision in *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328 (D.C. Cir. 2015).  Instead of looking to the more recent, controlling Ninth Circuit decision in *Makaeff II*, the district court looked askance at that circuit's earlier decision in *Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999).

The district court's analysis conflates the "probability" requirement of Georgia's antiSLAPP law with the "plausibility" standard *Twombly* applies to pleadings under Rule 12(b)(6).  ECF No. 28 at 6.  The district court quoted *Abbas*'s holding that the antiSLAPP laws "set up an additional hurdle a plaintiff must jump over to get to trial" and thus the statute "answers the same question" as Rule 12(b)(6).  ECF No. 1 at 6–7 (*citing Twombly*).  To the district court, state law cannot supplement the federal plausibility standard because that would "impos[e] an additional requirement on the plaintiff at this stage."  ECF No. 28 at 6.

26

Outside of the antiSLAPP context, federal courts routinely enforce enhanced rights at the pleading stage. *See, e.g.*, *Burke v. Air Serv. Intern, Inc.*, 685 F.3d 1102, 1108 (D.C. Cir. 2012) (applying D.C. rule requiring expert testimony in certain cases in federal diversity action); *Milam v. State Farm Mut. Auto. Ins. Co.*, 972 F.2d 166, 170 (7th Cir. 1992) (explaining that "where a state in furtherance of its substantive policy makes it more difficult to prove a particular type of state-law claim," the rule "will be given effect in a diversity suit as an expression of state substantive policy").

The district court misreads the manner in which the antiSLAPP law operates, as an independent basis for disposition of appropriate cases in all courts in Georgia. State antiSLAPP laws "serve[] the entirely distinct function [from the Federal Rules] of protecting those specific defendants that have been targeted with litigation on the basis of their protected speech." *Godin*, 629 F.3d at 88 (applying Maine's antiSLAPP law precisely because it is "provide[s] added protections, beyond those in Rules 12 and 56, to defendants who are named as parties because of constitutional petitioning activities"). Georgia's antiSLAPP therefore operates to protect defendants exercising constitutional rights, like CNN here, rather than to create an added pleading requirement on top of testing the plausible sufficiency of a complaint.

27

In fact, again, the majority of circuit courts interpreting the Rule 12(b)(6) standard alongside antiSLAPP laws have found no conflict between the two. Indeed, when considering California's antiSLAPP law's identical "probability" requirement,[6] the Ninth Circuit specifically found that the state law "conflicts with neither Rule 12 nor Rule 56." *Makaeff II* at 1182–83 (California's antiSLAPP law tests whether "the plaintiff has established that there is a probability that the plaintiff will prevail" (quoting Cal. C. Civ. P. § 425.16)); *see also Godin v. Schencks*, 629 F.3d 79, 91 (1st Cir. 2010) (finding no conflict between the Rule 12(b)(6)'s "plausibility" and Maine's antiSLAPP law's "probability" requirement, also identical to Georgia's); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 972 (9th Cir. 1999) (same as to California's antiSLAPP law); *Gardner v. Martino*, 563 F.3d 981, 991 (9th Cir. 2009) (same as to Oregon's antiSLAPP law); *Block v. Tanenhaus*, 815 F.3d 218, 221 (5th Cir. 2016) (without reaching the issue, Fifth Circuit suggests no conflict between the Federal Rules and Louisiana's antiSLAPP law).

This Court, upon *de novo* review, should reverse the district court's incorrect finding of a conflict with the Rule 12(b)(6) "plausibility" standard and hold that Georgia's antiSLAPP law applies here.

---

[6] Judge Barnes of the Georgia Court of Appeals has acknowledged that Georgia's statute now mirrors California's. *See Rogers v. Dupree*, 340 Ga.App. 811, 829–30 (Ga. Ct. App. 2017) (Barnes, J., concurring and dissenting).

### C.    The Court has foreshadowed its willingness to apply the amended Georgia antiSLAPP law.

Three years ago, in *Royalty Network, Inc. v. Harris*, this Court signaled to Georgia that removal of its antiSLAPP law's verification requirement would permit application of the statute in federal courts.  756 F.3d at 1326 (distinguishing Georgia's antiSLAPP from the federally-applicable antiSLAPP California, Louisiana, and Maine antiSLAPP laws because of Georgia's verification requirement).  The prior version of statute's verification requirement, the Court held, conflicted with Fed. R. Civ. P. 11 and so could not apply in federal courts. *Id*.  Georgia's General Assembly listened, and in 2016, it removed the verification requirement from its antiSLAPP law along with other revisions to strengthen the statute's force in all courts in the State.

Indeed, earlier this year the Eleventh Circuit accepted and applied the California antiSLAPP law—along with its "probability" standard that Georgia's statute mirrors—on the same day as the district court ruled here.  In *Tobinick v. Novella*, the Southern District of Florida Court, after questioning counsel about this very issue, had granted a special motion to strike brought under California's antiSLAPP law, where California's substantive law governed the issue. 108 F. Supp. 3d 1299, 1312 (S.D. Fla. 2015). The district court noted in its order, as plaintiff's counsel had conceded at the hearing, that the bulk of federal courts apply antiSLAPP laws in the federal forum.  *Id*. at 1305 n.4.  With this record, the

Eleventh Circuit affirmed the order, citing the district court's reasoning with approval:

> The district court acted reasonably in applying California's anti-SLAPP statute to the state law claims, stating that "the majority of circuit courts have found anti-SLAPP special motions to strike permissible, and . . . the specific anti-SLAPP statute at issue has previously been allowed in federal court."

