# In The United States Court of Appeals
# For The Eleventh Circuit

DAVIDE M. CARBONE,

*Plaintiff-Appellee,*

*v.*

CABLE NEWS NETWORK, INC.,

*Defendant-Appellant.*

*ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA*

## BRIEF FOR 25 AMICI CURIAE MEDIA ORGANIZATIONS IN SUPPORT OF DEFENDANT-APPELLANT

Yaakov M. Roth
Anthony J. Dick
Vivek Suri
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Tel: (202) 879-3939
Fax: (202) 626-1700
Email: yroth@jonesday.com

Peter C. Canfield
*Counsel of Record*
JONES DAY
1420 Peachtree Street, NE
Suite 800
Atlanta, GA 30309
Tel: (404) 521-3939
Fax: (404) 581-8330
Email: pcanfield@jonesday.com

*Counsel for Amici Curiae
(additional counsel listed in signature block)*

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

In accordance with Eleventh Circuit Rule 26.1-1, counsel certify that, in addition to the persons listed in the certificates of interested persons filed by the parties, the following persons (*amici curiae*, their parent corporations, publicly held corporations that own 10% or more of their stock, and their counsel) have an interest in the outcome of this case:

1.    ABC, Inc.

2.    Advance Publications, Inc.

3.    American Society of News Editors

4.    Association of Alternative Newsmedia

5.    Association of American Publishers

6.    Atlantic Media, Inc.

7.    Bernstein, Richard A.

8.    BlackRock, Inc. (BLK)

9.    Bloom, Jonathan

10.   Bloomberg L.P.

11.   Broadcast Media Partners Holdings, Inc.

12. Brown, Bruce D.

13. Burke, Thomas

14. Canfield, Peter C.

15. Clark, Kalea S.

16. Comcast Corporation (CMCSA)

17. Conti, Jason P.

18. Covington & Burling LLP

19. Cox Enterprises, Inc.

20. Cox Media Group

21. Curley, Tom

22. Davis Wright Tremaine LLP

23. Dick, Anthony J.

24. Dow Jones & Company, Inc.

25. The Economist Newspaper Limited

26. Eddy-Dorn, Heidi

27. Feder, Eric J.

28. The Financial Times Limited

29. Fletcher, Heald & Hildreth, PLC

30. Forrest, Carolyn

31.    Fox Television Stations, LLC

32.    Freeman, George

33.    Gannett Company, Inc. (GCI)

34.    Georgia Press Association

35.    Goldberg, Kevin M.

36.    Goldstein, Jacob P.

37.    Grut, Oscar

38.    Handman, Laura

39.    Hart, Jonathan

40.    Hudson, David E.

41.    Hull Barrett

42.    Jones Day

43.    Kennedy, Jay

44.    Leslie, Gregg P.

45.    McCraw, David E.

46.    McLaughlin, James A.

47.    Media Law Resource Center

48.    Meredith Corporation (MDP)

49.    Messenger, Ashley

50. Motion Picture Association of America, Inc.

51. Nash Holdings LLC

52. National Press Photographers Association

53. National Public Radio, Inc.

54. NBCUniversal Media, LLC

55. New World Communications of Atlanta, Inc.

56. The New York Times Company (NYT)

57. News Corporation (NWSA and NWS)

58. News Media Alliance

59. Nguyen, Lan

60. Online News Association

61. Osterreicher, Mickey H.

62. Pearson PLC (PSO)

63. Pila, Joshua N.

64. Ratner, Micah

65. The Reporters Committee for Freedom of the Press

66. Roth, Jacob M.

67. Ruby Newco, LLC

68. Sabin, Bermant & Gould LLP

69. Satyendra, Indira

70. Schary, Alison

71. Shapiro, Randy L.

72. Sheffner, Ben

73. Suri, Vivek

74. Twenty-First Century Fox, Inc. (FOX and FOXA)

75. Univision Communications, Inc.

76. Univision Holdings, Inc. (UVN)

77. The Walt Disney Company (DIS)

78. Weil, Gotshal & Manges LLP

79. Weiner, Susan E.

80. Wimmer, Kurt

81. WP Company LLC

82. Wyler, Artae

83. Zucker, John

Dated:  August 8, 2017        */s/* Peter C. Canfield

Peter C. Canfield
*Counsel for Amici Curiae*

**TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS AND

CORPORATE DISCLOSURE STATEMENT ...................................... C-1

TABLE OF AUTHORITIES ................................................................. II

STATEMENT OF IDENTITY OF AMICI CURIAE .............................. 1

STATEMENT OF ISSUES.................................................................. 3

SUMMARY OF ARGUMENT .............................................................. 4

ARGUMENT ...................................................................................... 6

I.   APPLYING THE ANTI-SLAPP PROVISION IN FEDERAL COURT

     WOULD PROTECT VALUABLE SPEECH ..................................................... 8

II.  APPLYING THE ANTI-SLAPP PROVISION IN FEDERAL COURT

     ACCORDS WITH SETTLED LEGAL PRINCIPLES ........................................ 15

     A.  The state provision comports with the federal rules ................ 17

     B.  Applying the state provision in federal court advances the

         twin aims of *Erie* ................................................................... 27

CONCLUSION .................................................................................. 31

CERTIFICATE OF COMPLIANCE.......................................................1a

CERTIFICATE OF SERVICE.............................................................2a

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbas v. Foreign Policy Grp., LLC,*

    783 F.3d 1328 (D.C. Cir. 2015) .......................................................... 26

*Adventure Outdoors, Inc. v. Bloomberg,*

    705 S.E. 2d 241 (Ga. Ct. App. 2010) .................................................. 10

*Armington v. Fink,*

    2010 WL 743524 (E.D. La. Feb. 24, 2010) ......................................... 14

*Ashcroft v. Iqbal,*

    556 U.S. 662 (2009) ............................................................................ 21

*Bell Atlantic Corp. v. Twombly,*

    550 U.S. 544 (2007) ............................................................................ 29

*Boley v. Atlantic Monthly Group,*

    950 F. Supp. 2d 249 (D.D.C. 2013) .................................................... 13

*Bose Corp. v. Consumers Union of U.S., Inc.,*

    466 U.S. 485 (1984) ............................................................................ 22

*Boxcar Development Corp. v. New World Communications of*

   *Atlanta, Inc.*, No. 08CV2248-10, 2008 WL 1943313

   (Ga. Super. Ct. May 1, 2008) ............................................................9

