No. 17-10812

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____

DAVIDE M. CARBONE,

*Plaintiff-Appellee*,

v.

CABLE NEWS NETWORK, INC.,

*Defendant-Appellant.*
_____

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

THE HONORABLE ORINDA D. EVANS
CIVIL No. 1:16-CV-01720-ODE

_____

**APPELLANT'S REPLY BRIEF**

_____

Charles D. Tobin
Ballard Spahr, LLP
1909 K Street, NW
12th Floor
Washington, DC
20006-1157
Tel: (202) 661-2218

*Attorney for Appellant Cable News Network, Inc.*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26 and 11th Cir. R. 26.1-1 and 26.1-2, Defendant-Appellant Cable News Network, Inc. submits the following complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

Cable News Network, Inc.

Carbone, Davide M.

Evans, Orinda D.

Evans, Stacey Godfrey

Historic TW Inc.

Ballard Spahr LLP

L. Lin Wood, P.C.

S.G. Evans Law, LLC

Time Warner Inc. (stock ticker "TWX")[1]

Tobin, Charles D.

---

[1] No entity or person owns more than 10% of Time Warner Inc.'s issued outstanding common stock.

C-1

Turner Broadcasting System, Inc.

Wood, L. Lin

No entity or person owns more than 10% of Time Warner Inc.'s issued outstanding common stock.

Respectfully submitted,

*s/ Charles D. Tobin*
Charles D. Tobin
BALLARD SPAHR, LLP
1909 K Street, NW
12th Floor
Washington, DC 20006-1157
Tel: (202) 661-2218

*Counsel for Appellant CNN*

## **TABLE OF CONTENTS**

**Page**

I.    The Federal Rules Do Not Preempt Georgia's AntiSLAPP Law. ..................1

    A.    Determining the "Question in Dispute" Starts with the Plain Language of the Text of the Rules. .......................................................1

    B.    Appellee Unconvincingly Asks this Court to Disregard the Weight of Relevant Authority.............................................................................6

    C.    "Plausibility" Under Rule 12 and "Probability" Under the Georgia Law do not Conflict Under *Shady Grove*...........................................10

II.   The AntiSLAPP Statute is Constitutional. ....................................................12

III.  The AntiSLAPP Statute Applies Retroactively.............................................14

IV.   The Merits of CNN's Reporting ....................................................................16

    A.    Carbone Has Not Shown a Probability that CNN's Reporting Was False................................................................................................16

    B.    The Alleged Defamation Amounts to a Dispute of Academic Opinion. ..............................................................................................18

    C.    The CNN Story Is Protected by Fair Reporting Privilege. ................20

    D.    CNN's Reporting is Not "Of or Concerning" Carbone. .....................23

V.    Denial of CNN's Rule 12(b)(6) Motion .......................................................25

VI.   Conclusion .....................................................................................................27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

FEDERAL CASES

*800 Mktg. Sols., Inc. v. GMAC Ins. Mgmt. Corp.*,

    No. 3:06-CV-038 (CDL), 2008 WL 2777140 (M.D. Ga. July 14, 2008) ..........23

*Adelson v. Harris*,

    774 F.3d 803 (2d Cir. 2014) ..................................................................................8

*Bell Atl. Corp. v. Twombly*,

    550 U.S. 544 (2007)...................................................................................10, 12

*Block v. Tanenhaus*,

    No. 16-30966, 2017 WL 3482246 (5th Cir. Aug. 15, 2017)................................8

