No. 17-10812

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

————

DAVIDE M. CARBONE,

*Plaintiff-Appellee*,

v.

CABLE NEWS NETWORK, INC.,

*Defendant-Appellant*.

————

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

THE HONORABLE ORINDA D. EVANS
CIVIL No. 1:16-CV-01720-ODE

**PETITION OF DEFENDANT-APPELLANT FOR REHEARING *EN BANC***

Charles D. Tobin
BALLARD SPAHR, LLP
1909 K Street, NW
12th Floor
Washington, DC
20006-1157
Tel: (202) 661-2218

*Attorney for Appellant Cable News Network, Inc.*

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1 and 26.1-2, Defendant-Appellant Cable News Network, Inc. submits the following complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

AT&T Inc. (stock ticker "T")

Cable News Network, Inc.

Carbone, Davide M.

Evans, Orinda D.

Evans, Stacey Godfrey

Historic TW Inc.

Ballard Spahr, LLP

L. Lin Wood, P.C.

S.G. Evans Law, LLC

Warner Media, LLC

Tobin, Charles D.

Turner Broadcasting System, Inc.

Wood, L. Lin

No entity or person owns more than 10% of AT&T Inc.'s issued outstanding common stock.

Dated: January 3, 2019

Respectfully submitted,

*s/ Charles D. Tobin*
Charles D. Tobin
BALLARD SPAHR, LLP
1909 K Street, NW
12th Floor
Washington, DC 20006-1157
Tel: (202) 661-2218

*Counsel for Appellant CNN*

## STATEMENT OF COUNSEL REGARDING *EN BANC* CONSIDERATION

**1.      I express a belief, based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance:**

All active judges of the Eleventh Circuit should review and reverse the Panel's holding *en banc* in order to ensure litigants in this Circuit do not use the federal courts to chill free expression and news reporting on matters of significant public interest. The Panel's decision involves a question of exceptional importance, namely whether the Georgia anti-SLAPP statute, Ga. Code Ann. § 9-11-11.1, can be applied in a federal diversity action. It is critical that the judges of this Circuit speak with one voice when addressing an issue of such fundamental importance to the individual rights of citizens. *En banc* review is especially important as the Panel's decision conflicts with holdings from the First, Second, Fifth and Ninth Circuit Courts of Appeals as well as prior holdings of this Circuit. In addition, *en banc* review is necessary to articulate a clear expression of the Circuit's interpretation of the Supreme Court's holding in *Shady Grove Orthopedic Assocs., P.A., v. Allstate Ins. Co.*, 559 U.S. 393 (2010).

**2.      I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decision(s) of the Supreme Court of the United States or the precedents of this circuit and that**

**consideration by the full court is necessary to secure and maintain uniformity**

**of decisions in this court:**

The Panel decision conflicts with this Court's prior holdings in *Tobinick v. Novella*, 848 F.3d 935 (11th Cir. 2017) and *Royalty Network, Inc. v. Harris*, 756 F.3d 1351 (11th Cir. 2014), and *en banc* consideration therefore is necessary to secure and maintain uniformity of the Court's decisions.

The panel decision further conflicts with the Supreme Court's analysis in *Shady Grove Orthopedic Assocs., P.A., v. Allstate Ins. Co.*, 559 U.S. 393 (2010), and *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1 (1987).

Dated: January 3, 2019

Respectfully submitted,

*s/ Charles D. Tobin*
Charles D. Tobin
BALLARD SPAHR, LLP
1909 K Street, NW
12th Floor
Washington, DC 20006-1157
Tel: (202) 661-2218

*Counsel for Appellant CNN*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND  CORPORATE DISCLOSURE STATEMENT .............................................................C-1

STATEMENT OF COUNSEL REGARDING *EN BANC* CONSIDERATION ..C-3

I. STATEMENT OF THE ISSUES ASSERTED TO MERIT *EN BANC* CONSIDERATION .............................................................................1

II. STATEMENT OF FACTS NECESSARY TO ARGUMENT OF THE ISSUES ..........................................................................................1

III. STATEMENT OF THE COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE ....................................................2

IV. ARGUMENT....................................................................................3

    A. The Panel's decision firmly aligns this Circuit with the minority view of the D.C. Circuit and exacerbates a split with the well-reasoned decisions of four other circuits.................................................................3

    B. The Panel disregarded the alternative holding in *Tobinick v. Novella* as well as the reasoning in *Royalty Network, Inc. v. Harris*. ...........................6

    C. The Panel contradicts the Supreme Court's analysis in *Shady Grove* and *Burlington*.........................................................................10

V. CONCLUSION...............................................................................15

CERTIFICATE OF COMPLIANCE..........................................................

CERTIFICATE OF SERVICE ..................................................................

APPENDIX...............................................................................................

i

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abbas v. Foreign Policy Group, LLC*,
   783 F.3d 1328 (D.C. Cir. 2015)..................................................................................8

*Adelson v. Harris*,
   774 F.3d 803 (2d Cir. 2014) .......................................................................................5

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003) ....................................................................................4

*Block v. Tanenhaus*,
   815 F.3d 218 (5th Cir. 2016) ......................................................................................5

*Bravo v. United States*,
   532 F.3d 1154 (11th Cir. 2008) ..................................................................................8

*Burlington N. R.R. Co. v. Woods*,
   480 U.S. 1 (1987)................................................................................................passim

*Caranchini v. Peck*,
   No. 2:18-cv-02249-CM-TJJ, slip op. (D. Kan. Nov. 26, 2018) .........................5

*Carbone v. Cable News Network, Inc.*,
   No. 17-10812, slip op. (11th Cir. December 13, 2018)...............................passim

*Citizens United v. Fed. Election Comm'n*,
   558 U.S. 310 (2010)....................................................................................................14

*Cohen v. Beneficial Indus. Loan Corp.*,
   337 U.S. 541 (1949)....................................................................................................11

*Cuba v. Pylant*,
   814 F.3d 701 (5th Cir. 2016) ......................................................................................5

*Erie Railroad Co. v. Tompkins*,
   304 U.S. 64 (1938)..............................................................................................5, 7, 15

*Evans v. Ga. Reg'l Hosp.*,
  850 F.3d 1248 (11th Cir. 2017) ...............................................................8

*Follenfant v. Rogers*,
  359 F.2d 30 (5th Cir. 1966) ......................................................................9

*Georgia Cemetery Ass'n v. Cox*,
  353 F.3d 1319 (11th Cir. 2003) ...............................................................10

*Godin v. Schencks*,
  629 F.3d 79 (1st Cir. 2010) ...........................................................4, 5, 11

*Hanna v. Plumer*,
  380 U.S. 460 (1965) ............................................................................11, 15

*Henry v. Lake Charles Am. Press LLC*,
  566 F.3d 164 (5th Cir. 2009) ....................................................................5

*Makaeff v. Trump Univ., LLC*,
  736 F.3d 1180 (9th Cir. 2013) ...........................................................passim

*Metabolife Int'l, Inc. v. Wornick*,
  264 F.3d 832 (9th Cir. 2001) ...................................................................15

*Moustakis v. City of Fort Lauderdale*,
  338 F. App'x 820 (11th Cir. 2009) ...........................................................10

*Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir. 2018) ...............................................................4, 14

*Royalty Network, Inc. v. Harris*,
  756 F.3d 1351 (11th Cir. 2014) .......................................................6, 7, 9, 11

*Shady Grove Orthopedic Assocs., P.A., v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) ...........................................................................passim

*Southard v. Forbes, Inc.*,
  588 F.2d 140 (5th Cir. 1979) ...................................................................14

*Time, Inc. v. McLaney*,
  406 F.2d 565 (5th Cir. 1969) ...................................................................14

*Tobinick v. Novella*,
108 F. Supp. 3d 1299 (S.D. Fla. 2015) ................................................................8

*Tobinick v. Novella*,
848 F.3d 935 (11th Cir. 2017) ...................................................................6, 7, 8, 9

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
190 F.3d 963 (9th Cir. 1999) .............................................................................4, 7

*United States v. Bajakajian*,
524 U.S. 321 (1998) ..............................................................................................10

*Walker v. Armco Steel Corp.*,
446 U.S. 740 (1980) ..................................................................................11, 13, 15

*World Harvest Church, Inc. v. Guideone Mut. Ins. Co.*,
586 F.3d 950 (11th Cir. 2009) ...........................................................................8, 9

*Wyeth v. Levine*,
555 U.S. 555 (2009) ..............................................................................................13

*Z.F. v. Ripon Unified Sch. Dist.*,
482 F. App'x 239 (9th Cir. 2012) ........................................................................15