848 F.3d at 944. This Court should take this opportunity to conclusively hold that appropriate state antiSLAPP laws like Georgia's apply in federal courts.[7]

## II.    Georgia's antiSLAPP law requires striking Carbone's claim, and the district court erred in declining to strike it.

The Court should apply Georgia's antiSLAPP law to strike this lawsuit as this action arises out of CNN's acts in furtherance of its exercise of free speech, and Carbone has failed to establish a probability that his claim will succeed. *See* OCGA § 9-11-11.1(b.1). This Court reviews the district court's application and interpretation of the statute *de novo*. *Williams*, 741 F.3d at 1231. The Court also

---

[7] Below, Carbone also argued, without the support of a single circuit court decision, that Georgia's antiSLAPP statute was precluded by the Seventh Amendment. The district court did not reach this argument. Georgia's antiSLAPP statute, in requiring the plaintiff to show a "probability of success," merely furthers a court's gatekeeping function and does not require weighing of the evidence or supplanting a jury. Shifting the burden to a free speech-threatening plaintiff to establish a "probability" of success presents no conflict with the United States Constitution. *See e.g.*, *Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010) (construing Maine's antiSLAPP statute to avoid Seventh Amendment issue.); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 327 n.8 (2007) ("In numerous contexts, gatekeeping judicial determinations prevent submission of claims to a jury's judgment without violating the Seventh Amendment.").

exercises its independent appellate review of the entire record to ensure that maximum protections under the First Amendment have been applied at every stage of the proceeding. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485 (1984); *Jones*, 888 F.2d at 1330.

### A.    Georgia's antiSLAPP law applies because Carbone's claim threatens CNN's exercise of its constitutional right of free speech.

Carbone does not dispute that his defamation claim falls within the purview of the antiSLAPP law because it is based on "an act in furtherance of the-. . . entity's right of petition or free speech." OCGA § 9-11-11.1(b)(1). Georgia's antiSLAPP law requires a reviewing court to strike claims against entities like CNN, when it could "reasonably construe[]" the defendant's act as in furtherance of free speech. OCGA § 9-11-11.1(b)(1). In fact, Georgia's 2016 update to its antiSLAPP law was specifically designed to ensure that journalism was covered conduct.[8] *Compare Berryhill v. Georgia Community Support &*

---

[8] Carbone's complaint predates the amendments to Georgia's antiSLAPP statute; however, CNN moved for relief under the antiSLAPP statute after the amendment went into effect. The amended antiSLAPP statute applies here because it affects the parties' right to a remedy while also affecting substantive, constitutional rights. *See Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1445 (11th Cir. 1991) (statutes that affect only a litigant's remedy are retroactive "absent an expressed contrary intention"); *Henderson v. von Loewenfeldt*, No. CV 414-187, 2015 WL 409656 at *2, n.7 (S.D. Ga. Jan 29, 2015) (the antiSLAPP statute's automatic discovery stay applies retroactively); *Cuba v. Pylant*, 814 F.3d 701, 706 n.6 (5th Cir. 2016) ("[E]ven though the Louisiana anti-SLAPP statute was built around a procedural device — a special motion to dismiss — it nonetheless applies in federal court under the *Erie* doctrine because it was functionally substantive.").

*Solutions, Inc.*, 638 S.E.2d 278, 281 (Ga. 2006) (signaling that the Georgia antiSLAPP law would encompass journalism if legislators added "catchall language at the end of OCGA § 9-11-11.1(c), as in the comparable California and Louisiana anti-SLAPP statutes") *and* Cal. C. Civ. P. § 425.16(e)(4) (defining "act in furtherance of a person's right of petition or free speech" to include "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest"); La. Code Civ. Proc. Ann. art. 971 F.(1)(d) (same) *with* OCGA § 9-11-11.1(c) (2016) (adopting language identical to California and Louisiana's antiSLAPP laws).

Here, Carbone challenges 25 of CNN's publications, each of which constitutes an exercise of free speech in connection with a public issue or issue of public concern.   Therefore, Georgia's antiSLAPP law covers the conduct in question.

### B.    Carbone has failed to establish a probability that he will prevail, and therefore his defamation claim must be stricken.

Carbone has failed to establish a probability that he will prevail on his claim, and therefore his defamation claim must be stricken.   Georgia's antiSLAPP law directs reviewing courts to strike claims unless the plaintiff demonstrates a "probability that [he or she] will prevail" on the claim.   OCGA § 9-11-11.1(b)(1).

To establish a defamation claim, Carbone had to plead: "(1) a false and defamatory statement concerning [him]; (2) publication by the defendant [CNN] of such a statement to a third party; (3) fault on the part of the defendant; and (4) injury to the plaintiff."[9] *See Xiaoyun Lucy Lu v. AirTran Airways, Inc.*, 631 F. App'x 657, 663 (11th Cir. 2015).

### *Carbone failed to establish the falsity of CNN's statistical comparison, and in fact CNN's statements are substantially true.*

One of Carbone's "two chief allegations" forming the basis for his defamation claim is the alleged falsity of CNN's comparison of St. Mary's mortality rate with the corresponding national rate for pediatric patients undergoing the open-heart surgery procedures. ECF No. 28 at 13–14. The district court improperly relied on Carbone's conclusory, speculative statement that CNN must have reported a risk-adjusted national mortality rate "because of the sheer volume of patients and procedures" and that the national rate included open- and "less risky" closed-heart surgeries. ECF No. 28 at 13; ECF No. 1 at 3, 26, 34. These conclusory allegations clearly contravene other language in the complaint itself and the challenged publications.