*Burlington N. R. Co. v. Woods*,

   480 U.S. 1 (1987).............................................................................17

*Byrd v. Blue Ridge Rural Elec. Co-Op.*,

   356 U.S. 525 (1958).........................................................................30

*CanaRx Services, Inc. v. LIN Television Corp.*,

   2008 WL 2266348 (S.D. Ind. May 29, 2008).....................................12

*Celotex Corp. v. Catrett*,

   477 U.S. 317 (1986).........................................................................21

*Cohen v. Beneficial Industrial Loan Corp.*,

   337 U.S. 541 (1949).........................................................................23

*Critical Care Diagnostics, Inc. v. American Association for*

   *Clinical Chemistry, Inc.*,

   2014 WL 634206 (S.D. Cal. Feb. 18, 2014).......................................12

*Erie RR. Co. v. Tompkins*,

   304 U.S. 64 (1938)....................................................................*passim*

iv

*Farah v. Esquire Magazine, Inc.*,

    863 F. Supp. 2d 29 (D.D.C. 2012) ................................................ 13, 14

*Four Navy Seals v. Associated Press*,

    413 F. Supp. 2d 1136 (S.D. Cal. 2005) ................................................ 11

*Freedman v. Maryland*,

    380 U.S. 51 (1965) ................................................ 22

*Garrison v. Louisiana*,

    379 U.S. 64 (1964) ................................................ 6

*Gasperini v. Ctr. for Humanities, Inc.*,

    518 U.S. 415 (1996) ................................................ 16, 27, 30

*Godin v. Schencks*,

    629 F.3d 79 (1st Cir. 2010) ................................................ 18, 20, 21

*Hanna v. Plumer*,

    380 U.S. 460 (1965) ................................................ *passim*

*Harkins v. Atlanta Humane Society*,

    618 S.E. 2d 16 (Ga. Ct. App. 2005) ................................................ 9

*Hilton v. Hallmark Cards,*

    599 F.3d 894 (9th Cir. 2009)..................................................................6

*Hindu Temple & Community Center v. Raghunathan,*

    714 S.E. 2d 628 (Ga. Ct. App. 2011)...................................................10

*Makaeff v. Trump Univ., LLC,*

    715 F.3d 254 (9th Cir. 2013)..............................................................25

*Makaeff v. Trump Univ., LLC,*

    736 F.3d 1180 (9th Cir. 2013)............................................... 20, 21, 26

*Masson v. New Yorker Magazine, Inc.,*

    501 U.S. 496 (1991)...........................................................................22

*Metzler v. Rowell,*

    547 S.E. 2d 311 (Ga. Ct. App. 2001)....................................................9

*New York Times Co. v. Sullivan,*

    376 U.S. 254 (1964)............................................................................6

*Palmer v. Hoffman,*

    318 U.S. 109 (1943).........................................................................30

*Providence Construction Co. v. Bauer*,

    494 S.E. 2d 527 (Ga. App. 1997)...........................................................8

*Royalty Network, Inc. v. Harris*,

    756 F.3d 1351 (11th Cir. 2014)......................................... 6, 15, 24, 25

*Russello v. United States*,

    464 U.S. 16 (1983).............................................................................19

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,

    559 U.S. 393 (2010)........................................................ 15, 17, 19, 24

*Sun Oil Co. v. Wortman*,

    486 U.S. 717 (1988)...........................................................................25

*Thomas v. L.A. Times Commc'ns LLC*,

    45 F. App'x 801 (9th Cir. 2002)........................................................11

*United States ex rel. Newsham v.*

    *Lockheed Missiles & Space Co.*,

    190 F.3d 963 (9th Cir. 1999)............................................................29

*Walker v. Armco Steel Corp.*,

    446 U.S. 740 (1980).................................................................... 17, 21

*Waters v. Churchill,*

    511 U.S. 661 (1994)......................................................................22

**STATUTES**

15 U.S.C. § 78 .............................................................................20

28 U.S.C. § 1652 ..........................................................................16

28 U.S.C. § 2072 ..........................................................................15

Ga. Code Ann. § 9-11-11.1 ............................................... *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9...........................................................................20

Fed. R. Civ. P. 11........................................................................24

Fed. R. Civ. P. 12.............................................................. *passim*

Fed. R. Civ. P. 14........................................................................19

Fed. R. Civ. P. 18........................................................................19

Fed. R. Civ. P. 23............................................................ 19, 23, 24

Fed. R. Civ. P. 56.............................................................. *passim*

Bryan A. Garner, *Guidelines for Drafting and Editing Court Rules* 29 (1996)..............................................................19

Lili Levi, *The Weaponized Lawsuit Against The Media*, 66 Am. U. L. Rev. 761, 822 n. 252 (2017)...................................................7

## STATEMENT OF IDENTITY OF AMICI CURIAE

*Amici curiae* are 25 leading news and media organizations. They and their members gather and report news, and produce and distribute motion pictures and television programs, throughout the United States, including in Georgia. They have an interest in advocating for the application of anti-SLAPP laws in federal court, so that newsgathering, reporting, and other First Amendment-protected activities remain protected from retaliatory federal lawsuits.

*Amicus curiae* are: ABC, Inc.; Advance Publications, Inc.; American Society of News Editors; Association of Alternative Newsmedia; Association of American Publishers, Inc.; Atlantic Media; Bloomberg L.P.; Cox Media Group; Dow Jones & Company, Inc.; The Economist Newspaper Limited; Gannett Co., Inc.; The Georgia Press Association; The Media Law Resource Center, Inc.; Meredith Corporation; Motion Picture Association of America, Inc.; The National Press Photographers Association; National Public Radio, Inc.; NBCUniversal; New World Communications of Atlanta, Inc.; The New York Times Company; The News Media Alliance; Online News

Association; The Reporters Committee for Freedom of the Press; Univision Communications Inc.; and The Washington Post.