*Brayton v. Crowell-Collier Pub. Co.*,

    205 F.2d 644 (2d Cir. 1953) .............................................................................24

*Broadway v. State Farm Mut. Auto. Ins. Co.*,

    4 F. Supp. 3d 1271 (M.D. Ala. 2014).................................................................12

*Burke v. Air Serv Int'l, Inc.*,

    685 F.3d 1102 (D.C. Cir. 2012).........................................................................11

*Burlington N. R. Co. v. Woods*,

    480 U.S. 1 (1987)................................................................................................2

*Desnick v. Am. Broad. Companies, Inc.*,

    44 F.3d 1345 (7th Cir. 1995) .............................................................................25

*Dilworth v. Dudley,*

    75 F.3d 307 (7th Cir. 1996) ..........................................................19, 20

*Edward Lewis Tobinick, MD v. Novella*,

    108 F. Supp. 3d 1299 (S.D. Fla. 2015) ..............................................10

*Edward Lewis Tobinick, MD v. Novella*,

    848 F.3d 935 (11th Cir. 2017) .....................................................9, 10

*Erie R. Co. v. Tompkins*,

    304 U.S. 64 (1938).......................................................................8, 15

*Godin v. Schencks*,

    629 F.3d 79 (1st Cir. 2010)...................................................5, 7, 8, 13

*Guaranty Trust Co. v. York*,

    326 U.S. 99 (1945).............................................................................15

*Hanna v. Plumer*,

    380 U.S. 460 (1965)............................................................................8

*Henry v. Lake Charles Am. Press, L.L.C.*,

    566 F.3d 164 (5th Cir. 2009) ..........................................................8, 9

*Hi-Tech Pharm., Inc. v. Cohen*,

    208 F. Supp. 3d 350 (D. Mass. 2016)...............................................13

*Hilton v. Hallmark Cards*,

    599 F. 3d 894 (9th Cir. 2010) .........................................................6, 7

iii

*Liberty Synergistics Inc. v. Microflo Ltd.*,

  718 F.3d 138 (2d Cir. 2013) .................................................................8

*Lott v. Levitt*,

  556 F.3d 564 (7th Cir. 2009) ........................................................19, 20

*Makaeff v. Trump Univ., LLC*,

  715 F.3d 254 (9th Cir. 2013) ...............................................................8

*Makaeff v. Trump Univ., LLC*,

  736 F.3d 1180 (9th Cir. 2013) .............................................................5

*Maples v. Nat'l Enquirer*,

  763 F. Supp. 1137 (N.D. Ga. 1990)....................................................25

*Milam v. State Farm Mut. Auto. Ins. Co.*,

  972 F.2d 166 (7th Cir. 1992) ..............................................................12

*Mississippi Publishing Corp. v. Murphree*,

  326 U.S. 438 (1946)............................................................................15

*Royalty Network, Inc., v. Harris*,

  756 F.3d 1351 (11th Cir. 2014) ...........................................................9

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,

  559 U.S. 393 (2010)......................................................................*passim*

*South Middlesex Opportunity Council, Inc. v. Town of Framingham*,

  No. 07-12018-DPW, 2008 WL 4595369 (D. Mass. Sept. 30, 2008) .................13

iv

*Sun Oil Co. v. Wortman*,

    486 U.S. 717 (1988)......................................................................................8

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*,

    190 F.3d 963 (9th Cir. 1999) ....................................................................8

*Walker v. Armco Steel Corp.*,

    446 U.S. 740 (1980)....................................................................................12

*Whitney v. California*,

    274 U.S. 357 (1927)....................................................................................20

**OTHER CASES**

*Connell v. A.C.L. Haase & Sons Fish Co.*,

    257 S.W. 760 (Mo. 1923) ........................................................................25

*Davis v. Cox*,

    351 P.3d 862 (Wash. 2015) ......................................................................13

*Fiske v. Stockton*,

    320 S.E.2d 590 (Ga. Ct. App. 1984)..................................................24, 25

*Lawton v. Georgia Television Co.*,

    456 S.E.2d 274 (Ga. Ct. App. 1995)........................................................21

*Leiendecker v. Asian Women United of Minnesota*,

    848 N.W.2d 224 (Minn. 2014) ................................................................13

*Morton v. Stewart*,

    266 S.E. 2d 230 (Ga. Ct. App. 1980)....................................................................21

*Poorbaugh v. Mullen*,

    653 P.2d 511 (N.M. Ct. App. 1982) ..................................................................24

*Smith v. Stewart*,

    660 S.E.2d 822 (Ga. Ct. App. 2008)..................................................................24

*Southland Pub. Co. v. Sewell*,

    143 S.E.2d 428 (Ga. Ct. App. 1965)..................................................................24

**OTHER STATUTES**

C.P.L.R. § 901(b) ...............................................................................................3

Fla. Stat. Ann. § 391.223 .....................................................................................21

Ga. Code Ann. § 9-11-11.1 .....................................................................*passim*

Nev.Rev.Stat. § 41.650 ........................................................................................8

Wash. Rev. Code § 4.24.525..............................................................................13

**FEDERAL RULES**

Fed R. Civ. P. 8 .....................................................................................................3

Fed. R. Civ. P. 11 .................................................................................................9

Fed. R. Civ. P. 12 .......................................................................................*passim*

Fed. R. Civ. P. 21 .................................................................................................5

Fed. R. Civ. P. 23 ...........................................................................................2, 3, 4

Fed. R. Civ. P. 56 ............................................................................3, 4, 5, 7

Fed. R. Evid. 702 ...............................................................................11

**CONSTITUTIONAL PROVISIONS**

United States Constitution ................................................................12, 13

**OTHER AUTHORITIES**

Fl. Dep't of Health, Creation of the Children's Medical Services Cardiac

   Technical Advisory Panel (October 21, 2013) ....................................21

Stephanie Armour, *Hospitals Keep 'Gold Seal' Despite Woes*, Wall Street

   Journal, September 9, 2017.................................................................23

I.      **The Federal Rules Do Not Preempt Georgia's AntiSLAPP Law.**

Davide Carbone contends that the majority of courts to consider the question were entirely misguided in holding firmly that the Federal Rules *do not* preempt state antiSLAPP laws. To the contrary, striking a meritless defamation claim under state law, where the plaintiff fails to demonstrate a probability of success, does not contradict *Shady Grove* or the Federal Rules.

Indeed, as the majority rule soundly holds, state antiSLAPP laws are harmonious with federal procedure and promote sound judicial policy, as their application dissuades forum shopping and fortifies the First Amendment. *See* Appellant Br. at 21-23. The Georgia General Assembly's ability to protect Georgia citizens' freedom of expression should not turn on whether a claim is brought in state or federal court.

A.      **Determining the "Question in Dispute" Starts with the Plain Language of the Text of the Rules.**

Carbone's brief misreads *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). In *Shady Grove*, the Court held a state law prohibiting class certification was preempted by a federal law mandating it. Here, by contrast, this Court is confronted with a federal rule providing the defendant with a means of challenging a pleading and a state law providing a separate means of quickly resolving meritless claims that risk chilling speech. The differences

1

between the rules and the statutes at issue in each case compel different conclusions under *Shady Grove* analysis.

In prescribing that judges confronting these issues should determine whether the Federal Rule answers the "question in dispute[,]" *see Shady Grove*, 559 U.S. at 398 (citing *Burlington N. R. Co. v. Woods*, 480 U.S. 1, 4–5 (1987)), the Court instructed that the inquiry begin with the texts of both the rule and the statute: "[t]he initial step is to determine whether, when fairly construed, the scope of [the Federal Rule] is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of that law." *Burlington,* 480 U.S. at 4–5; *accord Shady Grove*, 559 U.S. at 421 (Stevens, J. concurring). In other words, the Court prescribed that if the Federal Rule compels a result that "leav[es] no room for the operation of [the state] law" – and we emphasize, the Supreme Court said "leav[es] *no* room" – the Federal Rules and the statute are in "'direct collision'" and the state rule cannot apply. *See Shady Grove*, 559 U.S. at 412.