**OTHER CASES**

*Bank of Italy Nat. Tr. & Sav. Ass'n v. Bentley*,
217 Cal. 644 (Cal. 1933) .......................................................................................8

*Dotegowski v. Abbott Labs.*,
No. CGC-10-506794, 2015 Cal. Super. LEXIS 18019 (Cal. Super.
Apr. 20, 2015) ........................................................................................................8

*Neff v. McGee*,
816 S.E.2d 486 (Ga. Ct. App. 2018) ...................................................................15

*QOS Networks Ltd. v. Warburg, Pincus & Co.*,
669 S.E.2d 536 (Ga. Ct. App. 2008) .....................................................................9

*Rogers v. Dupree*,
799 S.E.2d 1 (Ga. Ct. App. 2017) ........................................................................14

*Rosser v. Clyatt*,
  Nos. A18A0843, A18A0987, 2018 Ga. App. LEXIS 633 (Ga. Ct.
  App. Nov. 2, 2018) ......................................................................................15

**OTHER STATUTES**

Ga. Code. Ann. § 9-11-11.1 (2016) ...................................................................passim

2016 Ga. Laws 420 .............................................................................................9

Kan. Stat. Ann. § 60-5320 ...................................................................................5

**RULES**

Fed. R. Civ. P. 8 ...................................................................................10, 12, 14

Fed. R. Civ. P. 11 ..............................................................................................9

Fed. R. Civ. P. 12 ......................................................................................passim

Fed. R. Civ. P. 23 .........................................................................................11, 12

Fed. R. Civ. P. 38 .............................................................................................12

Fed. R. Civ. P. 56 ...............................................................................5, 10, 12,14

Cal. Civ. Proc. § 425.16(b)(1)...........................................................................6

N.Y. C.P.L.R. § 901(b) ....................................................................................11

**CONSTITUTIONAL PROVISIONS**

First Amendment.................................................................................................1

## I. STATEMENT OF THE ISSUES ASSERTED TO MERIT *EN BANC* CONSIDERATION

1.     Should the entire Court be allowed the opportunity to review, *en banc,* a decision by a Panel that adopts the minority view of a single federal circuit court of appeals, broadens a circuit split and limits the First Amendment freedoms of citizens;

2.     Did the Panel improperly disregard the holdings and legal reasoning of two prior panel decisions of this Court;

3.     Did the Panel apply a framework for analyzing conflict between state statutes and federal rules that contradicts the Supreme Court's analysis in *Shady Grove* and *Burlington.*

## II. STATEMENT OF FACTS NECESSARY TO ARGUMENT OF THE ISSUES

On June 1, 2015, CNN began a series of reports on the unusual mortality rate among infants undergoing open-heart surgery at St. Mary's Medical Center in West Palm Beach, Florida ("St. Mary's").  Based on careful research, CNN reported that for 2011-13, the raw mortality rate for this category of surgery was 12.5%, more than three times the national average for comparable surgeries.  ECF No. 14-1.  Mr. Carbone was the Chief Executive Officer ("CEO") of St. Mary's at the time.  ECF No. 5-1 at 3.

1

On May 26, 2016, Mr. Carbone filed a defamation complaint challenging CNN's reporting. ECF No. 1 at 11. He specifically challenged CNN's comparison between St. Mary's mortality rate and the national average, as well as CNN's reporting about the Florida Agency for Health Care Administration. ECF No. 28 at 13–14.

### III. STATEMENT OF THE COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE

On July 25, 2016, CNN filed a special motion to strike Mr. Carbone's claim under Georgia's anti-SLAPP law, Ga. Code. Ann. § 9-11-11.1 (2016). ECF Nos. 5, 5-1 at 7–23; *see also* ECF No. 19 at 10–26. The law permits a defamation defendant to file a motion to strike when a plaintiff's claim "aris[es] from any act . . . which could reasonably be construed as an act in furtherance of the [defendant's] right of petition or free speech." Ga. Code. Ann. § 9-11-11.1(b)(1). The court must strike the claim unless the plaintiff "has established that there is a probability that [he] will prevail on the claim." *Id*. The district court never reached the merits of CNN's anti-SLAPP argument, erroneously finding in its February 15, 2017 order that Georgia's anti-SLAPP law does not apply in federal court. ECF No. 28 at 9.

A panel of this Court ("the Panel") heard argument on November 8, 2018. On December 13, 2018, the Panel issued an opinion, upholding the lower court's ruling regarding the anti-SLAPP law.

# IV. ARGUMENT

In diversity cases, the federal courts respect and apply a state's definition of its citizens' rights and remedies, absent conflicts with a federal procedural rule. Georgia's anti-SLAPP statute defines its citizens' rights and remedies when sued for speech on matters of public concern. Georgia's legislature specifically revised the statute in 2016 in response to this Court's precedent, and precedent in other circuits previously cited by this Court with approval, to remove any conflict with federal procedural rules.

The Panel decision did not address the General Assembly's adherence to this Circuit's suggestions for removing the conflict with the federal rules. The Panel also dismissed the Circuit's own precedent as not controlling. It is important for this Court to review *en banc* the Panel's decision to disregard precedent and align this Circuit with the minority view curtailing citizens' rights of freedom of expression.

## A. The Panel's decision firmly aligns this Circuit with the minority view of the D.C. Circuit and exacerbates a split with the well-reasoned decisions of four other circuits.

The Panel's decision aligns the Eleventh Circuit with the minority view of just one other Court of Appeals, the District of Columbia Circuit. Moreover, the Panel rejects the weight of authority reflected in the decisions of the First and Ninth Circuits firmly applying state anti-SLAPP laws that are materially identical to

Georgia law, and the decisions of the Second and Fifth Circuits, also respecting and applying similar anti-SLAPP laws.

Just last year, the Ninth Circuit, which for two decades has dealt with this issue more than any other circuit, reiterated that California's anti-SLAPP statute's special motion to strike and attorney's fees provisions (on which Georgia's General Assembly patterned its amended statute) should apply in federal court. *See Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress,* 890 F.3d 828, 833-34 (9th Cir. 2018). *See also Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1181 (9th Cir. 2013) (Wardlaw, J., concurring in denial of rehearing *en banc*); *Batzel v. Smith*, 333 F.3d 1018, 1024-25 (9th Cir. 2003); *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972 (9th Cir. 1999). That circuit has long held that the anti-SLAPP provisions do not conflict with Fed. R. Civ. P. ("Rule") 8, 12 or 56. *See Planned Parenthood,* 890 F.3d at 833; *Makaeff*, 736 F.3d at 1180-81; *Newsham*, 190 F.3d at 972; *see also Makaeff*, 736 F.3d at 1181 ("The Supreme Court's decision in [*Shady Grove*], does not change this reasoning."). The special motion to strike and each rule "can exist side by side. . . each controlling its own intended sphere of coverage without conflict." *Newsham*, 190 F.3d at 972.

Likewise, the First Circuit in *Godin v. Schencks*, held that Maine's anti-SLAPP law "serves the entirely distinct function of protecting those specific

defendants that have been targeted with litigation on the basis of their protected speech" and does not conflict with Rule 12(b)(6). 629 F.3d 79, 89 (1st Cir. 2010).

The Fifth Circuit regularly applies both Louisiana's and Texas's anti-SLAPP laws and has held that the Louisiana anti-SLAPP law does not conflict with Rule 56. *See, e.g.*, *Block v. Tanenhaus*, 815 F.3d 218, 221 (5th Cir. 2016); *Cuba v. Pylant*, 814 F.3d 701, 706 (5th Cir. 2016); *Henry v. Lake Charles Am. Press LLC*, 566 F.3d 164, 181 (5th Cir. 2009). The Second Circuit, under conflicts of laws principles, has similarly applied the substance of Nevada's anti-SLAPP statute. *See Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014).

For 20 years, most federal circuits have respected state legislatures' determination that citizens deserve the anti-SLAPP laws' protections for free expression and remedies against speech-chilling litigation. The Panel's decision breaks sharply with the respect these other circuits have accorded to the public policy of the states.[1] If the Court intends to depart from the mainstream and exacerbate the split between the circuits, the entire Court should have the opportunity to weigh in *en banc*.

---

[1] Most recently, in *Caranchini v. Peck*, No. 2:18-cv-02249-CM-TJJ, slip op. at 11-12 (D. Kan. Nov. 26, 2018), the court applied the Kansas anti-SLAPP law (Kan. Stat. Ann. § 60-5320), finding the reasoning of the First, Fifth and Ninth Circuits more persuasive and more consistent with *Shady Grove* and *Erie*, than the D.C. Circuit's.