---

[9] The district court, without detailed analysis, concluded that the second and fourth elements of defamation—publication and injury to plaintiff—are not at issue here. CNN does not challenge that it published the articles and videos at issue, but it does challenge that this reporting, which does not "concern" Carbone, injured him.

The reporting at issue compared to two sets of mortality rates for the same intervals: St. Mary's and the national average as reported by the Society of Thoracic Surgeons ("STS").  As the district court found, "[p]laintiff does not dispute the raw numbers" in CNN's reporting.  *See* ECF No. 28 at 13.  While the district court found Carbone adequately alleged falsity in the STS mortality rate CNN reported, his complaint actually makes no plausible allegation of that falsehood.  Instead, at various points, his complaint actually alleges that CNN compared the same metrics for St. Mary's and STS.  The complaint itself thus fails to allege the requisite falsity.

For example, Carbone's own complaint sets forth that CNN compared statistics for "babies . . . after having ***open heart surgery*** at St. Mary's" with the national "average mortality rate for babies having ***open heart surgery***" provided by STS.  ECF No. 1 at 15 (quoting CNN's reporting) (emphasis added); *see also id*. at 35 ("CNN compared the [St. Mary's] pediatric cardiac surgery center's mortality rate 'to the pediatric open heart surgery mortality rate nationwide,' as provided by STS." ) (quoting CNN's reporting).

Where the complaint does allege a different comparison, Carbone candidly relies—not on alleged facts to plausibly support his claim—but on his own express speculation about the STS figures.  He speculates—without support or explanation— that the national mortality rate reported by CNN was probably risk-

adjusted "because of sheer volume of patients and procedures" that STS reviews. ECF No. 1 at 26, 34. He engages in this baseless speculation despite CNN's explicit reporting to the contrary in its June 8 Article:

> Nationally, the average mortality rate for babies having open heart surgery from 2010 to 2013 was 3.3%, according to Dr. Jeffrey Jacobs, the chair of the Society of Thoracic Surgeons National Database Work Force. Jacobs said the 3.3% rate *is not risk-adjusted*. CNN's number is not risk adjusted either. Risk adjustment involves taking into account the condition of each patient and adjusting the rate accordingly.

ECF No. 14-7 at 1 (emphasis added).

As the Eleventh Circuit recently held, where a conclusory allegation in the plaintiff's defamation pleading "is rebutted by the article itself," the article governs. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 704 (11th Cir. 2016) (upholding Rule 12(b)(6) dismissal of defamation action) (*citing Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007)). It is the defamation plaintiff's burden to plead facts that would support falsity. *See Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986) (Supreme Court holds defamation plaintiff suing over matter of public concern has burden to establish falsity); *Cox Enterprises, Inc. v. Thrasher*, 442 S.E.2d 740, 741 (Ga. 1994) (Georgia defamation plaintiffs must prove falsity). Carbone has failed to establish falsity beyond the complaint's speculation about the "sheer volume of patients and procedures" involved in the STS study. Moreover, the speculative basis for his

pleading of falsity is "rebutted by the article[s and videos]" themselves. *See Michel*, 816 F.3d at 704. This Court, applying *Hepps* and *Michel*, should strike Carbone's complaint for failing to establish the falsity of CNN's statistical comparison.

Not only has Carbone failed to establish falsity, but CNN's statements regarding the comparative mortality rates at St. Mary's and nationally are substantially true. In Georgia, truth "is a 'perfect defense" to defamation. *Lucas v. Cranshaw*, 659 S.E.2d 612, 615 (Ga. Ct. App. 2008); *see also Monge v. Madison County Record, Inc.*, 802 F. Supp. 2d 1327, 1333 (N.D. Ga. 2011) ("Truth is an absolute defense under Georgia law."); OCGA § 51-5-6. The Court decides, as a question of law and looking to the language surrounding an alleged falsehood, whether a statement is substantially true. *Monge*, 802 F. Supp. 2d at 1333.

Specifically, the record before this Court on CNN's antiSLAPP Motion to Strike demonstrates that six pediatric patients died after open-heart surgery at St. Mary's from 2011 to 2013. *See* ECF No. 5-3 at 2–4.[10] This constitutes the numerator CNN used in calculating St. Mary's raw mortality rate. To determine the denominator, CNN referenced St. Mary's public Compliance Reports for

---

[10] Georgia's antiSLAPP law allows the court to "consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based" in deciding whether a plaintiff has established a probability of prevailing. OCGA § 9-11-11.1(b)(2).

Certificate of Need #10055 ("Compliance Reports") on file with AHCA that established 48 pediatric open-heart surgeries were performed at St. Mary's during this same time frame. *See* ECF No. 5-3 at 4; *see also* ECF No. 14-9 at 3. From a numerator of six and a denominator of 48, CNN calculated a raw mortality rate of 12.5% for pediatric open-heart surgeries at St. Mary's from 2011 to 2013. *See* ECF No. 14-7 at 2; ECF No. 14-9 at 3 (reporting how CNN calculated St. Mary's mortality rate for pediatric open-heart surgeries).

The record also reflects that St. Mary's 12.5% mortality rate for pediatric open-heart surgeries was three times more than the national rate reflected in the STS database for a comparable surgeries over a comparable time period. *See* ECF No. 5-3 at 4–5. This factual underpinning, all properly before the district court and disclosed in the journalism, demonstrates that CNN's reporting on the comparative mortality rates—raw figures; open-heart surgeries—is substantially accurate.

Again, Carbone's only counter is the complaint's conclusory speculation that the national rate must have been risk-adjusted "because of sheer volume" of patients in the STS database and that the national rate must include both open- and closed-heart surgeries. This incorrect allegation is purely speculative and is not sufficient to establish a probability that CNN's comparison is false and defamatory. The record before the Court establishes that all calculations CNN

cited are exclusively derived from raw data for open-heart procedures. *See generally* ECF No. 5-3.