Counsel for both parties have consented to the filing of this brief. No counsel for any party authored any part of this brief. No party or counsel for a party contributed money intended to fund the preparation or submission of this brief. No person (other than *amici curiae*, their members, and their counsel) contributed money intended to fund the preparation or submission of this brief.

## STATEMENT OF ISSUES

A Georgia statute requires anyone bringing a claim that targets speech or other petitioning on public issues to establish at the outset of the litigation that he has a probability of prevailing on the claim. Must a federal court exercising diversity jurisdiction apply this requirement?

## SUMMARY OF ARGUMENT

Strategic lawsuits against public participation (SLAPPs) are lawsuits filed in order to punish an adversary's speech rather than to raise a meritorious claim. The Georgia General Assembly dealt with this threat to free speech by requiring a plaintiff bringing a claim that targets speech or public petitioning to demonstrate, at the outset of the case, "a probability that [it] will prevail" on the claim. Ga. Code Ann. § 9-11-11.1(b)(1) (2016). Federal courts hearing claims under Georgia law must apply this speech-protective provision.

**I.** Applying Georgia's anti-SLAPP provision in federal court will protect valuable speech. Since the provision's enactment in 1996, many defendants — including media defendants — have invoked it in Georgia courts to rebuff lawsuits retaliating against them for their speech on public issues. Similarly, defendants in other States have invoked those States' anti-SLAPP provisions in order to overcome lawsuits that take aim at their speech on matters of public concern. Refusing to apply these provisions in federal court would strip these speakers of much-needed protection from abusive litigation.

4

**II.** Applying Georgia's law in federal court also accords with established legal principles governing use of state law in federal diversity cases. Under those principles, the federal court first asks whether the state provision "direct[ly] colli[des]" with a valid Federal Rule. *Hanna v. Plumer*, 380 U.S. 460, 472 (1965). If not, the state law governs so long as its application would advance the twin aims of *Erie*: avoiding inequitable administration of the law and discouraging forum-shopping. *Erie RR. Co. v. Tompkins*, 304 U.S. 64, 74–76 (1938).

Georgia's anti-SLAPP provision does not directly collide with the Federal Rules. The Rules set out *necessary* conditions for plaintiffs to advance to trial, not *sufficient* conditions. Georgia's imposition of an additional requirement thus reinforces these Rules; it does not contradict them. In addition, applying Georgia's statute in federal court plainly advances the twin aims of *Erie*. It avoids inequitable administration of the laws by ensuring that reporters and other speakers enjoy the same protections in federal court that they enjoy in state court. And it also discourages forum-shopping by ensuring that plaintiffs who file retaliatory lawsuits face the same hurdles in federal court that they face in state court.

## ARGUMENT

The United States has a "profound national commitment" to the ideal that "debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). This commitment recognizes that "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964).

Some plaintiffs, however, undermine this commitment to free debate by filing so-called strategic lawsuits against public participation (or SLAPPs). A SLAPP is a lawsuit that threatens "to deter common citizens," or members of the press, from exercising their constitutional right to speak about matters of public concern. *Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2009). SLAPPs "masquerade as ordinary lawsuits," but the plaintiffs who bring them have little hope of success on the merits. *Id.* at 902. Instead, the plaintiffs threaten to intimidate, coerce, and ultimately silence adversaries by "dragg[ing] [them] into onerous judicial proceedings." *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1357 (11th Cir. 2014). Left unchecked, these suits "imperi[l] … important First Amendment interests." *Id.*

Twenty-eight States and the District of Columbia have responded to this threat to public debate by enacting statutes meant to curb SLAPPs. *See* Lili Levi, *The Weaponized Lawsuit Against The Media*, 66 Am. U. L. Rev. 761, 822 n.252 (2017). Georgia is one such State. The provision of Georgia's anti-SLAPP law that is relevant here applies to any claim "arising from any act" that "could reasonably be construed as an act in furtherance of the … right of petition or free speech … in connection with an issue of public interest or concern." Ga. Code Ann. § 9-11-11.1(b)(1) (2016). Under the provision, a court must strike any such claim at the outset unless the claimant establishes "a probability that [it] will prevail on the claim." *Id.*

This Court should hold that federal courts hearing Georgia-law claims under diversity jurisdiction must apply this provision of the anti-SLAPP law. For one thing, applying the provision in federal court would protect valuable speech on matters of public concern, for media defendants and others alike. For another, honoring the state provision in federal court accords with settled legal principles, because the provision does not conflict with any federal procedural rule and because applying it would advance the aims of the *Erie* doctrine.

## I. APPLYING THE ANTI-SLAPP PROVISION IN FEDERAL COURT WOULD PROTECT VALUABLE SPEECH

State legislatures adopt anti-SLAPP statutes to promote a vital public goal: encouraging media organizations and other speakers to "participat[e] … in matters of public significance" through "petition[ing]" and "speech" without fear of retaliatory litigation. Ga. Code Ann. § 9-11-11.1(a). In amici's experience, these statutes do more than pursue this goal in theory; they also achieve the goal in practice.

To begin with, consider a few examples of cases in which Georgia defendants have invoked both the provision at issue here and other provisions of the Georgia statute to fight back against plaintiffs attempting to silence them.

(1) In *Providence Construction Co. v. Bauer*, 494 S.E. 2d 527, 528 (Ga. App. 1997), residents of a community "circulat[ed] petitions," "wr[ote] letters," and "sp[oke] out" against a property developer's efforts to rezone a plot of land. The developer sued for tortious interference with contract. *Id.* But the residents invoked the anti-SLAPP law and secured a quick escape from this "abusive litigation." *Id.*

(2)  In *Metzler v. Rowell*, 547 S.E. 2d 311, 312–13 (Ga. Ct. App. 2001), "concerned residents" vocally opposed  "the construction of [new] houses" in the neighborhood.  The builder hit them with a lawsuit for tortious interference with contract.  *Id*. at 313. But the anti-SLAPP statute enabled the residents to get the case dismissed.  *Id*. at 315.