Under this analysis, the outcome in *Shady Grove* makes perfect sense and is entirely distinguishable from the issue before this Court. In *Shady Grove*, the Supreme Court analyzed a Federal Rule and a New York statute that were diametrically opposed on precisely the same issue. While Federal Rule 23 provided that a plaintiff's claim could proceed as a class action, the lower court held that,

2

under N.Y. C.P.L.R. § 901(b), it was precluded from certifying the class because the state statute prohibited class actions to recover a "penalty." *Shady Grove,* 559 U.S. at 399-401. As the Court was required to permit the *plaintiffs* to proceed as a class under the Federal Rule, but was required to deny class certification in favor of *defendants* under the state statute – based on an identical factor – the rule and the statute answered the same "question in dispute" and were in "direct collision." *Id.* at 398-99. The Federal Rule therefore left "no room" for application of the state statue. *Id.*

Carbone's mistake in applying *Shady Grove* is his argument that Rules 12(b)(6) and 56[1] – which provide the *defendant* the right to have any claim that fails to state a cause of action dismissed, or entitles the *defendant* to a judgment where there is no genuine issue of material fact – are analogous to Rule 23, which provides the conditions and procedures under which a *plaintiff* may bring a class action. Under this flawed reading, Carbone proceeds to mischaracterize Rule 12 and Rule 56 on the one hand, and the Georgia antiSLAPP statute, Ga. Code Ann. § 9-11-11.1 (West), on the other, as answering the same "question in dispute":

---

[1] Carbone also references Rule 8. *See* Appellee Br. at 12.  To the extent that this rule is relevant to the analysis, it is simply to provide the standard to be applied on a Rule 12(b)(6) motion—it does not provide a separate mechanism that would conflict with the state law.  Therefore, we will focus on Rules 12 and 56.

"whether Mr. Carbone can proceed with his defamation claim based on the facts he pleaded and the affidavits submitted outside the pleadings." Appellee Br. at 10.

But that is not the question answered by either Rule 12 or Rule 56. Those rules expressly provide for the *defendant's entitlement* to dismissal for various failures in the plaintiff's service or pleadings, the court's want of jurisdiction, or where the plaintiff has failed to raise a genuine issue of material fact. The difference between the question of the plaintiff's entitlement under Rule 23 in *Shady Grove*, and the defendant's entitlement under Rules 12 and 56, matters. The distinction informs this Court, with the precision *Shady Grove* and the other Supreme Court precedent requires, about how to frame the "question in dispute" and whether a "direct collision exists" that "leav[es] no room" for application of the Georgia law.

Viewed appropriately, the Georgia antiSLAPP statute does not answer the same "question" as the Federal Rules. Instead, it asks whether, in a narrow category of cases arising from "an act in furtherance" of the defendant's "right of petition or free speech" under the state or federal Constitutions "in connection with an issue of public interest," the nonmoving party "has established that there is a probability that [he] will prevail on the claim." § 9-11-11.1(b). This is an entirely different "question" than those posed by Federal Rules 12 and 56. While Rule 12 and Rule 56 provide two means to test the pleadings and the ability of the

defendant to demonstrate a dispute of fact, the antiSLAPP law provides a separate mechanism for the courts to expeditiously dispose of cases which have the potential to unnecessarily chill speech.

Moreover, unlike the Federal Rules governing class actions, which "provide[] a one-size-fits-all formula for deciding" whether a federal class may be certified, *see Shady Grove* at 599 U.S. at 399, there is nothing in the text of Rules 12 and 56 that indicates they are intended to enumerate the only mechanisms for efficient disposal of claims.

This is the analysis the First and Ninth Circuits used to conclude that state antiSLAPP laws should apply in federal court. *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1182 (9th Cir. 2013); *Godin v. Schencks*, 629 F.3d 79, 91 (1st Cir. 2010); *see also* Amicus Br. at 20.

> Rules 12 and 56 do not provide that a plaintiff is entitled to maintain his suit if their requirements are met; instead, they provide various theories upon which a suit may be disposed of before trial. California's anti-SLAPP statute, by creating a separate and additional theory upon which certain kinds of suits may be disposed of before trial, supplements rather than conflicts with the Federal Rules.

*Makaeff,* 736 F.3d at 1182. And the fact that Rule 12(b)(6) and Rule 56 themselves are not intended to provide an exhaustive list of means to dispose of claims pretrial is bolstered by the Federal Rules' inclusion of a number of other tools for defendants seeking to dismiss, narrow and clarify issues. *See e.g.* Fed. R. Civ. P. 21 (misjoinder of parties); Fed R. Civ. P 12(e) (motion for more definite

5

statement), 12(f) (motion to strike redundant, immaterial, impertinent, or scandalous material).

In short, the Georgia antiSLAPP law does not answer whether a plaintiff may proceed based upon his pleadings alone, but provides a distinctive means for the defendant to dispose of a matter at an early stage of the litigation. *C.f.* Appellee Br. at 14. There is no textual (or operational, for that matter) conflict between the Georgia statute and the Federal Rules. Carbone admits as much in his briefing in support of his motion to dismiss CNN's appeal as to its alternative Rule 12(b)(6) motion: "[r]esolution of a motion to dismiss for failure to state a claim is not a predicate to resolving an anti-SLAPP motion because a court can proceed directly to the anti-SLAPP motion without any interference from a motion to dismiss." David Carbone's Motion to Dismiss Appeal of Denial of Rule 12(b)(6) Motion For Lack of Pendant Jurisdiction (August 24, 2017) at 5 ("Appellee Motion at __") (citing *Hilton v. Hallmark Cards*, 599 F. 3d 894, 901-02 (9th Cir. 2010)).