**B.      The Panel disregarded the alternative holding in *Tobinick v. Novella* as well as the reasoning in *Royalty Network, Inc. v. Harris*.**

The entire Court also should review the Panel's decision because it declines to follow the holding of *Tobinick v. Novella*, 848 F.3d 935 (11th Cir. 2017), in which this Court approved application of the California anti-SLAPP law.[2]  Additionally, the Panel gives insufficient consideration to the reasoning in *Royalty Network, Inc. v. Harris*, 756 F.3d 1351 (11th Cir. 2014), which clearly indicated that if Georgia amended its statute, as it now has, the law would apply in federal court.

The Panel relies on no precedent in characterizing the *Tobinick* panel's holding as mere *dicta*.  *See* Carbone v. Cable News Network, Inc., No. 17-10812, slip op. (11th Cir. December 13, 2018) ("Opinion") at 6. The Panel also provides no analysis, or any citation to this Court's, or another circuit's, precedent differentiating a holding from *dicta*.  *See* Opinion at 6-7.[3]  To the contrary, the arguments presented to the *Tobinick* panel, and the decision itself, clearly show that the panel's decision was not *dicta*.

---

[2] The operative sections in the California anti-SLAPP statute and the Georgia anti-SLAPP statute are functionally identical. *Compare* Cal. Civ. Proc. § 425.16(b)(1) *with* OCGA § 9-11-11.1(b)(1).

[3] The Panel relies solely on a citation to a passage in a book by legal writing author Bryan Garner that simply notes hypotheticals posed in a court's opinion are *dicta*. *See* Opinion at 6 (citing Bryan A. Garner et al., The Law of Judicial Precedent § 4, at 44 (2016)).  The *Tobinick* panel posed no hypotheticals in the decision.

In *Tobinick*, the lower court granted a special motion to dismiss a defamation claim brought pursuant to the California anti-SLAPP law. 848 F.3d at 942. The appellant first argued that the issue of applicability of the anti-SLAPP statute had been waived.  The appellant alternatively argued that the lower court did not err by applying California law as the "statute is substantive and conflicts with no federal statute or rule."  Appellee Br., *Tobinick v. Novella*, No. 15-14889, at 23-30 (11th Cir. May 23, 2016).  The briefing articulated in detail the reasoning expressed by the First, Second, Fifth and Ninth Circuits that anti-SLAPP laws do not conflict with any federal rule.  *See id*. at 24-27.  The briefing further argued that this "Court in *Royalty Network* cited [the Ninth Circuit's holding in *Newsham*] and implicitly approved the application of the California anti-SLAPP statute" and "agreed with the majority of the circuits . . . that permit the application of the statute."  *Id*. at 25.

The Court in *Tobinick* agreed that the appellee has waived the issue of whether the California anti-SLAPP law applies in federal court.  The Court could have stopped its analysis there. Instead, it went on to address the appellant's substantive argument that, even if there were no waiver, the lower court's holding did not constitute plain error:

> Furthermore, not only did the *Tobinick* Appellants squarely concede the *Erie* issue at the hearing, the district court nevertheless considered the argument in its anti-SLAPP order. The district court acted reasonably in applying California's anti-SLAPP statute to the state law claims, stating that "the majority of circuit courts have found anti-SLAPP

7

special motions to strike permissible, and . . . the specific anti-SLAPP statute at issue has previously been allowed in federal court."

*Tobinick*, 848 F.3d at 944 (citing *Tobinick v. Novella*, 108 F. Supp. 3d 1299, 1305 n.4 (S.D. Fla. 2015)).  This holding is not *dicta*.[4]  Use of the word "furthermore" indicates that the Court was providing an additional, separate, basis for its conclusion.  *See Definition of Furthermore,* Merriam-Webster Online, https://www.merriam-webster.com/dictionary/furthermore#learn-more (last visited January 2, 2019) ("in addition to what precedes").

Indeed, under the law of this Circuit, each alternative holding in a single decision carries equal precedential weight.  *Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1255 (11th Cir. 2017); *World Harvest Church, Inc. v. Guideone Mut. Ins. Co.*, 586 F.3d 950, 958 (11th Cir. 2009) (collecting cases) ("The decisional law of Georgia appears to recognize alternative holdings as binding."); *Bravo v. United States*, 532 F.3d 1154, 1162-63 (11th Cir. 2008); *accord Bank of Italy Nat. Tr. & Sav. Ass'n v. Bentley*, 217 Cal. 644, 650 (Cal. 1933); *Dotegowski v. Abbott Labs*., No. CGC-10-506794, 2015 Cal. Super. LEXIS 18019, at *10 (Cal. Super. Apr. 20, 2015). "Where a case presents two or more points, any one of which is sufficient to determine the

---

[4] The Eleventh Circuit rendered its decision in *Tobinick* two years after the D.C. Circuit's decision in *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328 (D.C. Cir. 2015), on which the Panel in this proceeding relied. *See* Opinion at 23. The *Tobinick* Panel thus made a deliberate decision to side with the majority of circuits and not adopt the minority position of *Abbas*.

ultimate issue, but the court actually decides all such points, the case is authoritative precedent as to every point decided." *World Harvest Church*, 586 F.3d at 958 (citing *QOS Networks Ltd. v. Warburg, Pincus & Co.*, 669 S.E.2d 536, 541 (Ga. Ct. App. 2008)).

*Tobinick* strongly reinforced the panel's suggestion in *Royalty Network* that a state statute, modeled on California's anti-SLAPP law, would be applied in the Eleventh Circuit. The *Royalty Network* panel rejected application of the earlier Georgia statute's verification requirement, by distinguishing the reasoning of the First, Fifth and Ninth Circuits, holding statutes without verification requirements could apply in federal court. *Royalty Network*, 756 F.3d at 1361-62.[5] Answering this Circuit's concerns, in 2016 the Georgia General Assembly amended its anti-SLAPP law to conform to the provisions in the statutes accepted by the other circuits noted in the *Royalty Network* decision. *See* 2016 Ga. Laws 420.

The *Tobinick* and *Royalty Network* decisions strongly indicate that this Circuit, prior to the Panel's decision here, would apply Georgia's amended anti-SLAPP statute. The Panel's ruling disregards precedent and gives no consideration

---

[5] Notably, Judge Jordan wrote separately to explain why *Follenfant v. Rogers*, 359 F.2d 30, 32 n.2 (5th Cir. 1966), upon which the Court based its holding, was wrongly decided. *Royalty Network,* 756 F.3d at 1363 (Jordan, J. concurring). He found that "'similarities' between § 9-11-11.1(b) and Rule 11 do not create a conflict because 'compliance with each can be simultaneously achieved.' Were it not for the broad sweep of *Follenfant*, I would reverse." *Id*.

or deference to the General Assembly's response to the Court's instructions.[6]  *En banc* review is therefore especially appropriate, given the Panel's decision to align the Circuit with the minority view, alter the course of Eleventh Circuit law and disregard the legislative expression of important public policy.

**C.     The Panel contradicts the Supreme Court's analysis in *Shady Grove* and *Burlington***

The panel applied *Shady Grove* improperly.  In asserting that Rules 8, 12, and 56 read together preclude application of Georgia state law, the Panel fails to engage in a textual analysis to determine whether the Rules truly "answer[] the question in dispute." *Shady Grove Orthopedic Assocs., P.A., v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Instead, the Panel's analysis "turns *Shady Grove's* lens into a kaleidoscope" by combining rules to artificially create a "question" broad enough to conflict with the state statute.  *Makaeff,* 736 F.3d at 1182 (Wardlaw, J., concurring in denial of rehearing *en banc*).

---

[6] By analogy, this Circuit provides substantial deference to state and local legislatures in construing state statutes and local ordinances in cases challenging their constitutionality. *See e.g., Moustakis v. City of Fort Lauderdale*, 338 F. App'x 820, 821 (11th Cir. 2009) (citing *United States v. Bajakajian*, 524 U.S. 321, 336 (1998)) (deferring to city council on circumstances warranting a fine for code violation); *Georgia Cemetery Ass'n v. Cox*, 353 F.3d 1319, 1321 (11th Cir. 2003) ("The court must give great deference to a state legislature because lawmakers are presumed to have acted constitutionally.") (citations omitted).

When faced with a putative conflict between a state statute and federal rule, courts must engage with the specific texts of the two provisions to determine if they answer a common question in a manner that precludes applying both. *See Shady Grove*, 559 U.S. at 398; *id.* at 421 (Stevens, J. concurring) ("The court must first determine whether the scope of the federal rule is sufficiently broad to control the issue before the court, *thereby leaving no room for the operation of seemingly conflicting state law*.") (internal quotations omitted) (emphasis added); *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 6 (1987); *Hanna v. Plumer*, 380 U.S. 460, 471-72 (1965); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 555-57 (1949); *Royalty Network*, 756 F.3d at 1359 ("Based on the plain text of the state law and the federal rule, it is apparent that the federal rule is broad enough to cover the issue and that the two directly conflict."). If a specific federal rule and state law "can exist side by side . . . each controlling its own intended sphere of coverage without conflict," the state law may apply. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 741 (1980); *see also Godin*, 629 F.3d at 86 (adopting the same language in anti-SLAPP context); *Makaeff*, 736 F.3d at 1181 (Wardlaw, J. concurring in denial of rehearing *en banc*) (noting that in order to determine the question answered by the federal rule "the Court looked to the plain language of the Rule.")