### *Academic disagreement over the specific statistical method CNN reported on is not actionable defamation.*

Carbone's critique of CNN's comparison of mortality rates also cannot support a defamation claim as it merely reflects an academic controversy, incapable of false, defamatory meaning, and not an attack on Carbone's character or honesty. *See Dilworth v. Dudley*, 75 F.3d 307, 310 (7th Cir. 1996) ("[J]udges are not well equipped to resolve academic controversies . . . , and scholars have their own remedies for unfair criticisms of their work—the publication of a rebuttal."); *Lott v. Levitt*, 556 F.3d 564, 566, 570 (7th Cir. 2009).

The district court mischaracterized the question under *Lott* and *Dilworth* by finding Carbone was not "disputing how CNN did the math, but rather whether it compared its own math to a non-comparable figure in a way that misled viewers." ECF No. 28 at 14. The appropriate question is not "how CNN did the math," but whether CNN may lawfully choose to report mortality rates (1) that were raw, and not the risk-adjusted rates that Carbone prefers, and (2) based on open-heart procedures only, and not open- and closed-heart procedures as Carbone prefers.

This disagreement mirrors the controversy that the Seventh Circuit held in-actionable in *Lott v. Levitt*. There, an economist challenged reporting in the book *Freakonomics* on his research about the effect of concealed weapons on crime

rates. 556 F.3d at 566. The book recounted that other scholars had failed to "replicate [the] results" of the plaintiff's statistical analysis and had reached opposite conclusions; the plaintiff argued that this defamed him by implying his research was dishonest. *Id*. at 567. The Seventh Circuit affirmed the district court's conclusion that this challenge reflected an "academic dispute regarding controversial theories," not an attack on the plaintiff's character. *Id*. at 567. Similarly, here, Carbone's dispute with CNN's statistical comparison merely represents an academic disagreement, not capable of specific defamatory meaning.

Further, CNN was completely transparent and reported on the academic disagreement by publishing St. Mary's response and competing calculations.[11] "Scientific controversies" and "academic dispute[s] regarding controversial theories" are not properly heard as defamation actions decided by the jury, but instead should be resolved through a rebuttal or other publication before the

---

[11] Under Georgia law, "[a] statement of opinion . . . is actionable if, and only if, it implies the allegation of undisclosed defamatory facts as the basis for the opinion." *Monge*, 802 F. Supp. 2d at 1335 ("Georgia law unquestionably excludes from defamation liability any statements that may be characterized . . . as pure opinion because their factual premises are revealed."). CNN set forth its entire basis for its statistical comparison in its reporting, explaining: (1) that it obtained St. Mary's raw pediatric open heart surgery number for 2011 to 2013 by filing a state freedom of information request (which was included as a link in the reporting), and obtained the raw national average from STS, *see, e.g.*, ECF No. 14-1 at 4; (2) how it calculated St. Mary's 12.5% mortality rate based on data St. Mary's provided to the State of Florida, *see* ECF No. 14-9; and (3) that St. Mary's disputed the reporting of the raw, open-heart rate, *id*.

relevant community. *Lott*, 556 F.3d at 566, 570; *Underwager v. Salter*, 22 F.3d 730, 736 (7th Cir. 1994). CNN incorporated in its own reporting St. Mary's published rebuttal. ECF No. 14-10 at 2 ("Update July 1st, 2015: St. Mary's has posted a new risk adjusted mortality rate of 4.7% for its Pediatric Congenital Cardiac Surgery Program. You can read St. Mary's statement here [including hyperlink].")).

> ### *Fair report privilege applies to protect CNN's reporting on other government agencies' investigations into St. Mary's.*

CNN's reports on the Florida Cardiac Technical Advisory Panel ("CTAP"), a division of the Florida Department of Health's Children's Medical Services, and federal CMS investigations[12] are not actionable under the Georgia fair report privilege, which protects "impartial and accurate" reporting on the contents of official proceedings. *Lawton v. Georgia Television Co.*, 456 S.E.2d 274, 277 (Ga. Ct. App. 1995); OCGA § 51-5-7. News reports on administrative proceedings by governmental agencies fall within the privilege's scope, as do reports of investigations conducted by those agencies. *See Morton v. Stewart*, 266 S.E.2d 230, 233 (Ga. Ct. App. 1980) (news reports of the proceedings of a Georgia legislature-established Board of Medical Examiners were privileged); *Lawton*, 456

---

[12] The district court mistakenly focused on the wrong agency, AHCA, and erroneously charged CNN with falsely reporting that AHCA was investigating—even though the complaint does not allege falsity as to CNN's reporting about AHCA. This misreading is discussed more fully in Section III, *infra*.

S.E.2d at 277 (reporting on a National Guard investigative report was privileged).

Application of the privilege is, in the first instance, a question of law for the courts.

*See Lawton*, 456 S.E.2d 274 (application of privilege is a question of law; defamation claim dismissed by the court based on finding of privilege on a dispositive motion); *Morton*, 266 S.E.2d at 233 (same); *McCracken v. Gainesville Tribune, Inc.*, 246 S.E.2d 360, 361 (Ga. Ct. App. 1978) (same).