(3)  In *Harkins v. Atlanta Humane Society*, 618 S.E. 2d 16, 18 (Ga. Ct. App. 2005), a "long-time animal-rights activist" criticized the operations of an animal-rights charity.  The activist made her remarks "in good faith," with the hope that she could "persuade government officials and the public at large to help change the problems" at the charity.  *Id*.  The charity responded by suing the activist for defamation. The activist invoked the anti-SLAPP statute to obtain a dismissal.  *Id*.

(4)  In *Boxcar Development Corp. v. New World Communications of Atlanta, Inc.*, No. 08CV2248-10, 2008 WL 1943313, at *1 (Ga. Super. Ct. May 1, 2008), a local news station aired an investigative report alleging that a business had been committing fraud.  The business sued the station.  *Id*.  But the station invoked the anti-SLAPP law to defeat the business's "unfounded lawsui[t]."  *Id*. at *2.

(5) In *Adventure Outdoors, Inc. v. Bloomberg*, 705 S.E. 2d 241, 243 (Ga. Ct. App. 2010), Mayor Michael Bloomberg and other New York City officials held a press conference where they accused a Georgia gun seller of making illegal gun sales. The seller sued the officials for slander. *Id.* The Georgia courts ruled that "citizens of other states" (such as the New York officials) could "receive the benefits of the anti-SLAPP statute." *Id.* at 244. The state courts then applied the statute to dismiss the lawsuit, thereby vindicating the officials' "right of free speech." *Id.* at 245.

(6) In *Hindu Temple & Community Center v. Raghunathan*, 714 S.E. 2d 628, 629 (Ga. Ct. App. 2011), a man helped police officers investigate allegations that a religious institution fraudulently charged donors' credit cards more than the donors had agreed to contribute. So the religious institution filed a lawsuit against him, in addition to "numerous" similar lawsuits against others who "claim[ed] to have been victimized by [the institution's] alleged criminal activity." *Id.* at 116. A dismissal under the anti-SLAPP statute protected the defendant from this "blatan[t] abus[e]" of "the judicial process." *Id.*

These examples are far from unique to Georgia. In amici's experience, anti-SLAPP statutes in other States have likewise shielded valuable public reporting and other speech from baseless litigation. Consider the following cases in which federal courts from across the country have dismissed claims under state anti-SLAPP laws.

(1) In *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1140 (S.D. Cal. 2005), the Associated Press published unaltered photographs that showed "Navy SEALs potentially engaged in abuse of Iraqi prisoners." The SEALs sued the Associated Press for invasion of privacy. *Id.* A federal court applied California's anti-SLAPP law to dismiss the case and to protect the Associated Press's "right of free speech." *Id.* at 1149.

(2) In *Thomas v. L.A. Times Commc'ns LLC*, 45 F. App'x 801, 802 (9th Cir. 2002), *The Los Angeles Times* published an article questioning the plaintiff's claims to have engaged in heroic exploits during and after the Second World War. The plaintiff sued for defamation. *Id.* Invoking California's anti-SLAPP law, the federal district court dismissed the case. *Id.* The Ninth Circuit then affirmed. *Id.* at 803.

(3) *Critical Care Diagnostics, Inc. v. American Association for Clinical Chemistry, Inc.*, 2014 WL 634206 (S.D. Cal. Feb. 18, 2014), concerned an article concerning heart disease in a peer-reviewed science journal. The article questioned the effectiveness of a medical product at helping detect heart disease. *Id.* at *1. The patentholder of the medical product responded by suing the publisher of the journal for libel and trade libel. *Id.* at *2. The federal district court explained that the article concerned "an issue of public interest," because heart disease is "the leading cause of death for both men and women" in America. *Id.* at *4–5. Applying California's anti-SLAPP statute, the court dismissed the case. *Id.* at *8.

(4) In *CanaRx Services, Inc. v. LIN Television Corp.*, 2008 WL 2266348, at *1 (S.D. Ind. May 29, 2008), a local broadcaster aired a news report raising concerns that a Canadian company had sold illegal and counterfeit pharmaceutical drugs in the United States. The company sued the broadcaster for defamation. *Id.* at *3. The federal court — which understood that the sale of illegal and counterfeit prescription drugs is an "issue of public concern" (*id.* at *7) — applied Indiana's anti-SLAPP law to dismiss the case (*id.* at *9).

(5)  In *Farah v. Esquire Magazine, Inc.*, 863 F. Supp. 2d 29, 31 (D.D.C. 2012), *Esquire Magazine* published a blog post that satirized a group of birthers (people who questioned whether President Barack Obama was born in the United States and thus eligible to serve as President).  The birthers in question, who had published a book entitled *Where's the Birth Certificate?  The Case That Barack Obama Is Not Eligible To Be President*, sued for defamation and interference with business relations.  *Id.*  A federal district court applied the District of Columbia's anti-SLAPP law to dismiss the case.  *Id.* at 36.

(6)  In *Boley v. Atlantic Monthly Group*, 950 F. Supp. 2d 249, 253 (D.D.C. 2013), *The Atlantic* published articles that referred to George Boley, a Liberian public official during the Liberian Civil War of the early 1990s, as a "warlord."  The articles also suggested that Boley "belongs in the Hague" for "war crimes."  *Id.*  Boley sued for defamation. *Id.* at 254.  The federal district court, however, explained that "statements concerning the alleged commission of war crimes … are quintessentially matters of public rather than private interest." *Id.* at 256.  Applying the District of Columbia's anti-SLAPP law, the court dismissed the case.  *Id.* at 263.