## B.    Appellee Unconvincingly Asks this Court to Disregard the Weight of Relevant Authority.

Carbone's only argument for this Court to disregard the weight of authority is that circuit and district courts have blundered in applying state antiSLAPP laws. He chastises their well-reasoned decisions as applying "alien procedure" (Appellee Br. at 7), reaching "pernicious" conclusions (*id*. at 9), and calling their reasoning "deeply flawed," while praising a judge as being "frank" for his disagreement (*id*.

at 9, 22). Paradoxically, while he asks this Court to disregard the majority rule in the Ninth Circuit – the court with the most experience threading through the application of several states' very different antiSLAPP laws in federal courts – he embraced Ninth Circuit law in his recent partial motion to dismiss. Appellee Motion at 5. [2]

His attempts to distinguish other circuits' – and even this Circuit's – holdings is likewise unhelpful. The First Circuit in *Godin v. Schencks,* 629 F.3d 79 (1st Cir. 2010) applied *Shady Grove* and determined that Maine's antiSLAPP statue was not preempted by the Federal Rules. That Court's holding rests expressly on an analysis of the text of the Federal Rules: "[w]e conclude that neither Fed. R. Civ. P. 12(b)(6) nor Fed. R. Civ. P. 56, on a straightforward reading of its language, was meant to control the particular issues under Section 556 before the district court." *Godin*, 629 F.3d at 86. Carbone's characterization of the First Circuit's discussion of the competing purposes of the Rules and Section 556, relates to the section of the opinion addressing the validity of the Rules Enabling

---

[2] In doing so, he ignored the Ninth Circuit's unwavering reaffrirmation, in the same precedent he cites, that state antiSLAPP laws apply in the federal forum. *Compare* Appellee Motion at 5 (urging this Court to rely on *Hilton v. Hallmark Cards*) with *Hilton*, 599 F.3d at 900 n.2 ("[W]e have long held that the anti-SLAPP statute applies to state law claims that federal courts hear pursuant to their diversity jurisdiction.").

Act, an analysis both sides in this lawsuit agree the Court need not consider here. *See* Appellant Br. at 20 n.4; Appellee Br. at 18 n.9.

Again, contrary to Carbone's dismissive read of the precedent, the Second Circuit's holding in *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014), is also highly instructive. Carbone perfunctorily dismisses the applicability of this case, (Appellee Br. at 23) but the decision itself shows that the court analyzed the exact issue before this Court, and found application of the Nevada antiSLAPP statute in the federal forum "unproblematic":

> First, there is the question of whether Nevada's anti-SLAPP provisions apply in federal proceedings under *Erie R. Co. v. Tompkins*, [304 U.S. 64 (1938)]. Many courts have held that these statutes, including the one here, are to be applied federally in such circumstances. *See, e.g., Godin v. Schencks*, 629 F.3d 79, 91–92 (1st Cir.2010); *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 168–69 (5th Cir. 2009); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972–73 (9th Cir. 1999); *cf. Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 276 (9th Cir. 2013) (Paez, J., concurring) (recognizing extension of *Newsham* to Nevada statute). The question is one of federal, not state, law. *See Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 152 (2d Cir. 2013) (citing *Sun Oil Co. v. Wortman*, [486 U.S. 717, 726–27 (1988)]; *Hanna v. Plumer*, [380 U.S. 460, 465–66 (1965)]). We, therefore, decide it as a threshold matter on the facts of this case.
>
> While our Circuit has not previously examined the issue, the specific state anti-SLAPP provisions applied by the district court—immunity from civil liability, Nev.Rev.Stat. § 41.650 (amended 2013), and mandatory fee shifting, *id.* § 41.670—seem to us unproblematic.

While the Fifth Circuit's recent decision in *Block v. Tanenhaus*, No. 16-30966, 2017 WL 3482246, at *2 (5th Cir. Aug. 15, 2017), characterizes the

8

applicability of state antiSLAPP law in federal court as "an important and unresolved issue in this circuit," the court nevertheless upheld application of the Louisiana antiSLAPP law. The precedent is entirely consistent with the Fifth Circuit's earlier decision, in *Henry v. Lake Charles American Press, L.L.C.*, 566 F.3d 164, 168-69 (5th Cir. 2009), that "Louisiana law, including the nominally-procedural [antiSLAPP statute] Article 971, governs this diversity case."

Finally, Carbone's brief barely acknowledges this Court's experience with antiSLAPP laws. He downplays the reasoning of *Royalty Network,* which held a verification requirement, in a prior version of the statute, directly conflicted with Federal Rule 11. The court expressly noted, however, that the verification issue alone constrained it against following the decisions of the First, Fifth and Ninth Circuit. *See Royalty Network, Inc., v. Harris*, 756 F.3d 1351, 1361-62 (11th Cir. 2014). Carbone also fails to acknowledge that Georgia's General Assembly amended the statute to, *inter alia*, answer the Court's concern in *Royalty Network* by removing the verification requirement. This suggests that § 9-11-11.1, as amended, applies in the Eleventh Circuit.

More recently, a panel of this Court upheld application of the California antiSLAPP law in *Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935 (11th Cir. 2017). While Carbone contends the panel "did not address whether the Act can be enforced under *Shady Grove*," he fails to confront the Court's approbation of the

district court for having "considered the argument in its anti-SLAPP order," despite the nonmoving party's waiver. *Id.* at 944. The panel said, "[t]he district court acted reasonably in applying California's anti-SLAPP statute to the state law claims," and "the majority of circuit courts have found anti-SLAPP special motions to strike permissible, and . . . the specific anti-SLAPP statute at issue has previously been allowed in federal court." *Id.* (quoting *Edward Lewis Tobinick, MD v. Novella*, 108 F. Supp. 3d 1299, 1305 n.4 (S.D. Fla. 2015)).

Well-reasoned precedent in the other circuits, and the direction of the decisions in this Circuit, strongly favors reversing the district court here.

### C.    "Plausibility" Under Rule 12 and "Probability" Under the Georgia Law do not Conflict Under *Shady Grove*.

Contrary to his argument, the "plausibility" standard under Rule 12 and the antiSLAPP "probability" inquiry do not present a conflict between what Carbone calls a "low bar" and a "high bar." They each provide a "bar" relevant to different circumstances. Rule 12(b)(6) tests the sufficiency of the pleadings themselves – whether the plaintiff failed to cross the threshold or has "fail[ed] to state a claim upon which relief can be granted." That bar, as the Supreme Court has taught us, is met under the "plausibility" standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Separately, § 9-11-11.1, for cases that fall under the statute's ambit, tests whether the nonmoving party can clear that bar to establish a "probability" that he

10

will ultimately "prevail on the claim." In reaching this determination, the court is not bound by the complaint, but "shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." § 9-11.11.1(b)(2). The Georgia law does not, as Carbone suggests, impose a higher *pleading* standard than Rule 12(b)(6). The Georgia statute says nothing at all about what a defamation plaintiff must *plead* in order to state a viable claim. Instead, § 9-11-11.1 provides a different means to dispose of a case, under a different standard, and based on different factors.