Thus, in *Shady Grove*, Justice Scalia's reasoning, that Federal Rule 23 leaves no room for the operation of N.Y. C.P.L.R. § 901(b), relies on the identical language

in each provision – i.e. "maintain[]" – and the fact that each provision commanded a different result. *Compare* 559 U.S. at 399-400 ("But that is exactly what Rule 23 does: It says that if the prescribed preconditions are satisfied 'a class action may be maintained.'") *with id*. at 401 ("By its terms, [§901] precludes a plaintiff from 'maintain[ing] a class action seeking statutory penalties.'").

*Shady Grove* did not substantively alter the Supreme Court's previous analysis. In *Burlington*, the Court likewise reviewed the text of a competing federal rule and state statute to determine if application of the rule foreclosed application of the statute. *See Burlington,* 480 U.S. at 3-4. The Court held that the two provisions did directly conflict, because while "Rule 38 adopts a case-by-case approach to identifying and deterring frivolous appeals[,] the Alabama statue precludes any exercise of discretion" in awarding attorney's fees as a deterrent to frivolous appeals. *Burlington*, 480 U.S. at 7.

The Panel decision did not engage in the textual comparison of *each* rule that *Shady Grove* and *Burlington* require. Instead, the Panel concludes that, if a court can articulate a sufficiently broad *aggregate* purpose for a subset of the Federal Rules, no comparison between state law and each individual rule is required: "Rules 8, 12 and 56 . . . constitute an exhaustive set of requirements governing pretrial dismissal and entitlements to discovery and a trial on the merits[.]" Opinion at 18; *see also* Opinion at 20. The Panel, having defined a potential collision between state

law and the aggregation of Federal Rules, specifically dismisses any obligation to reconcile the two. *See* Opinion at 14. It is true courts need not artificially construe the rules narrowly, *see id.* at 13-14 (citing *Walker*, 446 U.S. at750 n.9), but neither can they manufacture a broad scope by combining three separate rules without textually articulating the scope of each. Some conflicts between laws are truly unavoidable, *see Shady Grove*, 559 U.S. at 406 n.8 (Scalia, J.), but the Panel's analysis does not comport with Justice Stevens' admonition in *Shady Grove* or the Supreme Court's decision in *Burlington* that courts should apply any reasonable interpretation of a discrete federal rule that allows it to live alongside a state law. *See Shady Grove*, 559 U.S. at 430 ("[C]ourts should avoid immoderate interpretations of the Federal Rules that would trench on state prerogatives.") (Stevens, J., concurring) (internal quotations omitted). The Panel's decision not to attempt any reconciliation also contravenes deeply established principles of federalism. *Id.* at 425 n.9 (Stevens, J. concurring); *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).

Here, the text of the Georgia statute "does not attempt to answer [the] question" posed by Rule 12(b)(6): "whether the plaintiff has stated a claim that is plausible on its face and upon which relief can be granted." *See Makaeff*, 736 F.3d at 1182 (Wardlaw, J., concurring in denial of rehearing *en banc*). Instead, the statute answers the question: whether the Court must expeditiously dispose of claims that

chill free speech "through abuse of the judicial process" when the claimant has failed to establish a probability of success on his claim. *See* Ga. Code. Ann. § 9-11-11.1(a). It creates "a separate and additional theory upon which certain kinds of suits may be disposed of before trial," and "supplements rather than conflicts" with Rules 12 and 56. *Makaeff*, 736 F.3d at 1182 (Wardlaw, J., concurring in denial of rehearing *en banc*); *see* § 9-11-11.1(b)(1). Providing this mechanism at an early stage of the litigation mitigates the chill on defendants' freedom of speech. *See Rogers v. Dupree*, 799 S.E.2d 1, 5 (Ga. Ct. App. 2017) ("[T]he goal of an anti-SLAPP statute is to end a SLAPP lawsuit quickly and without much cost to the defendant.").[7]

Furthermore, the manner in which courts evaluate probability of success under the statute, is fully consistent with the standards that apply in federal court: If a defendant makes an anti-SLAPP motion founded on purely legal arguments, the court applies the Fed. R. Civ. P. 8 and 12 standards; if on a factual challenge basis, Rule 56 summary judgment would apply after the parties have the opportunity for discovery relevant to the issues raised in the motion. *See Planned Parenthood*, 890

---

[7] In addition, applying the Georgia anti-SLAPP statute is fully consistent with Eleventh Circuit precedent favoring early disposal of libel actions against the media because "the very pendency of a lawsuit may exert the chilling effect which *New York Times Co. v. Sullivan* and its progeny seek to guard against." *Southard v. Forbes, Inc.*, 588 F.2d 140, 145 (5th Cir. 1979) (footnote omitted); *see also Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 327 (2010); *Time, Inc. v. McLaney*, 406 F.2d 565, 566 (5th Cir. 1969).

F.3d at 833; *Z.F. v. Ripon Unified Sch. Dist.*, 482 F. App'x 239, 240 (9th Cir. 2012) (citing *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 847 (9th Cir. 2001)). This is consistent with the application of the statute in Georgia state courts. *See Rosser v. Clyatt*, Nos. A18A0843, A18A0987, 2018 Ga. App. LEXIS 633, at *6-7 (Ga. Ct. App. Nov. 2, 2018); *see also Neff v. McGee*, 816 S.E.2d 486, 488 (Ga. Ct. App. 2018) (citing § 9-11-11.1(b)(2)). In this way, there is no conflict between the Federal Rules and Georgia's anti-SLAPP law.

Finally, under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), an obvious consequence of the Panel's decision will be to encourage forum shopping. The Panel did not consider whether applying the state law would advance the dual aims of *Erie*: "discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna*, 380 U.S. at 468; *see also Shady Grove*, 559 U.S. at 417 n.2 (Stevens, J. concurring); *Walker*, 446 U.S. at 752–53. The Panel's decision, contrary to the *Erie* doctrine, has opened the courthouse doors to any plaintiff seeking to abuse the judicial process to attempt to chill the free speech of adversaries. The Circuit *en banc* should take up this issue now because the Panel's decision does not substantively engage with this inevitable consequence of its decision.

## V.    CONCLUSION

For the reasons outlined above, this Court should review *en banc* the panel's holding in *Carbone v. Cable News Network, Inc.*, No. 17-10812, slip op. (11th Cir.

December 13, 2018), and hold that the Georgia anti-SLAPP law applies in federal court.

Dated: January 3, 2019        Respectfully submitted,

*s/ Charles D. Tobin*
Charles D. Tobin
BALLARD SPAHR, LLP
1909 K Street, NW
12th Floor
Washington, DC 20006-1157
Tel: (202) 661-2218

*Counsel for Appellant CNN*

# CERTIFICATE OF COMPLIANCE

This document complies with the word limit of the Fed. R. App. P. 32(a)(7)(B) because, excluding parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3780 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6).

Dated: January 3, 2019

Respectfully submitted,

*s/ Charles D. Tobin*
Charles D. Tobin
BALLARD SPAHR, LLP
1909 K Street, NW
12th Floor
Washington, DC 20006-1157
Tel: (202) 661-2218

*Counsel for Appellant CNN*

# CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of January, 2019, a true and correct copy

of the foregoing Petition of Defendant Appellant for Rehearing *En Banc* was served

upon the following opposing counsel, by filing electronically on the Courts ECF/CM

system, and emailing same:

L. Lin Wood
Stacey Godfrey Evans
Jonathan David Grunberg
George Taylor Wilson
L. LIN WOOD, PC
1180 W. Peachtree St. Suite 2400
Atlanta, GA 30309
T: 404-891-1404

David E. Hudson
HULL BARRETT, PC
801 Broad St. Suite 700
Po. Box 1564
Augusta, GA 30901
T: 706-722-4481

Respectfully submitted,

*s/ Charles D. Tobin*
Charles D. Tobin

# APPENDIX

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10812

_____

D.C. Docket No. 1:16-cv-01720-ODE


DAVIDE M. CARBONE,

Plaintiff-Appellee,

versus

CABLE NEWS NETWORK, INC.,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 13, 2018)

Before TJOFLAT and WILLIAM PRYOR, Circuit Judges, and MURPHY,* District Judge.