The complaint does not dispute, as CNN reported, that the CTAP issued a report that found the St. Mary's pediatric surgical program deficient as a result of "[t]he failure of an entire team and system." ECF No. 14-1 (quoting the CTAP's report); *see also* ECF No. 1 at 12 (quoting CNN's reporting on the CTAP report)). Additionally, the complaint does not dispute that, as CNN reported, the federal CMS investigated St. Mary's following CNN's initial reporting. ECF No. 14-5 (reporting on the federal investigation); *see also* ECF No. 1 at 32 (quoting AHCA's press release that discloses that the federal CMS launched an investigation)). Based on this, all statements in the complaint that report on these official proceedings are protected under the fair report privilege and are therefore not defamatory.

### Carbone also failed to establish CNN's reporting "concerned" him.

Moreover, none of the statements Carbone alleges in his complaint concern, or even mention, him. *See generally* ECF No. 1 at 11-23. An actionable claim for

defamation, both in Georgia and under the U.S. Constitution, requires that the statements at issue "concern," or in some way refer to, the plaintiff. *See Mathis v. Cannon,* 573 S.E.2d 376, 380 (2002) (citing Restatement (Second) of Torts § 558 (1977)) (Georgia law requires allegedly defamatory statements "concern" plaintiff); *Xiaoyun Lucy Lu*, 631 F. App'x at 663 (this Circuit incorporates Georgia's "concern plaintiff" requirement); *Sullivan*, 376 U.S. at 292 (holding that allegedly defamatory newspaper advertisement was "constitutionally insufficient to support a finding that the statements referred to" the plaintiff). "If the words used really contain no reflection on any particular individual, no averment or innuendo can make them defamatory." *Fiske v. Stockton*, 320 S.E.2d 590, 592 (Ga. Ct. App. 1984) (internal quotes omitted).

But here, none of the statements alleged as false in the complaint concern— or in any way mention—Carbone. The district court acknowledged that "[n]either party here disputes that the various statements contained in the Complaint never mention Plaintiff by name." ECF No. 28 at 15. The district court nonetheless held that ***all*** of "CNN's negative reporting about St. Mary's was sufficient to defame him." ECF No. 28 at 16. This is contrary to the law.

First, the statements in the complaint related to the comparison of St. Mary's and national mortality rates do not concern Carbone. For example:

- "By the end of 2013, the mortality rate for babies having heart surgery there [at St. Mary's] was three times the national average." ECF No. 1 at 12.

- "From those numbers, CNN was able to calculate the death rate for open heart surgeries at 12.5%, more than three times the national average of 3.3% cited by the Society [of] Thoracic Surgeons." ECF No. 1 at 12.

The subject of these statements is St. Mary's, not Carbone. If the allegedly defamatory statements "could not have been intended to refer to any particular person," the defamation claim is subject to dismissal. *Fiske*, 320 S.E.2d at 593 (dismissing defamation claim based on a publication that did not name plaintiffs). On their faces, these statements do not refer to any particular person, much less Carbone.

Further, Carbone's "profession as the CEO of St. Mary's" and his position in the community do not impute to him any statement about St. Mary's. *See* ECF No. 28 at 16. Under Georgia law, statements about an entity like St. Mary's are not ascribed to the leadership of that organization. *See Gast v. Brittain*, 589 S.E.2d 63, 64–65 (Ga. 2003) (reversing denial of summary judgment, in part because a letter containing alleged defamation "clearly separates those allegations, aimed at a named and unrelated Troop leader, from the allegations against [Plaintiff];" statement did not apply to plaintiff simply because of his role in organization); *cf. Pillsbury Co. v. Milky Way Productions*, 1981 U.S. Dist. LEXIS 17722, at *42-43 (N.D. Ga. Dec. 24, 1981) ("a corporation cannot be defamed by a personal

reference to a company officer"); *Provisional Gov't of Rep. New Afrika v. Am. Broad. Cos.*, 609 F. Supp. 104, 108 (D.D.C. 1985) ("[S]tatements which refer to an organization do not implicate its members." (alteration omitted) (citations omitted)).  The challenged statements certainly do not directly refer to Carbone, and his only argument, that they implicate him because of his position as CEO, is contrary to defamation law.

***

Because of this, Carbone failed to establish a "probability that [he] will prevail" on the claim that CNN falsely reported St. Mary's mortality rate for pediatric open-heart surgery from 2011 to 2013 was three times the national average.  Likewise, the remainder of his defamation claim also fails to establish a probability that he was defamed.  Therefore, proper application of Georgia's antiSLAPP law requires that Carbone's defamation claim be stricken.

## III.  Carbone failed to sufficiently plead his defamation claim, and the district court should have granted the motion to dismiss.

As the D.C. Circuit did in *Abbas*, this Court could alternatively direct the district court to grant the motion to dismiss.  783 F.3d at 1339.  As to both of Carbone's "two chief allegations" that the district court found actionable on—the alleged falsity of CNN's reported comparative death rates and its reporting on the AHCA—the complaint does not plead sufficient "facts to state a claim to relief that is plausible on its face;" therefore, the district court should have dismissed the

44

complaint. *See Xiaoyun Lucy Lu,* 631 F. App'x at 659 (*quoting Twombly*, 550 U.S. at 570). Indeed, the district court's entire basis for sustaining Carbone's complaint rests on two critical misreadings of his pleadings concerning CNN's comparison of mortality rates at St. Mary's and nationally and its report on AHCA. *See* ECF No. 28 at 13–15.

Under any standard of review, this Court need not accept the district court's erroneous conclusions where, as here, they are unsupported by the record. *See S & Davis Int'l, Inc. v. The Republic of Yemen*, 218 F.3d 1292, 1298 (11th Cir. 2000). Moreover, in its independent review to ensure CNN's maximum First Amendment rights are applied, this Court should examine the entire record below for itself. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485 (1984); *Jones v. Heyman*, 888 F.2d 1328, 1330 (11th Cir. 1989).