(7)  In *Armington v. Fink*, 2010 WL 743524, at *1 (E.D. La. Feb. 24, 2010), *The New York Times Magazine* published an article suggesting that staff at a New Orleans hospital had euthanized patients in the aftermath of Hurricane Katrina.  The article won the Pulitzer Prize in Investigative Reporting, but it also prompted a defamation lawsuit. The federal district court applied Louisiana's anti-SLAPP statute and dismissed the plaintiffs' claims.  *Id.* at *7.

Put simply, state anti-SLAPP statutes do more than protect freedom of speech in theory.  They do so in practice.  Time and again, these laws have protected media organizations and other speakers from retaliatory lawsuits — in Georgia and also in other States.  Refusing to apply such statutes in federal court would severely undercut States' efforts to foster vibrant debate on public issues.  It would mean, for example, that a Georgia journalist who wants to report on a developer, business, or charity located in a different State would have to think about the threat of retaliatory litigation before speaking his mind — contrary to the Georgia legislature's objective of encouraging full participation "in matters of public significance" (Ga. Code Ann. § 9-11-11.1).  The Court should not apply *Erie* so as to produce that result.

14

## II. APPLYING THE ANTI-SLAPP PROVISION IN FEDERAL COURT ACCORDS WITH SETTLED LEGAL PRINCIPLES

Ever since *Erie Railroad Co. v. Tompkins*, federal courts sitting in diversity have applied state substantive law and federal procedural law. This "allocation of judicial power between state and federal systems" constitutes "one of the modern cornerstones of our federalism." *Hanna*, 380 U.S. at 474 (Harlan, J., concurring).

To distinguish substantive rules from procedural ones, and thus to determine whether a state or federal provision governs a particular issue in a diversity case, federal courts apply a "familiar" two-step test. *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); *see Royalty Network*, 756 F.3d at 1357. The first part of the test asks whether the state law comes into "direct collision" with a valid Federal Rule adopted in accordance with the Rules Enabling Act (28 U.S.C. § 2072). *Hanna*, 380 U.S. at 472 (majority op.); *Royalty Network*, 756 F.3d at 1357. If there is such a conflict, the state law must give way to the Federal Rule. *Hanna*, 380 U.S. at 473–74; *Royalty Network*, 756 F.3d at 1358.

If no direct conflict exists, the court proceeds to the second step, which asks whether the Rules of Decision Act (28 U.S.C. § 1652) requires application of state law. Here, the court considers whether application of the state provision would advance the "twin aims" of *Erie* — namely, avoiding unfair discrimination in the administration of state law and discouraging forum-shopping. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 428 (1996). If it would, the Rules of Decision Act requires the federal court to apply the state provision. *Id.*

These principles resolve the present case. Georgia's anti-SLAPP provision does not directly collide with any Federal Rule, because no Federal Rule affirmatively authorizes litigants to proceed with the kinds of claims that the Georgia statute bars. Similarly, applying Georgia's anti-SLAPP provision would advance the twin aims of *Erie*; it would ensure evenhanded treatment of speakers regardless of whether they target in-state or out-of-state entities for criticism, and it would dissuade the targets of such criticism from engaging in forum-shopping. The Rules of Decision Act and the *Erie* doctrine thus require application of the state anti-SLAPP provision in diversity cases.

16

## A. The State Provision Comports With The Federal Rules

A Federal Rule adopted in accordance with the Rules Enabling Act blocks application of a state law only if the Rule comes into "direct collision" with the state law. *Hanna*, 380 U.S. at 472. Establishing a "direct collision" is difficult. It requires showing that the Federal Rule and state provision "unavoidabl[y]" "clash" (*Walker v. Armco Steel Corp.*, 446 U.S. 740, 749 (1980)), "unmistakably conflic[t]" (*Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 7 (1987)), or "flatly contradict each other" (*Shady Grove*, 559 U.S. at 405). No "direct collision" arises if the two provisions "can exist side by side," "each controlling its own intended sphere of coverage." *Walker*, 446 U.S. at 752.

Here, the only arguably relevant Federal Rules are Civil Rule 12 (which authorizes parties to file motions to dismiss) and Civil Rule 56 (which authorizes parties to seek summary judgment). Georgia's anti-SLAPP provision, however, does not directly collide with either of these. To the contrary, a federal court can (and should) give full effect to both the Federal Rules and the state provision in diversity cases, because the two establish complementary rather than contradictory grounds for resolving claims.

**1.** Most importantly, Rules 12 and 56 set out minimum requirements that claimants must satisfy at the pleading and pretrial stages — necessary but not sufficient conditions for moving forward to trial. By imposing an additional requirement, Georgia's anti-SLAPP provision *reinforces* Rules 12 and 56; it does not *contradict* them.

Start with the plain text of the Rules. That text shows that the Rules establish grounds for *disposing* of claims, not grounds for *proceeding* with them. Rule 12(b) identifies one way to get rid of a claim: "[A] party may assert [certain] defenses," such as "failure to state a claim," "by motion" at the pleading stage. Rule 56(a) identifies another way to get rid of a claim: "A party may move for summary judgment" where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Critically, neither Rule states that claimants enjoy an affirmative right to move forward with their claims if they satisfy the Rules' requirements. *See Godin v. Schencks*, 629 F.3d 79, 86 (1st Cir. 2010). Rule 12 does not say that "plaintiffs who state a claim to relief may proceed to discovery." And Rule 56 does not say that "plaintiffs who raise a genuine issue of material fact may proceed to trial."

The Rules Committee's drafting conventions underscore this interpretation. "The Federal Rules regularly use 'may' to confer categorical permission." *Shady Grove*, 559 U.S. at 398. Indeed, the Rules Committee's authoritative drafting guidelines direct drafters to use "may" to mean "has a right to." Bryan A. Garner, *Guidelines for Drafting and Editing Court Rules* 29 (1996). For example, Rule 14(a)(1) confers a right to implead by providing that a defendant "*may*, as third-party plaintiff, serve a summons and complaint on a nonparty." Rule 18(a) confers a right to join claims by providing that a party "*may* join … as many claims as it has against an opposing party." Rule 23(b) confers a right to maintain class actions by providing that "[a] class action *may* be maintained" under specified conditions. And so on.