For this reason, as we noted in the opening brief, (Appellant Br. at 26-27), federal courts under analogous state laws dispose of matters pretrial in much the same fashion as antiSLAPP laws. In *Burke v. Air Serv Int'l, Inc.*, 685 F.3d 1102 (D.C. Cir. 2012), the D.C. Circuit upheld the dismissal of a military contractor's negligence claim on the basis that the plaintiff failed to proffer an expert to testify regarding the standard of care for such security precautions, rejecting a challenge that Fed. R. Evid. 702 preempted the District of Columbia law that required an expert proffer. *Id.* at 1108. The Court of Appeals explained that while "Rule 702 determines the circumstances in which expert testimony is *permitted*" the D.C. rule "defines a circumstance in which expert testimony is *required*." *Id.* (emphasis in original).

> A federal court can simultaneously apply both the federal standard regarding what qualifies as expert testimony and the District rule

11

regarding when qualified expert testimony is required. They "can exist side by side, . . . each controlling its own intended sphere of coverage without conflict." [*Walker v. Armco Steel Corp.*, 446 U.S. 740, 752 (1980)].

*Id. See also Milam v. State Farm Mut. Auto. Ins. Co.*, 972 F.2d 166 (7th Cir. 1992) (Judge Posner notes "where a state in furtherance of its substantive policy makes it more difficult to prove a particular type of state-law claim, the rule by which it does this, even if denominated a rule of evidence or cast in evidentiary terms, will be given effect in a diversity suit as an expression of state substantive policy.").

A court in this Circuit recently echoed that analysis in considering whether Alabama law or federal law controlled fraudulent joinder analysis in diversity cases. In *Broadway v. State Farm Mut. Auto. Ins. Co.*, 4 F. Supp. 3d 1271, 1277 (M.D. Ala. 2014), *aff'd,* 683 F. App'x 801 (11th Cir. 2017), the district court noted that on motions to remand, joinder analysis required it look to the Alabama pleading standard – whether the plaintiff pleaded "no set of facts" that would warrant joinder – as opposed to the Federal Rule's "plausibility" pleading standard under *Twombly*.

Ultimately, Carbone, as did the district court, conflates the "probability" and "plausibility" standards as each has a different purpose in a different context.

## II.    The AntiSLAPP Statute is Constitutional.

Carbone's final "Hail Mary" is to ask the Court to be the first Circuit to hold that a state antiSLAPP statute violates the Seventh Amendment of the United

States Constitution. He relies on two decisions that do not rest on the *U.S. Constitution* but instead analyze certain provisions of two antiSLAPP laws under the *state constitutions* of Washington and Minnesota. In *Davis v. Cox*, 351 P.3d 862 (Wash. 2015)*,* the Washington Supreme Court found that the provision of a state statute requiring the plaintiff "*to establish by clear and convincing evidence a probability* of prevailing on the claim," violated that state's constitution. *See id.* at 867 (quoting Wash. Rev. Code § 4.24.525(4)(b)) (emphasis in original). The other decision cited by Carbone, *Leiendecker v. Asian Women United of Minnesota*, 848 N.W.2d 224, 232-33 (Minn. 2014), actually *applied* the state's antiSLAPP law and declined to address its constitutionality.

Neither decision addressed the Seventh Amendment to the U.S. Constitution. Moreover, the Georgia antiSLAPP law does not contain a "clear and convincing" evidentiary standard, but rather requires a showing of a probability of success. Courts addressing this language have all held antiSLAPP statutes with "probability" standards present no conflict with the U.S. Constitution. *See Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010); *Hi-Tech Pharm., Inc. v. Cohen*, 208 F. Supp. 3d 350, 354 (D. Mass. 2016); *South Middlesex Opportunity Council, Inc. v. Town of Framingham*, Civ. Act. No. 07-12018-DPW, 2008 WL 4595369, at *10 n.5 (D. Mass. Sept. 30, 2008).

13

Equally unavailing is Carbone's claim that the Act violates the Equal Protection clause because it lacks a rational basis for singling out victims of defamation for allegedly unequal treatment. The antiSLAPP statute addresses no specific class of plaintiffs – defamation or otherwise – and only speaks to cases involving defendants who "act in furtherance of [their] right of petition or free speech." § 9-11-11.1(b)(1).

Moreover, the General Assembly articulated a clear and perfectly rational basis for protecting those exercising their state or federal constitutional rights of expression:

> The General Assembly of Georgia finds and declares that it is in the public interest to encourage participation by the citizens of Georgia in matters of public significance and public interest through the exercise of their constitutional rights of petition and freedom of speech. The General Assembly of Georgia further finds and declares that the valid exercise of the constitutional rights of petition and freedom of speech should not be chilled through abuse of the judicial process. To accomplish the declarations provided for under this subsection, this Code section shall be construed broadly.

§ 9-11-11.1(a).

## III.    The AntiSLAPP Statute Applies Retroactively.

Carbone also anomalously urges this Court to affirm on a ground never addressed in any way by the lower court, by holding the antiSLAPP statute does not apply retroactively. If the Court were to consider the issue, however, it should reject the argument.