WILLIAM PRYOR, Circuit Judge:

---

* Honorable Stephen J. Murphy III, United States District Judge for the Eastern District of Michigan, sitting by designation.

This interlocutory appeal requires us to decide whether the motion-to-strike procedure of the Georgia anti-SLAPP (Strategic Lawsuits Against Public Participation) statute, O.C.G.A. § 9-11-11.1, applies in federal court. Davide Carbone filed a complaint against Cable News Network for publishing a series of allegedly defamatory news reports about him and the medical center he administered. CNN moved to strike the complaint under the Georgia anti-SLAPP statute or, in the alternative, to dismiss the complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). The district court denied that motion. It ruled that the special-dismissal provision of the anti-SLAPP statute does not apply in federal court because it conflicts with Rule 12(b)(6) and that Carbone's complaint states a claim for relief. CNN challenges both rulings. We agree with the district court that the special-dismissal provision of the Georgia anti-SLAPP statute does not apply in federal court, but we lack pendent appellate jurisdiction to review whether Carbone's complaint states a claim for relief. We affirm in part and dismiss in part.

## I. BACKGROUND

Carbone alleges that while he served as chief executive officer of St. Mary's Medical Center in West Palm Beach, Florida, CNN published "a series of false and defamatory news reports, articles, and social media posts" asserting that the mortality rate for pediatric open-heart surgery at St. Mary's was 12.5 percent—

more than three times the national average of 3.3 percent. Carbone alleges that CNN intentionally misrepresented the national average mortality rate for open-heart pediatric surgeries by using a figure based on the *total* number of pediatric heart surgeries. As he puts it in his complaint, "[i]nstead of reporting the St. Mary's program's mortality rate based on all pediatric heart surgeries it performed (both open and closed heart surgeries) and comparing that number to the national average of the same computation," CNN reported "the St. Mary's program's mortality rate for the most inherently risky surgeries (open heart) and then compared it to the national rate for all surgeries (including the less risky closed heart surgeries)." The total "risk-adjusted mortality rate for St. Mary's Pediatric Cardiac program was 5.3%, and that figure had a 95% confidence interval that encompassed" the "national average 3.4% mortality rate," which meant that there was "no statistically significant difference between the St. Mary's program's mortality rate and the national average." Carbone alleges that, as a result of this reporting, St. Mary's discontinued its pediatric cardiology program and he was forced to resign as chief executive officer.

CNN moved to strike Carbone's complaint under the Georgia anti-SLAPP statute, O.C.G.A. § 9-11-11.1, or, in the alternative, to dismiss it under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The anti-SLAPP statute applies to claims brought against "a person or entity arising from any

act . . . which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern." O.C.G.A. § 9-11-11.1(b)(1). If this condition is satisfied, the statute provides a special procedural mechanism for the defendant to move to strike the claim. That provision requires the claim to be struck "unless the court determines that the nonmoving party has established that there is a probability that the nonmoving party will prevail on the claim." *Id.*

Discovery is halted during the pendency of a motion to strike, *id.* § 9-11-11.1(d), with two exceptions. First, "if there exists a claim that the nonmoving party is a public figure plaintiff, then the nonmoving party shall be entitled to discovery on the sole issue of actual malice whenever actual malice is relevant to the court's determination." *Id.* § 9-11-11.1(b)(2). Second, "[t]he court, on noticed motion and for good cause shown, may order that specified discovery or other hearings or motions be conducted." *Id.* § 9-11-11.1(d). And "a prevailing moving party on a motion to strike shall be granted the recovery of attorney's fees and expenses of litigation related to the action in an amount to be determined by the court based on the facts and circumstances of the case." *Id*. § 9-11-11.1(b.1).

The district court denied CNN's motion. It ruled that the special dismissal procedure created by Georgia's anti-SLAPP statute does not apply in federal court

4

and that Carbone's complaint states a claim for relief under Rule 12(b)(6). The district court determined that Rule 12(b)(6) "directly conflicts with Georgia's anti-SLAPP statute" because the latter creates "a Rule 12(b)(6) 'plus' standard for cases with a First Amendment nexus." The district court reasoned that this conflict arises because "Rule 12(b)(6) requires 'plausibility' on the face of the complaint" but "Section 9-11-11.1(b)(1) requires a probability of prevailing." The district court ruled that Carbone's complaint contained plausible factual allegations that, if true, would prove liability for defamation.

## II. STANDARD OF REVIEW

We review *de novo* federal-versus-state choice-of-law questions, *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008), and questions concerning our jurisdiction, *Weatherly v. Ala. State Univ.*, 728 F.3d 1263, 1269 (11th Cir. 2013).

## III. DISCUSSION

We divide our discussion in two parts. First, we consider whether the motion-to-strike procedure created by the Georgia anti-SLAPP statute applies in a federal court sitting in diversity jurisdiction. Second, we address whether we have pendent appellate jurisdiction to review the denial of the motion to dismiss under Rule 12(b)(6).

*A. The Motion-to-Strike Provision of Georgia's Anti-SLAPP Statute Conflicts with Rules 8, 12, and 56.*

CNN argues that we have already held that motion-to-strike provisions of state anti-SLAPP statutes apply in federal court in two decisions, *Royalty Network, Inc. v. Harris*, 756 F.3d 1351 (11th Cir. 2014), and *Tobinick v. Novella*, 848 F.3d 935 (11th Cir. 2017), but CNN is mistaken. In *Harris*, we held that a separate provision of an earlier version of Georgia's anti-SLAPP statute, which required a complaint asserting a claim covered by the statute to be "accompanied by a verification making specific representations," conflicted with Federal Rule 11(a) and did not apply in federal court. 756 F.3d at 1359. We addressed the motion-to-strike procedure only to clarify that our holding did not conflict with the decisions of our sister circuits holding that such procedures apply in federal court. *Id.* at 1361–62. And in *Novella*, we affirmed the dismissal of certain state-law claims based on California's anti-SLAPP statute. But we did so because the plaintiff-appellants in that appeal "waived their challenge to the district court's application of California's anti-SLAPP statute based on the *Erie* doctrine," not because we concluded that the statute applies in federal court. *Novella*, 848 F.3d at 944. To be sure, we stated that "[t]he district court acted reasonably in applying California's anti-SLAPP statute," *id.*, but that observation was not part of our holding. *See* Bryan A. Garner et al., *The Law of Judicial Precedent* § 4, at 44 (2016)

6

("[D]igressions speculating on how similar hypothetical cases might be resolved" are dicta and do not "bind future courts.").

The framework for resolving this question is familiar. A federal court exercising diversity jurisdiction will not apply a state statute if a Federal Rule of Civil Procedure "answers the question in dispute." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (majority opinion). If a Federal Rule is "sufficiently broad to control the issue before the Court," *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749–50 (1980), "it governs . . . unless it exceeds statutory authorization" under the Rules Enabling Act or "Congress's rulemaking power" under the Constitution, *Shady Grove*, 559 U.S. at 398. If no Federal Rule answers the question in dispute, we undertake an "unguided *Erie*" inquiry to decide whether to apply the state statute or federal common law. *Hanna v. Plumer*, 380 U.S. 460, 471 (1965). That choice-of-law inquiry requires us to "apply *Erie* and its progeny to determine 'whether failure to apply the state law would lead to different outcomes in state and federal court and result in inequitable administration of the laws or forum shopping.'" *Harris*, 756 F.3d 1358 (citation omitted).

Under that framework, we cannot apply the dismissal provision of the Georgia anti-SLAPP statute. The question in dispute is whether Carbone's complaint states a claim for relief supported by sufficient evidence to avoid pretrial dismissal. Taken together, Rules 8, 12, and 56 provide an answer.

7

Rules 8 and 12 define the criteria for assessing the sufficiency of a pleading before discovery. Rule 8(a)(2) provides that a complaint "that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." If a complaint's statement of a claim does not satisfy this requirement, it is subject to dismissal under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." A claim satisfies the requirement of Rule 8(a)—and avoids dismissal under Rule 12(b)(6)—if the complaint alleges facts sufficient to establish that the claim is "plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). And under Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6). *See Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

Rule 56 governs whether a party's claim is supported by sufficient evidence to avoid pretrial dismissal. Under this Rule, a party is ordinarily entitled to test the proof for a claim only after the conclusion of discovery. *See* Fed. R. Civ. P. 56(d)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986) (explaining that Rule 56's requirement that a nonmoving party set forth facts proving a dispute of material fact "is qualified" by Rule 56's "provision that summary judgment be refused where the nonmoving party has not had the

opportunity to discover information that is essential to his opposition"). A complaint that satisfies Rules 8 and 12 will warrant a trial unless, after discovery, the party moving for summary judgment "shows that there is no genuine dispute as to any material fact" and is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The motion-to-strike provision of the Georgia anti-SLAPP statute "answer[s] the same question" as Rules 8, 12, and 56, but it does so in a way that conflicts with those Rules. *Shady Grove*, 559 U.S. at 401. For the class of claims that it governs, the anti-SLAPP statute defines the conditions under which a court must dismiss a claim before trial for insufficient pleading or proof.