Stripped of these improper grounds for its falsity and fault findings, the district court order provides no basis to deny CNN's motion to dismiss. As the record here does not support a defamation claim, the district court should have dismissed the lawsuit with prejudice.

### A. Carbone failed to sufficiently plead falsity, and so his complaint should be dismissed.

To plausibly plead defamation, Carbone's factual allegations must have "raise[d] a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 707 (11th Cir. 2016) (affirming

dismissal where defamation plaintiff failed to adequately plead facts giving rise to a reasonable inference of fault by defendant).  But Carbone failed to plead facts sufficient to establish that any of the challenged statements were actionable because they were false.

### *Carbone failed to sufficiently plead falsity of CNN's statistical comparison.*

The district court found that one of Carbone's "two chief allegations" was that CNN created a false comparison of St. Mary's and the national open-heart surgery mortality rates for pediatric patients.  But Carbone pled no facts to support this, and instead relied entirely on his own speculation that CNN must have reported a risk-adjusted national mortality rate "because of the sheer volume of patients and procedures," which Carbone speciously concludes CNN improperly compared to St. Mary's raw mortality rate.  ECF No. 28 at 13; ECF No. 1 at 3, 26, 34.  Not only is this entirely speculative and not even alleged as fact, but it also clearly contravenes other language in the complaint itself and the challenged publications.  *See* Section II.B *supra*.  Further, as detailed above, Carbone's dispute with CNN's statistical comparison amounts solely to an academic disagreement, which cannot support defamation claim. *See* Section II.B, *supra*.

46

***CNN never reported on an AHCA "investigation," and the district court's finding of an actionable falsehood should be reversed.***

The clear record before this Court also demonstrates that the district court erred in its reading of the complaint, and the CNN reporting it incorporated, in finding actionable defamation concerning what the court miscast as "CNN's statements that AHCA opened an investigation into St. Mary's as a result of its reporting" in the face of the agency's purported public statement that it was "not investigating." *See* ECF No. 28 at 13, 14. On *de novo* review, this Court should reverse that plain error.

Indeed, the complaint does not even charge CNN with reporting that AHCA was "investigating", *see* ECF No. 1 at 11, or that CNN defamed Carbone by reporting that AHCA was "investigating."[13] That's because CNN never made such a report. In fact, the AHCA press release does not say that CNN ever made such a report—to the contrary, it criticizes CNN for reporting that AHCA was "***not*** investigating." *See* ECF No. 1 at 31-32 (emphasis supplied); *see also* ECF No. 14-31.

Indeed, CNN's journalism, which is all in this Court's record, shows that CNN initially reported on: AHCA's previous reviews of the pediatric surgical program at St. Mary's; the numbers of pediatric open-heart surgeries St. Mary's

---

[13] Carbone's complaint lays out a series of 47 statements on which he bases his defamation claim, none of which allude to reporting on an AHCA investigation.

reported to AHCA for its Certificate of Need purposes; and AHCA's decision in authorizing the program to remove the condition that the program operate in partnership with the University of Miami. ECF No. 14-1 at 7. The article also reported on complaints filed with AHCA by parents of children who underwent heart surgery at St. Mary's, and reported AHCA's responses. ECF No. 14-1 at 11 (CNN reported: "In 2012, the McCarthy's filed a complaint against St. Mary's with [AHCA]. Shelisha Coleman, an agency spokeswoman, says the agency received a complaint in 2012 and 'did not find any evidence to substantiate the allegations made.' Two years later, the agency looked into the concerns brought up by the panel of expert reviewers, but 'did not identify noncompliance' with the agency's rules related to the issues that were raised."). In none of this journalism did CNN report that AHCA was "investigating" St. Mary's, as the district court erroneously held.

> CNN next reported on AHCA in its June 3 Article:
>
> Florida's Department of Health and [AHCA] issued a statement Wednesday saying, "Florida does not regulate the number of procedures performed at pediatric cardiac programs" and that [AHCA] "continues to closely monitor St. Mary's to ensure that they are following the law."

ECF No. 14-3 at 3. Again, CNN also did not report here—or at any other time— that AHCA was "investigating" St. Mary's.

Moreover, while the district court cites an AHCA press release as quoted in the complaint, the allegation expressly states that CNN reported AHCA was ***not*** investigating, and that the agency faulted CNN for that reporting:

> CNN reported that the Centers for Medicare & Medicaid Services (CMS) launched an investigation. **AHCA conducts investigations on behalf of CMS.** After being given this background information by AHCA, CNN left this important fact out of their story and reported that the state was "not investigating."

ECF No. 1 at 32 (emphasis in complaint); ECF No. 14-31.[14]

While CNN reported in its series on other investigations of St. Mary's, it did not report, as the district court mistakenly held, that AHCA "opened an investigation into St. Mary's as a result of its reporting." ECF No. 28 at 14. The district court's erroneous finding formed its basis for holding that Carbone had sufficiently met his requirements to plead falsity and actual malice. ECF No. 28 at 14. In light of this plain error, on *de novo* review this Court should reverse and hold CNN's reporting was not actionable.

> ### *Fair report privilege applies to protect CNN's reporting on other government agencies' investigations into St. Mary's.*

Because the district court erroneously held CNN falsely reported that AHCA was investigating, it declined to apply the fair report privilege to protect any of

---

[14] As AHCA and Carbone both alleged, federal CMS launched an investigation into St. Mary's. According to its press release, AHCA partnered with federal CMS to conduct that investigation. CNN does not contest this, and in fact reported on the federal CMS investigation. ECF No. 14-5 at 2.