In marked contrast, Rules 12 and 56 lack the kind of rights-conferring language that all of these other Rules contain; to repeat, they do not say that a party "may maintain" a claim if it satisfies the Rules' prerequisites. The inclusion of such language in many other Rules, but not in these Rules, shows that the rulemakers "act[ed] intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983).

19

The existence of numerous federal provisions identifying additional grounds for disposing of a case pretrial further confirm that Rules 12 and 56 set out minimal requirements rather than exhaustive ones. *See Godin*, 629 F.3d at 91. For example, Rule 9(b) requires fraud plaintiffs to "state with particularity the circumstances constituting fraud." Similarly, the Private Securities Litigation Reform Act requires certain securities-law plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). If Rules 12 and 56 affirmatively authorized any plaintiff who meets their requirements to proceed to trial, they would contradict these provisions.

Since Rules 12 and 56 merely "provide various theories upon which a suit may be disposed of before trial," but "do not provide that a plaintiff is entitled to maintain his suit if their requirements are met," they do not directly conflict with the state anti-SLAPP law. *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1182 (9th Cir. 2013) (Wardlaw, J., concurring in denial of reh'g en banc). The state law, after all, simply creates a "separate and additional theory" for disposing of claims. *Id.* It "supplements" the Federal Rules; it does not contradict them. *Id.*

20

**2.** In addition, no collision between state and federal provisions arises when each provision pursues a "separate purpos[e]" and operates in a separate "sphere of coverage." *Walker*, 446 U.S. at 752 & n.13. The Federal Rules and the state anti-SLAPP provision do just that.

The object of Rules 12 and 56 is to winnow claims and defenses over the course of litigation. A motion to dismiss accomplishes that aim by testing "the sufficiency of a complaint" (*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)), while summary judgment does so by "isolat[ing] and dispos[ing] of factually unsupported claims" before trial (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). The object of the anti-SLAPP law, by contrast, is to "encourage participation by the citizens of Georgia in matters of public significance and public interest." Ga. Code Ann. § 9-11-11.1(a). An anti-SLAPP motion serves that purpose by protecting speech and petitioning from retaliatory lawsuits that lack a probability of prevailing. *Id.* § 9-11-11.1(b). The Federal Rules and state provisions thus ask "entirely different question[s]," "serve different purposes," and "control different spheres." *Makaeff*, 736 F.3d at 1182 (Wardlaw, J., concurring); *see also, e.g.*, *Godin*, 629 F.3d at 89. So the provisions do not directly collide with each other.

**3.** The Supreme Court's First Amendment cases confirm that heightened protection for speech is perfectly compatible with the ordinary rules of civil procedure. The Court has frequently granted distinctive safeguards to defendants in speech cases — "a particular allocation of the burden of proof, a particular quantum of proof, a particular type of appellate review, and so on." *Waters v. Churchill*, 511 U.S. 661, 669 (1994); *see, e.g.*, *Freedman v. Maryland*, 380 U.S. 51, 58–60 (1965) (government bears burden of proving that speech is unprotected); *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991) (libel plaintiff must prove actual malice by clear and convincing evidence); *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 503–11 (1984) (appellate court in speech case must independently examine the record rather than review district court's findings for clear error). These special speech-protective requirements add to the ordinary rules of civil procedure; they do not contradict them.

The same goes for Georgia's anti-SLAPP provision. This provision, too, creates a distinctive safeguard for defendants in speech cases. This special speech-protective requirement adds to the ordinary rules of civil procedure without contradicting them.

**4.** Precedent reinforces this analysis. This case most closely resembles *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), which found no conflict between federal and state provisions addressing shareholder derivative lawsuits. The Federal Rule in *Cohen* (former Rule 23, now Rule 23.1) established prerequisites for bringing such lawsuits; for example, the shareholder had to verify the complaint and identify previous attempts to use the corporation's internal procedures to resolve the problem. The state law in *Cohen* imposed an *additional* prerequisite intended to deter frivolous derivative lawsuits; shareholders had to post bond covering the corporation's costs and attorneys' fees. The Supreme Court held that federal courts could apply the state rule, because there is "n[o] conflict" between the requirements set out by the Federal Rule and the supplemental requirement set out by state law. *Id.* at 556.

So too here. As in *Cohen*, the Federal Rules list certain minimum requirements for maintaining lawsuits. As in *Cohen*, the state law adds a further requirement to the list in order to deter abusive lawsuits. And as in *Cohen*, federal courts may apply the state law, since the state requirements do not conflict with their federal counterparts.

At the same time, this case contrasts sharply with others finding a direct collision between federal and state law. For example, in *Shady Grove*, the Supreme Court found a direct conflict between Civil Rule 23(b) (which said that a class action "may be maintained" if the plaintiff satisfies certain conditions) and a New York class-action statute (which said that a class action "may not be maintained" if the plaintiff seeks statutory penalties). 559 U.S. at 396 nn.1–2. Similarly, in *Royalty Network*, this Court found a conflict between Rule 11(a) (which says that "a pleading need not be verified") and a different provision in Georgia's anti-SLAPP statute (which says that complaints targeting speech and petitioning *must be* verified). 756 F.3d at 1358–59. Those cases involve unequivocal contradictions between federal and state provisions: One says that a class action "may" be maintained while the other says it "may not" be, or one says that a pleading "need not" be verified while the other says it must be. This case, by contrast, involves no comparable contradiction. The state provision requires a plaintiff targeting speech and petitioning to show a probability of success, and nothing in the Federal Rules says that he "need not" do so.

**5.** To be sure, some appellate judges have concluded that anti-SLAPP provisions such as Georgia's do not apply in federal court. But these judges' arguments are unconvincing.

To start, a concurrence by then-Chief Judge Kozinski asserts that because an anti-SLAPP provision is supposedly procedural, it does not apply in federal court, "no matter how little [it] interfere[s] with the Federal Rules." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 273 (9th Cir. 2013) (Kozinski, C.J., concurring).