14

First, contrary to Carbone's argument, no contradiction exists between retroactive application of a state statute – where a law is generally deemed "procedural" – and application of that statute in federal court – which under an outdated rubric, was only permitted for "substantive" state law. In *Shady Grove*, 559 U.S. at 407, the Supreme Court specifically rejected rigid application of the *Erie* terms "substantive" and "procedural": "*Erie* involved the constitutional power of federal courts to supplant state law with judge-made rules. In that context, it made no difference whether the rule was technically one of substance or procedure; the touchstone was whether it 'significantly affect[s] the result of a litigation.'" *Id.* at 406; *see also Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945).[3]

In enacting § 9-11-11.1, the Georgia General Assembly did not substantively alter state defamation law. The cause of action remains exactly the same. Instead, the effect of the statute is that the parties and courts can reach the substantive issues at an earlier stage of the case, to winnow out claims that lack a "probability" of success, in order to minimize the chilling effect on free speech. As a defamation

---

[3] In the context of analyzing the Rules Enabling Act, the Court also reasoned "[t]he test is not whether the rule affects a litigant's substantive rights; *most procedural rules do*. What matters is what the rule itself regulates: If it governs only 'the manner and the means' by which the litigants' rights are 'enforced,' it is valid; if it alters 'the rules of decision by which [the] court will adjudicate [those] rights,' it is not.'" *Shady Grove*, 559 U.S. at 407 (citing *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 445 (1946))(emphasis added).

claim will be no more or less successful, whether or not the antiSLAPP statute is invoked, the statute does not act as a substantive bar to retroactivity.

Finally, as in his response in opposition to the motion to dismiss, Carbone misrepresents the antiSLAPP law's legislative history. *See* Appellee Br. at 27, n 12. Lawmakers drafted, and then deliberately removed, language *prohibiting* retroactive application of the statute, indicating that they *intended* for the law to have retroactive effect. The deleted provision which Carbone references had limited the statute's application "to all claims made on or after July 1, 2015, irrespective of the date on which the act giving rise to the claim occurred." LC 41 0455 at § 3:106-07. This was removed in the final version of the Act. *See* 2016 Ga. Laws Act 420 (H.B. 513) at § 4.

## IV.    The Merits of CNN's Reporting

Unable to show that the Act is preempted by federal law, Carbone next unsuccessfully attempts to argue that he has shown a probability of prevailing on his claim.

### A.    Carbone Has Not Shown a Probability that CNN's Reporting Was False.

The lower court found "two chief allegations" actionable. First, this Court can easily reverse for plain error as to the trial court's holding that Carbone stated a claim for defamation, based upon CNN's reporting that the AHCA opened an investigation into St. Mary's, as a result of its reporting. *See* ECF No. 28 at 13, 14.

No such allegation was included in the complaint. Carbone, in a cursory footnote, deep into his brief, acknowledges the district court's error. *See* Appellee Br. at 41 n.16.

Carbone also repeats the same speculative allegations of falsity in arguing CNN must have reported a false comparison between nationwide risk-adjusted mortality rates and raw mortality rates for St. Mary's. Carbone, however, has not plead nor otherwise come forward with evidence indicating that the national mortality rate used by CNN was weighted or otherwise adjusted. Instead, he merely alleges, ECF No. 1 at ¶ 91, and avers, ECF No 14-17 at ¶ 43, it is not "methodologically []appropriate" or "logical" for CNN to use a raw number.

These speculative allegations fare no better than Carbone's emphasis on publications, including some by CNN's named source for the nationwide statistics, Dr. Jeffrey Jacobs,[4] encouraging health care providers to report risk-adjusted figures. Carbone has never disputed CNN's reporting that St. Mary's refused to provide risk-adjusted figures, despite CNN's repeated requests. Moreover, the

---

[4] Carbone erroneously claims that CNN has been inconsistent in reporting the source of its national mortality data. CNN has consistently disclosed that this number came from Dr. Jacobs, who chaired the database of the Society of Thoracic Surgeons. CNN never claimed that this data came from a "secret source," and we frankly are baffled by that statement in Carbone's Brief. The cite provided appears to refer to a document not included in the appendix, ECF No. 11. Nowhere in that pleading does CNN claim that the data came from a "secret source."

superiority or inferiority of risk-adjusted or raw data – or Dr. Jacobs' or anyone else's prior statements on that issue – does not create any issue of falsity as to CNN's reporting that: "Jacobs said the 3.3% [national rate] is not risk adjusted." *See* ECF No. 14-7

Similarly, Carbone's repeated efforts to assert that CNN comingled open- and close-heart surgeries in presenting the national figure, in comparison to the open-heart figure for St. Mary's, relies on sheer speculation, and not on any record evidence he has presented or even on any plausible allegation in his complaint. Indeed, the best that he can muster is the speculation that it "seems impossible that Dr. Jeffrey Jacobs would have provided a raw national mortality rate for only open-heart surgery for CNN to broadcast." Appellee Br. at 37. Such speculation is insufficient to avoid either a motion to strike under the Georgia antiSLAPP law or a motion to dismiss under 12(b)(6).

### B.  The Alleged Defamation Amounts to a Dispute of Academic Opinion.

The "falsity" of the statements Carbone identifies boils down to whether CNN may lawfully report raw mortality rates for open heart procedures. Carbone believes this methodology is flawed (Appellee Br. at 37-38) while CNN has taken the position that, given St. Mary's repeated refusal to provide information regarding its mortality rate, a raw comparison of reported deaths at St. Mary's to a raw national mortality rate, sourced from a key figure within STS, was information

18

that the public would find useful. The Court, however, need not decide whether CNN's reporting was "helpful" to consumers, as Carbone contends, *see* Appellee Br. at 37, because prior decisions have made clear that courts do not adjudicate such academic, methodological disputes in defamation cases.