The standard for pleading imposed by the anti-SLAPP statute differs from Rules 8 and 12 by requiring the plaintiff to establish "a *probability*" that he "will prevail on the claim" asserted in the complaint. O.C.G.A. § 9-11-11.1(b)(1) (emphasis added). In contrast, the plausibility standard under Rules 8(a) and 12(b)(6) plainly "does not impose a probability requirement at the pleading stage." *Twombly*, 550 U.S. at 556. Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a probability requirement . . . ." (citation and internal quotation marks omitted)).

The motion-to-strike procedure also conflicts with Rule 56. The Georgia statute "contemplates a substantive, evidentiary determination of the plaintiff's probability of prevailing on his claims." *Rosser v. Clyatt*, — S.E.2d —, No. A18A0843, slip op. at 7 (Ga. Ct. App. Nov. 2, 2018). But to avoid summary judgment under Rule 56, a nonmovant need only "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). In determining whether the nonmoving party has satisfied this burden, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The Georgia statute requires the plaintiff to establish that he will likely prevail if the case proceeds to trial. That evidentiary burden is far more demanding than one requiring him only to identify material factual disputes that a jury could reasonably resolve in his favor, and it requires the court to consider whether the factual underpinnings of the plaintiff's claim are likely true. And although Rule 56 does not generally permit a defendant to test a plaintiff's claim for evidentiary sufficiency before discovery, the Georgia anti-SLAPP statute provides that "[a]ll discovery . . . shall be stayed upon the filing" of a "motion to strike . . . until a final decision on the motion," unless the plaintiff satisfies the good cause standard. O.C.G.A. § 9-11-11.1(d). The Georgia statute deprives the plaintiff of the "period

10

for discovery[, unless the plaintiff shows good cause,] before defendant can test plaintiff's case for [evidentiary] sufficiency" conferred by the Federal Rules. *Makaeff v. Trump Univ.* (*Makaeff I*), 715 F.3d 254, 274 (9th Cir. 2013) (Kozinski, C.J., concurring).

The Georgia anti-SLAPP statute also compromises the joint operation of Rules 8, 12, and 56. Taken together, these Rules provide a comprehensive framework governing pretrial dismissal and judgment. Under Rule 12(d), a motion to dismiss for failure to state a claim under Rule 12(b)(6) or a motion for judgment on the pleadings "must be treated as one for summary judgment under Rule 56" if "matters outside the pleadings are presented to and not excluded by the court . . . ." In other words, the Rules contemplate that a claim will be assessed on the pleadings alone or under the summary judgment standard; there is no room for any other device for determining whether a valid claim supported by sufficient evidence to avoid pretrial dismissal.

In short, Rules 8, 12, and 56 express "with unmistakable clarity" that proof of probability of success on the merits "is not required in federal courts" to avoid pretrial dismissal, and that the evidentiary sufficiency of a claim should not be tested before discovery. *Hanna*, 380 U.S. at 470. But the relevant provisions of the Georgia anti-SLAPP statute explicitly require proof of a probability of success on the merits without the benefit of discovery. The result is a "direct collision"

11

between the Federal Rules and the motion-to-strike provision of the Georgia statute. *Id.* at 472.

CNN and its *amici* contend that Rules 12 and 56 establish only minimum requirements that claimants must satisfy at the pleading and pretrial stages that the Georgia anti-SLAPP statute may supplement without contradiction. They assert that neither Rule creates an affirmative entitlement to proceed to discovery or trial because they do not contain the kind of "rights-conferring language" that was critical to the Supreme Court's reasoning in *Shady Grove*. And they argue that the Supreme Court's decision in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), prohibits us from holding that there is a conflict between the Federal Rules and a state statute when the Federal Rules create a necessary-but-insufficient set of requirements. As they see it, the Federal Rules at issue merely "provide various theories upon which a suit may be disposed of before trial," but they "do not provide that a plaintiff is entitled to maintain his suit if their requirements are met." *Makaeff v. Trump Univ.* (*Makaeff II*), 736 F.3d 1180, 1182 (9th Cir. 2013) (Wardlaw, J., concurring in the denial of rehearing en banc).

Even if the relevant Federal Rules did not create an affirmative entitlement to proceed to discovery or trial, it would not follow that there is no conflict between the Federal Rules and the anti-SLAPP statute. The existence of a conflict does not invariably depend on whether the state law abrogates a procedural right

conferred by the Federal Rules, but instead turns on whether the Federal Rules and the state statute "answer the same question." *Shady Grove*, 559 U.S. at 401. Rules 8, 12, and 56 govern whether Carbone's claim states a valid claim supported by sufficient evidence to avoid pretrial dismissal. Those Rules are "'sufficiently broad' . . . to 'control the issue' before the court, thereby leaving no room for the operation" of the motion-to-strike procedure. *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4–5 (1987) (citations omitted).

CNN responds that the anti-SLAPP statute does not attempt to answer the question whether the plaintiff has alleged a claim that is plausible on its face, but instead answers whether the plaintiff's claim satisfies a probability requirement. But this argument conflates the question a rule or statute is designed to answer with the standard it requires the court to apply in answering that question. Rules 8, 12, and 56 answer the question of sufficiency by requiring the plaintiff to allege a claim that is plausible on its face and to present evidence sufficient to create a triable issue of fact. The Georgia anti-SLAPP statute answers the same question by requiring the plaintiff to allege and prove a probability of success on the merits. CNN's response relies on an artificially narrow construction of the Federal Rules as controlling only on whether their standards have been satisfied. But the Supreme Court has explicitly rejected the notion that "the Federal Rules of Civil Procedure

13

are to be narrowly construed in order to avoid a 'direct collision' with state law." *Walker*, 446 U.S. at 750 n.9.

Rules 8, 12, and 56 create an affirmative entitlement to avoid pretrial dismissal that would be nullified by the Georgia anti-SLAPP statute if it were applied in a federal court. Rule 8 provides that a complaint "that states a claim for relief must contain" three components: (1) "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." By negative implication, the enumeration of this series of requirements excludes other requirements that must be satisfied for a complaint to state a claim for relief. *See Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 80 (2002) (Under the "interpretive canon, *expressio unius est exclusio alterius*, 'expressing one item of [an] associated group or series excludes another left unmentioned.'" (citation omitted)); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 10, 107 (2012) ("The expression of one thing implies the exclusion of others."). A complaint that satisfies these requirements will withstand pretrial dismissal under Rule 12(b)(6), which ordinarily entitles the plaintiff to proceed to discovery. *See* Fed. R. Civ. P. 26(b)(1), 56(d)(2); *Anderson*, 477 U.S. at 250 n.5.

To be sure, Congress has formulated additional requirements governing the sufficiency of a complaint as exceptions to the general rule.  For example, Rule 9(b) requires fraud plaintiffs to "state with particularity the circumstances constituting fraud." And the Private Securities Litigation Reform Act requires certain securities-law plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

CNN's *amici* contend that "[i]f Rules 12 and 56 affirmatively authorized any plaintiff who meets their requirements to proceed to trial, they would contradict these provisions," but this argument reflects a failure to grasp the teachings of *Shady Grove*. There, the Supreme Court explained that "[t]he fact that Congress has created specific exceptions to Rule 23 hardly proves that the Rule does not apply generally. In fact, it proves the opposite." *Shady Grove*, 559 U.S. at 400 (majority opinion). "If Rule 23 did not authorize class actions across the board, the statutory exceptions would be unnecessary." *Id.* In the same way, if Rule 8 did not authorize a plaintiff to maintain suit and proceed to discovery, Congress would not have needed to add novel requirements for certain categories of claims. The decision whether to dismiss a complaint on alternative grounds would be effectively discretionary.

15

The "minimum requirements" interpretation of Rule 56 fails for similar reasons. The Rule states that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Rule, in conjunction with other Rules governing pretrial dismissal, qualifies the background entitlement to a trial affirmed by Federal Rules 38 and 39. *See* Fed. R. Civ. P. 38(a) ("The right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate."); Fed. R. Civ. P. 39(b) ("Issues on which a jury trial is not properly demanded are to be tried by the court."). It follows that if a plaintiff satisfies the requirements of Rule 56 and avoids summary judgment, he is entitled to a trial on the merits unless the court is required to grant the motion for summary judgment or dismiss the action on some other ground supported by the Federal Rules or some provision of federal law. *See Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1334 (D.C. Cir. 2015) (Kavanaugh, J.) ("Under the Federal Rules, a plaintiff is generally entitled to trial if he or she meets the Rules 12 and 56 standards to overcome a motion to dismiss or for summary judgment.").