CNN's reporting at all.  ECF No. 28 at 15 ("[I]t would be difficult to apply a privilege to a non-existent proceeding."); *see* Section II.B, *supra* (more fully discussing the fair report privilege).[15]  The district court, however, did not distinguish CNN's reporting that other government agencies had investigated St. Mary's—which Carbone does not dispute, and which therefore could be neither false nor unprivileged.  The Court should reverse this finding, apply the privilege, and hold that CNN's reporting on the other government agencies is not actionable under the privilege.

### B.    Carbone failed to plead that any of the challenged statements "concerns" him, and so his complaint should be dismissed.

The district court also erroneously held that CNN's reporting about St. Mary's was sufficient to defame Carbone, despite the fact that the statements he challenges in the complaint never mention him.  ECF No. 28 at 15–16; *see* Section II.B, *supra*.  CNN therefore requests the Court apply relevant Georgia law, find that Carbone has failed to meet his requirement to plead statements that "concern

---

[15] The district court also declined to apply the privilege on grounds that CNN's reporting on an AHCA investigation could constitute actual malice. ECF No. 28 at 15 ("Furthermore, actual malice, as discussed further below and as evidenced by CNN's continued publication about an official investigation when the AHCA had affirmatively state that none existed, generally overrules the privilege.").  As set forth above, CNN did not report on an AHCA investigation at all.

the plaintiff," and reverse the district court's denial of the Rule 12(b)(6) motion on this basis.

### C.   Carbone failed to sufficiently plead fault in publishing the challenged statements, and so his complaint should be dismissed.

The district court also erroneously concluded that Carbone sufficiently pled the actual malice level of fault because he alleges that he informed CNN its statistical comparison was false and that no AHCA investigation was ongoing. ECF No. 28 at 18 (*citing* ECF No. 1 at 31–32. Because this holding was based on two clearly erroneous findings, the Court should reverse the district court's holding and direct that the complaint be dismissed.

St. Mary's information to CNN that the hospital had calculated a risk-adjusted mortality rate for mixed open- and closed-heart procedures at St. Mary's, *see*, *e.g.*, ECF No. 1 at 37–38,[16] would not constitute sufficient evidence of actual malice. CNN is entitled, free from charges of actual malice, to report the raw mortality rates (and not risk-adjusted) for open-heart procedures (and not open- and closed-heart procedures). Mere advance denials by the plaintiff as to the accuracy of the journalism does not constitute a sufficient showing of actual malice, for either pleading or proof purposes. *See Torrance v. Morris Publ'g Grp.*, 656 S.E.2d 152, 155 (Ga. Ct. App. 2007) (holding plaintiffs "cannot show actual

---

[16] Explaining that St. Mary's parent company Tenet Healthcare informed CNN of a St. Mary's open- and closed-heart, risk-adjusted mortality rate.

malice merely by making assertions contrary to those of the identified sources from which the newspaper defendants obtained their information") (*citing Harte-Hanks Comm. v. Connaughton*, 491 U.S. 657, 692 n.37 (1989)).

The district court also mistakenly relied on STS's award of a two-star rating to St. Mary's, which CNN did not report, to further hold that Carbone had sufficiently plead actual malice.  To the contrary, as a matter of law, it is not actual malice for a journalist to omit facts simply because the plaintiff believes they are favorable.  *See Terrell v. Georgia Television Co.*, 449 S.E.2d 897, 899–00 (Ga. Ct. App. 1994) (failure to investigate statements regarding plaintiff does not constitute actual malice even when reporter knew that the speaker and plaintiff were enemies); *Brewer v. Rogers*, 439 S.E.2d 77, 82 (Ga. Ct. App. 1993) (dismissing claim when plaintiff presented no evidence indicating defendant's awareness of probable falsity), *cert. denied*, (Ga.), *cert denied*, 512 U.S. 1222 (1994).  Here, CNN investigated the matter deeply and fully set forth its rationale in its reporting.  Its decision to not report on a single STS metric is irrelevant.  Without sufficiently alleging the falsity of the comparative death rates, Carbone has failed to plead actual malice.

Similarly, the district court mistakenly found that the issue about AHCA sufficiently established actual malice to withstand CNN's motion to dismiss.  Specifically, the district court found that "[t]he AHCA was allegedly also drawing

52

CNN's attention to its reporting errors without effect," and this sufficiently established actual malice. ECF No. 28 at 18 (*citing* ECF No. 1 at 31–32). Again, this conclusion was based on the district court's clearly erroneous reading of Carbone's pleadings, and is undermined by CNN's reporting itself. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 707 (11th Cir. 2016) (when the complaint contradicts the reporting itself, courts will look to the reporting to determine whether malice was sufficiently pled). Thus, this Court should find no fault— amounting to either actual malice or negligence—in CNN's reporting because it never actually reported on an AHCA investigation.

### D.    As the district court correctly found, the statements of opinion in CNN's reporting are not actionable.

Finally, as more fully set forth above, the district court correctly found certain of the statements alleged in Carbone's complaint were nonactionable opinion. ECF No. 28 at 13; *see* Section II.B, *supra*. As such, this Court should affirm that finding and, if it does not strike, then dismiss the statements of nonactionable opinion from Carbone's claim.

* * *

This Court therefore should reverse the district court, direct it to grant the Rule 12(b)(6) motion, and dismiss the complaint. As to the "two chief allegations" in his complaint, Carbone failed to plead: falsity; that the statements "concerned" Carbone; fault by CNN; and that the statistical comparison amounts to more than a

53

non-actionable academic disagreement. And the district court's misreading of Carbone's allegations related to reporting on a nonexistent AHCA investigation led it to erroneously hold that the fair report privilege did not apply to protect reporting on other uncontested state and federal investigations. Finally, many of the challenged statements opinions are simply nonactionable opinion under Georgia law.