With respect, this approach is incorrect. Under the "two-part test" (*Royalty Network*, 756 F.3d at 1357) set out in *Hanna*, substantive rules are distinguished from procedural ones based on (1) whether the state law conflicts with a valid Federal Rule, and (2) whether applying the state rule advances the twin aims of *Erie*. *See* 380 U.S. at 472. There is no separate inquiry into the state rule's status as "substantive" or "procedural." Those terms, after all, lack fixed meanings and depend on "context" and "the purposes for which the dichotomy is drawn," *Sun Oil Co. v. Wortman*, 486 U.S. 717, 726 (1988). A freewheeling inquiry into whether a state law is "substantive" or "procedural" thus gets a court nowhere, in addition to being inconsistent with *Hanna*.

Taking a different approach, Judge Watford has said that the anti-SLAPP provision conflicts with the Rules because Rules 12 and 56 establish "exclusive criteria" for testing the "factual sufficiency of a claim." *Makaeff*, 736 F.3d at 1188 (Watford, J., dissenting from denial of reh'g en banc). That is incorrect. For one thing, the claim of exclusivity has no basis in the text. Rules 12 and 56 nowhere say that they establish "exclusive" criteria. For another, the claim of exclusivity contradicts the relevant context. Many federal provisions impose factual-sufficiency requirements that go beyond Rules 12 and 56. *Supra* 20. These provisions could not exist if Rules 12 and 56 were "exclusive."

Along similar lines, the D.C. Circuit has said that an anti-SLAPP provision like Georgia's conflicts with the Rules because "a plaintiff is generally entitled to trial if he or she meets the Rules 12 and 56 standards." *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1334 (D.C. Cir. 2015). That argument too is wrong, because it rests on a flawed premise. As shown, nothing in the Federal Rules "entitles" a plaintiff who overcomes Rules 12 and 56 to go to trial. *Supra* 20. The D.C. Circuit offered no justification for reading Rules 12 and 56 to confer such an "entitlement," and no justification exists.

**B. Applying The State Provision In Federal Court Advances The Twin Aims Of *Erie***

In the absence of a controlling Federal Rule, federal courts sitting in diversity must apply state law where doing so would advance the "twin aims of the *Erie* rule" — avoiding inequitable administration of state law and discouraging forum-shopping. *Gasperini*, 518 U.S. at 428. Under this standard, federal courts must enforce state rules that "make [an] important ... difference to the character or result of the litigation," or "have [an] important ... effect upon the fortunes of ... the litigants." *Hanna*, 380 U.S. at 468 n.9. At the same time, federal courts may tolerate "trivial" discrepancies between federal and state practice (such as variations in "time limits" for filing pleadings). *Id.* at 468.

Applying Georgia's anti-SLAPP provision in federal court would surely advance the twin aims of *Erie*. It would avoid inequitable administration of the laws by ensuring that people who speak out on public issues remain protected from retaliatory lawsuits in federal and state courts alike. And it would discourage targets of public criticism from choosing federal court over state court when they seek to launch vindictive litigation.

**1.** One of *Erie*'s aims is avoiding the "grave discrimination" and denial of "equal protection" that arises when one set of rules governs a claim brought by a state citizen in state court, but a substantially different set of rules governs the same claim brought by a noncitizen in federal court. *Erie*, 304 U.S. at 74–75.

Applying Georgia's anti-SLAPP provision in state but not federal courts would produce precisely the kind of discrimination that *Erie* aims to avoid. It would mean (for example) that a Georgia journalist could enjoy protection from retaliatory lawsuits when he criticizes a citizen of Georgia, but not when he levels the same criticism against a citizen of Florida. In the former case, in state court, the journalist could move to strike the claims at once on the grounds that they lack a probability of prevailing. But in the latter case, in federal court under diversity jurisdiction, the "fortunes of … the litigants" (*Hanna*, 380 U.S. at 468 n.9) would be very different, because the same journalist would have to endure months of pleading, discovery, and trial. The result is a two-tier marketplace of ideas, in which Georgia journalists receive more or less protection depending on where the targets of their criticism happen to live. *Erie* directs courts to avoid such a dichotomy.

**2.** *Erie* also aims to prevent the forum-shopping that would arise if federal and state courts applied "materially … differ[ent]" rules to resolve identical claims. *Hanna*, 380 U.S. at 467.

Applying Georgia's anti-SLAPP provision in state but not federal court would undermine this objective. Far from having merely "trivial" consequences (*Hanna*, 380 U.S. at 468), an anti-SLAPP rule makes an "important … difference to the character … of the litigation" (*id.* at 468 n.9). Its probability-of-prevailing standard makes it much harder for the plaintiff to survive the pleading and pretrial stages of the case; that is the whole point. Plaintiffs who want to intimidate their critics through litigation would thus avoid suing in state court, where they know they would face this anti-SLAPP hurdle. They would instead proceed in federal court, where they could put their critics through discovery "even if … actual proof of [the allegations] is improbable" (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Accordingly, "litigant[s] interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum." *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999). *Erie* requires federal courts to avoid such an outcome.

29

**3.** Precedent confirms this reasoning. A long line of cases holds that *state* law sets the standards of proof litigants must satisfy at successive stages of a diversity case. For example, state law "defin[es] the evidence sufficient" to go to the jury. *Byrd v. Blue Ridge Rural Elec. Co-Op.*, 356 U.S. 525, 540 n.15 (1958). State law determines the "burden of proof" that a litigant must satisfy in order to prevail before the jury. *Palmer v. Hoffman*, 318 U.S. 109, 116 (1943). And once the jury rules, state law "suppli[es] the test for federal-court review of the size of the verdict." *Gasperini*, 518 U.S. at 426. In each instance, applying the state standard (even if it is more rigorous than the federal standard) is necessary to secure "*Erie*'s twin aims." *Id.* at 430.

Likewise in this case. Georgia's anti-SLAPP law establishes the standard of proof that a litigant must satisfy at one particular stage of the case; specifically, the plaintiff must show at the outset that his claims have a probability of prevailing. Just as state law determines the standard of proof to which litigants are held at other stages of litigation, it determines the standard of proof to which litigants are held at this stage.