Carbone's characterization of *Dilworth v. Dudley,* 75 F.3d 307 (7th Cir. 1996), can easily be disregarded. He wrongly claims that this case holds only a disagreement about "research" can rise to the level of an academic dispute; and conversely no academic dispute may be present if "the person is criticized." *See* Appellee Br. at 38. To the contrary, the court held that labeling someone a "crank," for the positions he took in various academic publications, did not constitute defamation. Whether the term "crank" was defamatory in context required the court wade into an academic controversy, something "judges are not well equipped to resolve." *Dilworth,* 75 F.3d at 310. The Seventh Circuit's later decision in *Lott v. Levitt*, 556 F.3d 564 (7th Cir. 2009) similarly held that an author's statement that an academic's findings had not been replicated could, in other contexts, constitute defamation to the academic's professional reputation, *see id.* at 569; but the court reasoned that in the context before it, the statement at issue should be read as a critique of the plaintiff's theory, *see id.* at 570. Consequently the court refused to find the plaintiff was defamed

19

Carbone contends that raw data is not "helpful" to the public. Appellee Br. at 37. Obviously, CNN disagrees and believes that this data, in conjunction with the balance of its reporting, provided its viewers with an accurate picture of the problems at St. Mary's. As in *Dilworth*, the Court need not wade into this type of academic dispute and the proper remedy (if anything) should be rebuttal, not damages.[5] Carbone's claim that he lacks the means to rebut CNN is specious— CNN has reported that Carbone disputes the relevance of the reported mortality rate, *see e.g.* ECF No. 14-10 at 3. Moreover, neither *Dilworth* nor *Lott* limit their holdings to claims brought by academics.

### C. The CNN Story Is Protected by Fair Reporting Privilege.

Carbone mischaracterizes the scope of the fair reporting privilege under Georgia law.[6]

First, the privilege is not limited to reports of the proceedings of legislative or judicial bodies, or court proceedings, and the plaintiff has presented no basis to conclude that the work of the Florida Cardiac Technical Advisory Panel ("CTAP")

---

[5] As wisely noted by Justice Brandeis, "[i]f there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence." *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J. Concurring).

[6] Carbone only argues that statements in the Florida Cardiac Technical Advisory Panel's review should not be covered by the fair reporting privilege. *See* Appellee Br. at 41. He does not dispute application of the fair reporting privilege as to statements in the complaint regarding the Federal Centers for Medicare & Medicaid Services ("CMS") investigation.

20

was a non-administrative activity. *See Morton v. Stewart*, 266 S.E. 2d 230, 233 (Ga. Ct. App. 1980); *Lawton v. Georgia Television Co.*, 456 S.E.2d 274, 277 (Ga. Ct. App. 1995) ("[I]t is usually conceded that there is a general rule that a qualified privilege attaches to proceedings of, and fair, impartial, and accurate news accounts of, administrative agencies of the government.").

The plaintiff's characterization of the CTAP "peer review" as a non-administrative or otherwise non-quasi-judicial proceeding lacks any foundation. The CTAP is a division of the Florida Department of Health's Children's Medical Services, a state administrative agency created pursuant to Fla. Stat. Ann. § 391.223 (West). The purpose of the CTAP is to assist in providing specific policies and procedures for the CMS Cardiac program, including by "[a]ssisting the Agency for Health Care Administration, or as requested by individual Florida hospitals, or as outlined in their contract with CMS, with both ongoing evaluation and development of congenital cardiovascular programs." Fl. Dep't of Health, Creation of the Children's Medical Services Cardiac Technical Advisory Panel (October 21, 2013) (available at http://www.cmsctap.com/_files/documents/CTAP-Creation.pdf).

The plaintiff's citation to *Lawton* is unavailing; even assuming that the plaintiff's characterization of peer review is accepted, *Lawton* does not hold that

the privilege attaches only to administrative proceedings to "discipline, remove from office, or revoke a license." *See Lawton,* 456 S.E.2d at 277.

Second, Carbone has failed to articulate how statements drawn from CTAP's report of the St. Mary's review have a different "gist" than CNN's reporting. *See* Appellee Br. at 42. Carbone's claim that CNN "pluck[ed]" one comment from the report, and presented it out of context, is simply wrong. *Id.* The Summary of CTAP's report states that:

> It is common knowledge that multiple pediatric cardiac surgeons (at CMS providing intuitions across the state of Florida) have expressed serious concern about babies having complex pediatric cardiac surgery at by [sic] St. Mary's [] and subsequently being transferred to other facilities in Florida for the management of major complications. Several of these children have died at the receiving hospitals after having undergone complex pediatric surgery at St. Mary's. . . .

> Concern exists across the State of Florida about the above described mortality and morbidly and also about the extremely low volume of pediatric cardiac surgery being performed at St. Mary's. . . .

*See* ECF 5-2 at 21. This is entirely consistent with CNN's reporting that St Mary's inadequate infrastructure and support lead to high mortality among its patients.

Finally, Carbone's arguments regarding CNN's malice are largely bootstrapped from his claim that CNN knew its reporting was false. As discussed above, Carbone's assertion that CNN's reporting was false is based entirely on his own speculation. CNN's knowledge of St. Mary's "2-star" rating is irrelevant to demonstrating malice. If anything, this emphasizes the inherently subjective nature

of evaluative methodologies.[7] *See* Section IV.B, *supra*. His only other meager attempt at demonstrating malice is by alleging CNN relied improperly on consultants with personal financial motives. Again, the only "evidence" he points to are his own, unsupported, beliefs regarding the motives and biases of two CNN sources. He points to no evidence or factual pleading that either source had any financial motive (or any improper motive whatsoever) to provide CNN with inaccurate information. *See* Appellee Br. at 43-44. As such, there is no basis to conclude that CNN demonstrated malice.

### D.    CNN's Reporting is Not "Of or Concerning" Carbone.

The Plaintiff also fails to persuasively argue that the statements he challenges in CNN's reporting "concerned" him. In addition to establishing the falsity of the statement, it is the Plaintiff's burden to establish that the allegedly false statements concern him. "In order to 'concern' the plaintiff, 'the allegedly defamatory words must refer to some ascertained or ascertainable person, and that person must be the plaintiff.'" *800 Mktg. Sols., Inc. v. GMAC Ins. Mgmt. Corp.*, No. 3:06-CV-038 (CDL), 2008 WL 2777140, at *5 (M.D. Ga. July 14, 2008)

---

[7] Recent journalism reinforces this. For example, the Wall Street Journal reported that between 2014 and 2016, hundreds of hospitals found to be in violation of Medicare safety requirements, were allowed to keep their "gold seal" accreditation from The Joint Commission, a nation-wide accreditation body. *See* Stephanie Armour, *Hospitals Keep 'Gold Seal' Despite Woes*, Wall Street Journal, September 9, 2017, at A1.