The anti-SLAPP statute abrogates the entitlements conferred by these Rules. Under Rules 8 and 12(b)(6), a plaintiff is ordinarily entitled to maintain his suit and proceed to discovery if his complaint states a claim for relief that is plausible on its

16

face. The anti-SLAPP statute abrogates that entitlement in cases that fall within its ambit by requiring the plaintiff to establish that success is not merely plausible but probable. And under Rule 56, a plaintiff has a right to proceed to trial if he proves the existence of a genuine dispute of material fact. The anti-SLAPP statute would nullify that entitlement by requiring the plaintiff to prove that it is likely, and not merely possible, that a reasonable jury would find in his favor and to do so while relying exclusively on evidence he was able to obtain without discovery.

These considerations also establish that *Cohen* does not control the outcome of this appeal. In *Cohen*, the Supreme Court held that there was no conflict between a New Jersey statute that required certain plaintiffs to post a bond as a security for costs as a prerequisite to bringing a shareholder derivative action and former Federal Rule 23 (now Rule 23.1). 337 U.S. at 557. The Federal Rule requires that the complaint in a derivative suit "be verified by oath and to show that the plaintiff was a stockholder at the time of the transaction of which he complains or that his share thereafter devolved upon him by operation of law." *Id*. at 556. These requirements did not conflict with the state statute because they "neither create[d] nor exempt[ed] from liabilities, but require[d] complete disclosure to the court and notice to the parties in interest." *Id*. The New Jersey statute neither abrogated rights conferred by the Federal Rules nor addressed the questions of disclosure and notice. Instead, it was designed only to protect against "strike suits"

17

that were "brought not to redress real wrongs, but to realize upon their nuisance value." *Id.* at 548. Rules 8, 12, and 56, by contrast, constitute an exhaustive set of requirements governing pretrial dismissal and entitlements to discovery and a trial on the merits. And unlike the state statute at issue in *Cohen*, the Federal Rules and the Georgia anti-SLAPP statute address the same question: whether a complaint states a valid claim supported by sufficient evidence to warrant a trial on the merits.

CNN and its *amici* also contend that there is no conflict between Rules 12 and 56 and the motion-to-strike provision because each pursues a "separate purpose[]" and operates in a separate "sphere of coverage." *Walker*, 446 U.S. at 752 & n.13. As they see it, "[t]he object of Rules 12 and 56 is to winnow claims and defenses over the course of litigation," while the object of the anti-SLAPP law is to protect the rights to petition and freedom of speech. They also argue that the existence of Georgia rules of procedure with the same content as Rules 12 and 56 proves that the anti-SLAPP statute can coexist with those rules. *See* O.C.G.A. § 9-11-12(b)(6); *id.* § 9-11-56.

The problem with the argument about the purposes of the relevant Federal Rules and the anti-SLAPP statute is that the means by which the Georgia law pursues its special purpose is by *winnowing claims and defenses in the course of litigation*, just like Rules 12 and 56. That the aim of the statute is to protect First

Amendment rights is irrelevant, because the anti-SLAPP statute advances that end by imposing a requirement on a plaintiff's entitlement to maintain a suit over and above the requirements contemplated by the Federal Rules that control the same question. *Cf. Shady Grove*, 559 U.S. at 403 ("Even if its aim is to restrict the remedy a plaintiff can obtain, [the state statute] achieves that end by limiting a plaintiff's power to maintain a class action.") (majority opinion). Indeed, if anything, the Georgia statute's "mode of operation" is sufficiently similar to that of the relevant Federal Rules "to indicate that the Rule[s] occup[y] the statute's field of operation so as to preclude its application in federal diversity actions." *Burlington*, 480 U.S. at 7.

Nor does the existence of Georgia state-law analogues of Rules 12 and 56 prove that the federal counterparts of those Rules and the anti-SLAPP statute occupy separate spheres. *See* O.C.G.A. § 9-11-12(b)(6); *id.* § 9-11-56. The existence of equivalent provisions of Georgia law proves that rules with the same content as Federal Rules 12 and 56 can coexist with the anti-SLAPP statute in a single system of law. But the test of whether a conflict between the Federal Rules and a state statute exists is not whether it is logically possible for a court to comply with the requirements of both, but whether the Federal Rules in question are "sufficiently broad to control the issue before the Court." *Walker*, 446 U.S. at 749–50.

19

*Burlington* is instructive. There, the Supreme Court held that an Alabama statute that imposed a mandatory affirmance penalty on unsuccessful appeals conflicted with Rule 38 of the Federal Rules of Appellate Procedure, *see* 480 U.S. at 4, which provides that a court "may award just damages and single or double costs to the appellee" if it determines that an appeal is "frivolous." Fed. R. App. P. 38. The Court rejected the argument that there was no conflict with Rule 38 "because Alabama has a similar Appellate Rule which may be applied in state court alongside the affirmance penalty statute." *Burlington*, 480 U.S. at 7. Although it was possible to apply both the statute and Rule 38, the Alabama statute conflicted with the "case-by-case approach" adopted by the Federal Rules by "preclud[ing] any exercise of discretion within its scope of operation." *Id.* at 8. The motion-to-strike procedure's "mode of operation" likewise "unmistakably conflicts" with that of the Federal Rules by mandating a test of sufficiency that the Rules reject. *Id.* at 7.

CNN also argues that the function of the motion-to-strike procedure is to "define the scope" of "state-created right[s]," *Shady Grove*, 559 U.S. at 423 (Stevens, J., concurring), and not to answer the question whether a complaint is sufficient to withstand pretrial dismissal, but this argument is a nonstarter. The anti-SLAPP statute "creates no substantive rights; it merely provides a procedural mechanism for vindicating existing rights." *Makaeff I*, 715 F.3d at 273 (Kozinski,

20

C.J., concurring). The Georgia statute does not purport to alter a defendant's rights to petition and freedom of speech under the Federal and Georgia Constitutions. Nor could it. The only change effectuated by the Georgia statute is to make it easier for a defendant to avoid liability for conduct associated with the exercise of those rights by providing a special *procedural* device—a "motion to strike"—that applies a heightened burden to the claims that fall within its ambit. And by its plain terms, the motion-to-strike provision of the statute applies to causes of action created by Georgia law and claims that derive from the law of other states or the federal government alike. *See* O.C.G.A § 9-11-11.1(b)(1) (restricting availability of the motion to strike only to "claim[s] for relief . . . arising from any act of such person or entity which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech").

CNN relies on several decisions of our sister circuits holding that similar motion-to-strike provisions of state anti-SLAPP statutes apply in federal court. *See Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010); *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999); *see also Block v. Tanenhaus*, 815 F.3d 218, 221 (5th Cir. 2016) (assuming without deciding that an anti-SLAPP statute applies in federal court); *Cuba v. Pylant*, 814 F.3d 701, 706 & n.6 (5th Cir. 2016) (same); *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138 (2d Cir. 2013) (same). *But see Abbas*, 783 F.3d at 1333–37 (holding that the

21

District of Columbia's anti-SLAPP statute does not apply in federal court). Some of these decisions assume that state anti-SLAPP statutes apply in federal court with virtually no analysis. Of the precedential decisions of our sister circuits to address this issue, only *Godin* and *Newsham* attempt to explain that there is no conflict between the Federal Rules and state anti-SLAPP statutes akin to Georgia's statute.

We are not persuaded by the reasoning of these decisions. In *Godin*, the First Circuit concluded that there was no conflict between the Federal Rules and Maine's anti-SLAPP statute because Rule 12(b)(6) "provide[s] a mechanism to test the sufficiency of the complaint," and Rule 56 enables "parties to secure judgment before trial on the basis that there are no disputed material issues of fact," while that statute considers whether the plaintiff can "meet the special rules Maine has created to protect . . . petitioning activity against lawsuits." 629 F.3d at 89. This reasoning mirrors CNN's argument that the question in dispute is whether the standards of the applicable Federal Rules are satisfied and not whether a complaint states a valid claim supported by sufficient evidence to avoid pretrial dismissal. We reject it for the same reasons. And in *Newsham*, the Ninth Circuit held that there was no conflict between California's anti-SLAPP statute and the Federal Rules based on the Supreme Court's decision in *Cohen* and the premise that the anti-SLAPP statute "is crafted to serve an interest not directly addressed by the Federal Rules: the protection of 'the constitutional rights of freedom of speech and petition

for redress of grievances.'" 190 F.3d at 973 (quoting Cal. Civ. P. Code § 425.16(a)). As we have explained, the former argument relies on a misreading of *Cohen*, and the latter argument fails to appreciate that a special purpose distinct from that of the relevant Federal Rules is insufficient to eliminate a conflict between the Federal Rules and a state statute.