## Conclusion

For the foregoing reasons, CNN respectfully requests that this Court reverse the district court's holding and hold that Georgia's antiSLAPP law, as amended in 2016, applies in federal court. Additionally, CNN requests the Court apply the Georgia antiSLAPP law to strike Davide M. Carbone's claims and to order the award of CNN's attorney's fees. Finally, and in the alternative, CNN respectively requests that the Court reverse the district court's denial of CNN's motion to dismiss, and dismiss Carbone's defamation claim for the reasons set forth above.

Dated: August 1, 2017                    Respectfully submitted,

                                         *s/ Charles D. Tobin*
                                         Charles D. Tobin
                                         BALLARD SPAHR, LLP
                                         1909 K Street, NW
                                         12th Floor
                                         Washington, DC 20006-1157
                                         Tel: (202) 661-2218

                                         *Counsel for Appellant CNN*

**CERTIFICATE OF COMPLIANCE**

This document complies with the word limit of the Fed. R. App. P. 32(a)(7)(B) because, excluding parts of the document exempted by Fed. R. App. P. 32(f), this document contains 12,427 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6).

Dated: August 1, 2017                Respectfully submitted,

                                    *s/ Charles D. Tobin*
                                    Charles D. Tobin
                                    BALLARD SPAHR, LLP
                                    1909 K Street, NW
                                    12th Floor
                                    Washington, DC 20006-1157
                                    Tel: (202) 661-2218

                                    *Counsel for Appellant CNN*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of August, 2017, a true and correct copy of the foregoing Appellant's Opening Brief, was served upon the following opposing counsel, by filing electronically on the Courts ECF/CM system, and emailing same:

L. Lin Wood
Stacey Godfrey Evans
Jonathan David Grunberg
George Taylor Wilson
L. LIN WOOD, PC
1180 W. Peachtree St. Suite 2400
Atlanta, GA 30309
T: 404-891-1404

David E. Hudson
HULL BARRETT, PC
801 Broad St. Suite 700
Po. Box 1564
Augusta, GA 30901
T: 706-722-4481


Dated: August 1, 2017                 Respectfully submitted,

                                      *s/ Charles D. Tobin*_____
                                      Charles D. Tobin

# ADDENDUM

**§ 9-11-11.1. Certification that claim arising from act in furtherance of right of free speech or to petition government for redress of grievances is well grounded in fact and warranted by law**

 (a) The General Assembly of Georgia finds and declares that it is in the public interest to encourage participation by the citizens of Georgia in matters of public significance and public interest through the exercise of their constitutional rights of petition and freedom of speech. The General Assembly of Georgia further finds and declares that the valid exercise of the constitutional rights of petition and freedom of speech should not be chilled through abuse of the judicial process. To accomplish the declarations provided for under this subsection, this Code section shall be construed broadly.

(b)(1) A claim for relief against a person or entity arising from any act of such person or entity which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern shall be subject to a motion to strike unless the court determines that the nonmoving party has established that there is a probability that the nonmoving party will prevail on the claim.

(2) In making the determination as provided for in paragraph (1) of this subsection, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based; provided, however, that if there exists a claim that the nonmoving party is a public figure plaintiff, then the nonmoving party shall be entitled to discovery on the sole issue of actual malice whenever actual malice is relevant to the court's determination under paragraph (1) of this subsection.

(3) If the court determines that the nonmoving party under paragraph (1) of this subsection has established a probability that he or she would prevail on the claim, neither that determination nor the fact of such determination shall be admissible in evidence at any later stage of the case or in any subsequent action and no burden of proof or degree of proof otherwise applicable shall be affected by such determination in any later stage of the case or in any subsequent proceeding.

(b.1) In any action subject to subsection (b) of this Code section, a prevailing moving party on a motion to strike shall be granted the recovery of attorney's fees and expenses of litigation related to the action in an amount to be determined by the court based on the facts and circumstances of the case. If the court finds that a motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award attorney's fees and expenses of litigation to the nonmoving party prevailing on the motion for the attorney's fees and expenses of litigation

associated with the motion in an amount to be determined by the court based on the facts and circumstances of the case.

(c) As used in this Code section, the term "act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern" shall include:

(1) Any written or oral statement or writing or petition made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;

(2) Any written or oral statement or writing or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;

(3) Any written or oral statement or writing or petition made in a place open to the public or a public forum in connection with an issue of public interest or concern; or

(4) Any other conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with a public issue or an issue of public concern.

(d) All discovery and any pending hearings or motions in the action shall be stayed upon the filing of a motion to dismiss or a motion to strike made pursuant to

subsection (b) of this Code section until a final decision on the motion. The motion shall be heard not more than 30 days after service unless the emergency matters before the court require a later hearing. The court, on noticed motion and for good cause shown, may order that specified discovery or other hearings or motions be conducted notwithstanding this subsection.

(e) An order granting or denying a motion to dismiss or a motion to strike shall be subject to direct appeal in accordance with subsection (a) of Code Section 5-6-34.

(f) Nothing in this Code section shall affect or preclude the right of any party to any recovery otherwise authorized by common law, statute, law, or rule.

(g) This Code section shall not apply to any action brought by the Attorney General or a prosecuting attorney, or a city attorney acting as a prosecutor, to enforce laws aimed at public protection.

(h) Attorney's fees and expenses of litigation under this Code section shall be requested by motion at any time during the course of the action but not later than 45 days after the final disposition, including but not limited to dismissal by the plaintiff, of the action.