30

## CONCLUSION

The Court should rule that federal courts sitting in diversity should apply the provision of Georgia's anti-SLAPP statute requiring claimants to show a probability of prevailing on their claims.

Dated: August 8, 2017

Yaakov M. Roth
Anthony J. Dick
Vivek Suri
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Tel: (202) 879-3939
Fax: (202) 626-1700
Email: yroth@jonesday.com

Respectfully submitted,

/s/ Peter C. Canfield

Peter C. Canfield
  *Counsel of Record*
JONES DAY
1420 Peachtree Street, NE
Suite 800
Atlanta, GA 30309
Tel: (404) 521-3939
Fax: (404) 581-8330
Email: pcanfield@jonesday.com

*Counsel for Amici Curiae*

John Zucker
Indira Satyendra
ABC, INC.
77 West 66th St., 15th Fl.
New York, NY 10023
*Counsel for ABC, Inc.*

Richard A. Bernstein
SABIN, BERMANT & GOULD LLP
One World Trade Center, 44th Fl.
New York, NY 10007
*Counsel for Advance Publications,*
    *Inc.*

Kevin M. Goldberg
FLETCHER, HEALD & HILDRETH,
    PLC
1300 N. 17th St., Ste. 110
Arlington, VA 22209
*Counsel for American Society of*
    *News Editors and Association of*
    *Alternative Newsmedia*

Jonathan Bloom
WEIL, GOTSHAL & MANGES LLP
767 Fifth Ave.
New York, NY 10153
*Counsel for Association of*
    *American Publishers, Inc.*

Aretae Wyler
ATLANTIC MEDIA
600 New Hampshire Ave., NW
Washington, DC 20037
*Counsel for Atlantic Media*

Randy L. Shapiro
BLOOMBERG L.P.
731 Lexington Ave.
New York, NY 10022
*Counsel for Bloomberg L.P.*

Heidi Eddy-Dorn
COX MEDIA GROUP
6205 Peachtree Dunwoody Rd.
Atlanta, GA 30228
*Counsel for Cox Media Group*

Jason P. Conti
Jacob P. Goldstein
DOW JONES & COMPANY, INC.
1211 Avenue of the Americas, 7th
    Fl.
New York, NY 10036
*Counsel for Dow Jones & Co., Inc.*

Oscar Grut
THE ECONOMIST NEWSPAPER LTD.
20 Cabot Square
London E14 4QW
United Kingdom
*Counsel for The Economist*
    *Newspaper Ltd.*

Tom Curley
GANNETT CO., INC.
7950 Jones Branch Dr.
McLean, VA 22107
*Counsel for Gannett Co., Inc.*

32

David E. Hudson
HULL BARRETT
801 Broad St., 7th Fl.
Augusta, GA 30901
*Counsel for Georgia Press
    Association*

George Freeman
MEDIA LAW RESOURCE CENTER,
    INC.
266 West 37th St., 20th Fl.
New York, NY  10018
*Counsel for Media Law Resource
    Center, Inc.*

Joshua N. Pila
MEREDITH CORPORATION
425 14th St., NW
Atlanta, GA 30318
*Counsel for Meredith Corporation*

Ben Sheffner
MOTION PICTURE ASSOCIATION OF
    AMERICA, INC.
15301 Ventura Blvd., Bldg. E
Sherman Oaks, CA 91403
*Counsel for Motion Picture
    Association of America, Inc.*

Mickey H. Osterreicher
NATIONAL PRESS PHOTOGRAPHERS
    ASSOCIATION
120 Hooper St.
Athens, GA 30602
*Counsel for the National Press
    Photographers Association*

Jonathan Hart
Ashley Messenger
Micah Ratner
NATIONAL PUBLIC RADIO, INC.
1111 North Capitol St. NE
Washington, DC 20002
*Counsel for National Public
    Radio, Inc.*

Susan E. Weiner
NBCUNIVERSAL
30 Rockefeller Plaza
New York, NY 10112
*Counel for NBCUniversal*

Carolyn Forrest
NEW WORLD COMMUNICATIONS OF
    ATLANTA, INC.
1551 Briarcliff Rd. NE
Atlanta, GA 30306
*Counsel for New World
    Communications of Atlanta, Inc.*

David E. McCraw
THE NEW YORK TIMES COMPANY
620 Eighth Ave.
New York, New York 10018
*Counsel for The New York Times
    Company*

Kurt Wimmer
COVINGTON & BURLING LLP
One City Center
850 Tenth St., NW
Washington, DC 20001
*Counsel for News Media Alliance*

33

Thomas Burke
Eric J. Feder
Laura Handman
Alison Schary
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave. NW
Washington, DC 20006
*Counsel for Online News*
  *Association*

Bruce D. Brown
Gregg P. Leslie
THE REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, D.C. 20005
*Counsel for Reporters Committee*
  *for Freedom of the Press*

Lan Nguyen
UNIVISION COMMUNICATIONS INC.
605 Third Ave., 12th Fl.
New York, NY 10158
*Counsel for Univision*
  *Communications, Inc.*

Jay Kennedy
James A. McLaughlin
Kalea S. Clark
THE WASHINGTON POST
One Franklin Square
Washington, DC 20071
*Counsel for The Washington Post*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations contained in Federal Rule of Appellate Procedure 29(a)(5) because, excluding the portions exempted by Rule 32(f), the brief contains 5,655 words, as determined by the Microsoft Word 2007 program used to prepare it.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Century Schoolbook Standard.

Dated: August 8, 2017       */s/* Peter C. Canfield

Peter C. Canfield
*Counsel for Amici Curiae*

# CERTIFICATE OF SERVICE

I certify that on August 8, 2017, I electronically filed the foregoing brief with the United States Court of Appeals for the Eleventh Circuit using the ECF system.  All parties have consented to receive electronic service and will be served by the ECF system.


Dated:  August 8, 2017

/s/ Peter C. Canfield

Peter C. Canfield
*Counsel for Amici Curiae*