(citing *Smith v. Stewart*, 660 S.E.2d 822, 828 (Ga. Ct. App. 2008) and *Fiske v. Stockton*, 320 S.E.2d 590, 592 (Ga. Ct. App. 1984)).

As discussed above, the principle defamatory statement that the plaintiff challenges is CNN's report that "[b]y the end of 2013, the mortality rate for babies having heart surgery [at St. Mary's] was three times the national average" and "CNN was able to calculate the death rate for open heart surgeries as 12.5%, more than three times the national average of 3.3% cited by the Society of Thoracic Surgeons." *See* ECF No. 1 at ¶48. As should be apparent, these statements do not refer to the plaintiff. They refer to St. Mary's.

The cases cited by Carbone are distinguishable because they involve situations where courts have found certain oblique references to specific conduct by the plaintiff were sufficient to state a defamation claim. In *Southland Pub. Co. v. Sewell*, 143 S.E.2d 428, 430 (Ga. Ct. App. 1965), the defendant falsely stated a garage – co-owned and named for the plaintiff – was raided by the police. The Court found such a claim tends to injure the owner's reputation. Other cases cited by Carbone also apply the logic that statements about a business can defame its owners. *See id*; *Poorbaugh v. Mullen*, 653 P.2d 511, 520 (N.M. Ct. App. 1982) ("Libel of a partnership trade name is libel per se of the partners."); *Brayton v. Crowell-Collier Pub. Co.*, 205 F.2d 644, 645 (2d Cir. 1953) (noting defamed plaintiff "completely controlled the corporate plaintiff"). The other cases cited by

24

the plaintiff likewise provide direct links between the defamatory statement and the specific plaintiff. *See Desnick v. Am. Broad. Companies, Inc*., 44 F.3d 1345, 1349 (7th Cir. 1995); *Maples v. Nat'l Enquirer*, 763 F. Supp. 1137, 1140 (N.D. Ga. 1990); *Connell v. A.C.L. Haase & Sons Fish Co.*, 257 S.W. 760, 763 (Mo. 1923).

What Carbone seeks is for this court to go far beyond these cases and hold that a CEO (or perhaps any officer or director) can sue for any defamation directed towards the corporation he or she works for. Contrary to the Plaintiff's cursory assertion, the Georgia Court of Appeals decision in *Fiske v. Stockton* rejects such a broad rule. Here the Court found that allegations regarding inequitable "harassment" of a resort facility in a dry county for illegally serving liquor were insufficient to allow the District Attorney of the County to state a claim for liable. As here, the alleged defamation did not refer to the plaintiff directly, and assertions from witnesses that they "knew" the statement referred to the District Attorney were "not sufficient to create a jury issue as to whether the publication" concerned the plaintiff. *Fiske*, 320 S.E.2d at 593.

## V.    Denial of CNN's Rule 12(b)(6) Motion

Finally, Carbone's arguments regarding the Rule 12(b)(6) motion simply repeat his meritless claims regarding the falsity of CNN's reporting and the fact that the reporting regarding St. Mary's actually concerns him.

For the reasons previously discussed, the plaintiff has no basis to claim that CNN misrepresented the nature of the data at issue or reported an incorrect mortality rate.  The only basis for his claims are his own speculation that, despite CNN's reporting that it was comparing a raw mortality rate for St. Mary's with raw national rate, CNN must have been really using a weighted national rate. Appellee Br. at 33-34. He can point to no factual allegations to support his supposition, and on this basis is unable to adequately plead that the statements his is challenging are false.

The only new argument presented with regards to his claim that the statements at issue are "of and concerning" him, relates to whether this is a question of fact for the jury. Based upon the pleadings, however, Carbone has plead that the statements are not of and concerning him, but rather are of and concerning St. Mary's.

26

## VI.    Conclusion

For the foregoing reasons, as well as the reasons laid out in its opening briefing, CNN respectfully requests that this Court reverse the district court's holding.

Dated: September 14, 2017        Respectfully submitted,

*s/ Charles D. Tobin*
Charles D. Tobin
BALLARD SPAHR, LLP
1909 K Street, NW
12th Floor
Washington, DC 20006-1157
Tel: (202) 661-2218

*Counsel for Appellant CNN*

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of the Fed. R. App. P. 32(a)(7)(B) because, excluding parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,467 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6).

Dated: September 14, 2017        Respectfully submitted,

*s/ Charles D. Tobin*
Charles D. Tobin
BALLARD SPAHR, LLP
1909 K Street, NW
12th Floor
Washington, DC 20006-1157
Tel: (202) 661-2218

*Counsel for Appellant CNN*

C-1

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of September, 2017, a true and correct copy of the foregoing Appellant's Reply Brief, was served upon the following opposing counsel, by filing electronically on the Court's ECF/CM system, and emailing same:

L. Lin Wood
Jonathan David Grunberg
George Taylor Wilson
L. LIN WOOD, PC
1180 W. Peachtree St. Suite 2400
Atlanta, GA 30309
T: 404-891-1404

Stacey Godfrey Evans
S.G. EVANS LAW, LLC
1180 West Peachtree St.
Suite 2400
Atlanta, Georgia 30309
T:  404-891-1404

David E. Hudson
HULL BARRETT, PC
801 Broad St. Suite 700
Po. Box 1564
Augusta, GA 30901
T: 706-722-4481

Dated: September 14, 2017          Respectfully submitted,

                                   *s/ Charles D. Tobin*
                                   Charles D. Tobin