We find then-Judge Kavanaugh's reasoning in his opinion for the District of Columbia Circuit in *Abbas* far more convincing. As he explained, "[f]or the category of cases that it covers," an anti-SLAPP statute with a probability requirement "establishes the circumstances under which a court must dismiss a plaintiff's claim before trial—namely, when the court concludes that the plaintiff does not have a likelihood of success on the merits." *Abbas*, 783 F.3d at 1333. "But Federal Rules of Civil Procedure 12 and 56 'answer the same question' about the circumstances under which a court must dismiss a case before trial." *Id.* at 1333–34. And those Rules "answer that question differently: They do not require a plaintiff to show a likelihood of success on the merits." *Id.* at 1334.

Because the dismissal provision of the Georgia anti-SLAPP statute conflicts with the Federal Rules, it "cannot apply in diversity suits" unless Rules 8, 12, and 56 are "ultra vires" because they fall beyond the scope of the power delegated in the Rules Enabling Act or congressional powers over the operation of the federal courts. *Shady Grove*, 559 U.S. at 399. The Rules Enabling Act empowers the

23

Supreme Court to "prescribe general rules of practice and procedure and rules of evidence" for the federal courts, 28 U.S.C. § 2072(a), but this power is subject to the limitation that such rules "shall not abridge, enlarge or modify any substantive right," *id.* § 2072(b). As the Supreme Court has explained, a federal rule does not exceed the scope of the power delegated the Act if it "really regulates procedure," meaning that the rule governs "the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941); *see also Hanna*, 380 U.S. at 470–71; *Burlington*, 480 U.S. at 8. A federal rule falls within Congress's power under "the constitutional provision for a federal court system (augmented by the Necessary and Proper Clause)" if it is "rationally capable of classification" as procedural. *Hanna*, 380 U.S. at 472. The Federal Rules have "presumptive validity under both the constitutional and statutory constraints." *Burlington*, 480 U.S. at 6.

We have little difficulty concluding that Rules 8, 12, and 56 comply with the Rules Enabling Act and the Constitution. Those Rules are valid under the Rules Enabling Act because they define the procedures for determining whether a claim is alleged in a sufficient manner in a complaint and whether there is a genuine dispute of material fact sufficient to warrant a trial. These Rules "affect[] only the process of enforcing litigants' rights and not the rights themselves," *Burlington*,

24

480 U.S. at 8, and thus "really regulate procedure." *Sibbach*, 312 U.S. at 14; *see also Shady Grove*, 559 U.S. at 404 (majority opinion) (concluding that pleading standards and rules governing summary judgment are "addressed to procedure"). And if a rule "really regulates procedure," it must be "rationally capable of classification" as procedural, so the Rules also fall within the scope of the congressional power over the federal courts. Because Rules 8, 12, and 56 are valid under the Rules Enabling Act and the Constitution and govern the same basic question as the Georgia anti-SLAPP statute, the motion-to-strike procedure created by that statute cannot apply in federal court.

### B.  *We Lack Jurisdiction to Review the Denial of the Motion to Dismiss for Failure to State a Claim.*

CNN also asks us to review the denial of its motion to dismiss under Rule 12(b)(6), but we lack jurisdiction to review this ruling in an interlocutory appeal. We have interlocutory jurisdiction to consider whether the special dismissal procedure created by Georgia's anti-SLAPP statute applies in federal court under the collateral-order doctrine. *Harris*, 756 F.3d at 1355–57. We may exercise pendent jurisdiction over the denial of CNN's motion to dismiss only if that issue "is 'inextricably intertwined' with or 'necessary to ensure meaningful review' of the appealable issue." *Black v. Wigington*, 811 F.3d 1259, 1270 (11th Cir. 2016) (quoting *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1335 (11th Cir.

25

1999)). The issue whether the district court's ruling on CNN's motion to dismiss was correct does not fall under either category.

Whether the anti-SLAPP statute's motion-to-strike applies in federal court is a pure question of law that we may resolve without touching on the legal or factual merits of Carbone's complaint. "Because we may resolve" this issue "without reaching the merits" of CNN's motion to dismiss, "the latter issue does not come under either of these categories and thus does not fall within our pendent appellate jurisdiction." *Summit Med. Assocs.*, 180 F.3d at 1335 (quoting *Moniz v. City of Fort Lauderdale*, 145 F.3d 1278, 1281 n.3 (11th Cir. 1998)); *see also Hilton v. Hallmark Cards*, 599 F.3d 894, 900–02 (9th Cir. 2010) (holding that pendent jurisdiction is unavailable over a motion to dismiss under Federal Rule 12(b)(6) in an appeal from a denial of a motion to strike under an anti-SLAPP statute).

We reject the argument of CNN that the denials of its motion to strike and of its motion to dismiss are inextricably intertwined with one another because they "implicate[] the same facts and the same law." *Smith v. LePage*, 834 F.3d 1285, 1292 (11th Cir. 2016) (citation omitted). CNN appears to read *Smith* to endorse the proposition that pendent jurisdiction is available when orders deal with the same facts and law to any degree. But that decision used the phrase "implicate[] the same facts and the same law" only as shorthand to describe a ruling that is "inextricably intertwined" with or over which the exercise of jurisdiction is

"necessary to ensure meaningful review" of "an appealable decision." *Id.* Because the order denying CNN's motion to dismiss does not fit within either category, *Smith* provides no basis for exercising pendent jurisdiction.

In any event, resolving the issue whether an anti-SLAPP statute applies in federal court does not require us to engage with any of the factual allegations of Carbone's complaint, and the law governing each issue is plainly distinct. To resolve the appealable issue, we ask whether the Federal Rules "answer the same question" as the relevant provisions of the anti-SLAPP statute and whether the relevant Federal Rules are valid under the Rules Enabling Act and the Constitution. *Shady Grove*, 559 U.S. at 401. To review the denial of CNN's motion under Rule 12(b)(6), by contrast, we would consider whether Carbone's complaint alleges facts sufficient to state a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. So it cannot be said that both issues concern the same facts or are governed by the same law.

CNN cites two decisions in which we held that we had pendent jurisdiction over a motion to dismiss, *S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292 (11th Cir. 2000), and *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331 (11th Cir. 2007), but both are inapposite. Neither decision concerned a motion to dismiss for failure to state a claim under Rule 12(b)(6), let alone endorsed the generic proposition that pendent jurisdiction is available over an order denying a

motion to dismiss as a matter of course. In *S & Davis International*, we held that an order denying foreign sovereign immunity "based on the 'commercial activity exception' to sovereign immunity which has a 'direct effects' component" was "inextricably intertwined with the 'minimum contacts' component of the personal jurisdiction issue" raised by the defendant's motion to dismiss under Rule 12(b)(1). 218 F.3d at 1297–98. Resolution of the issue over which we had interlocutory jurisdiction would have "entailed a finding of minimum contacts" and resolved whether the defendant's motion to dismiss for lack of personal jurisdiction should have been granted. *Id.* at 1298 (citation omitted). Nothing comparable is true of the issues presented in this appeal. And in *McMahon*, we held that orders denying immunity from claims arising incident to military service under *Feres v. United States*, 340 U.S. 135 (1950), and denying a motion to dismiss on political-question grounds were "inextricably intertwined," which licensed pendent jurisdiction over the latter order. 502 F.3d at 1357. Because of the nature of the defenses asserted and the facts of the appeal, review of both orders turned on whether there was a "need to avoid judicial interference with sensitive military judgments." *Id*. So in *McMahon*, as in *S & Davis International*, the pendent issue overlapped with "the order over which we [had] jurisdiction." *McMahon*, 502 F.3d at 1357.

There is no sense in which our review of the denial of CNN's motion to strike overlaps with the issues we would need to consider to review the denial of

CNN's motion to dismiss under Rule 12(b)(6). "[W]e cannot consider" the ruling on the motion to dismiss "without exceeding the scope of our interlocutory jurisdiction." *Black*, 811 F.3d at 1270 (emphasis omitted). So we express no view about the denial of the motion to dismiss.

## IV. CONCLUSION

We **AFFIRM** the denial of the motion to strike and **DISMISS** the appeal of the denial of the motion to dismiss.

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 13, 2018

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  17-10812-GG
Case Style:  Davide Carbone v. Cable News Network, Inc.
District Court Docket No:  1:16-cv-01720-ODE

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against appellant.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Joe Caruso, GG at (404) 335-6177.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs