In The United States Court of Appeals
For The Eleventh Circuit

DAVIDE M. CARBONE,

*Plaintiff-Appellee,*

*v.*

CABLE NEWS NETWORK, INC.,

*Defendant-Appellant.*

*ON APPEAL FROM*
*THE UNITED STATES DISTRICT COURT*
*FOR THE NORTHERN DISTRICT OF GEORGIA*

## BRIEF FOR 25 *AMICI CURIAE* MEDIA ORGANIZATIONS IN SUPPORT OF REHEARING EN BANC

Shay Dvoretzky
Yaakov M. Roth
Anthony J. Dick
Vivek Suri
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Tel: (202) 879-3939
Fax: (202) 626-1700
Email: sdvoretzky@jonesday.com

Peter C. Canfield
*Counsel of Record*
JONES DAY
1420 Peachtree Street, NE
Suite 800
Atlanta, GA 30309
Tel: (404) 521-3939
Fax: (404) 581-8330
Email: pcanfield@jonesday.com

*Counsel for Amici Curiae*
*(additional counsel listed in signature block)*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In accordance with Eleventh Circuit Rule 26.1-1, counsel certify that, in addition to the persons listed in the certificates of interested persons filed by the parties, the following persons (*amici curiae*, their parent corporations, publicly held corporations that own 10% or more of their stock, and their counsel) have an interest in the outcome of this case:

1. Advance Publications, Inc.

2. American Broadcasting Companies, Inc.

3. American Society of News Editors

4. Association of Alternative Newsmedia

5. Association of American Publishers

6. Atlantic Media, Inc.

7. Bernstein, Richard A.

8. BlackRock, Inc. (BLK)

9. Bloom, Jonathan

10. Bloomberg L.P.

11. Broadcast Media Partners Holdings, Inc.

12. Brown, Bruce D.

13. Burke, Thomas

14. Canfield, Peter C.

15.     Clark, Kalea S.

16.     Comcast Corporation (CMCSA)

17.     Conti, Jason P.

18.     Covington & Burling LLP

19.     Cox Enterprises, Inc.

20.     Cox Media Group

21.     Curley, Tom

22.     Davis Wright Tremaine LLP

23.     Dick, Anthony J.

24.     Dow Jones & Company, Inc.

25.     Dvoretzky, Shay

26.     The Economist Newspaper Limited

27.     Eddy-Dorn, Heidi

28.     Feder, Eric J.

29.     The Financial Times Limited

30.     Fletcher, Heald & Hildreth, PLC

31.     Forrest, Carolyn

32.     Fox Television Stations, LLC

33.     Freeman, George

34.     Gannett Company, Inc. (GCI)

35.     Georgia Press Association

36. Goldberg, Kevin M.

37. Goldstein, Jacob P.

38. Grut, Oscar

39. Handman, Laura

40. Hart, Jonathan

41. Hudson, David E.

42. Hull Barrett

43. Jones Day

44. Kennedy, Jay

45. Leslie, Gregg P.

46. McCraw, David E.

47. McLaughlin, James A.

48. Media Law Resource Center

49. Meredith Corporation (MDP)

50. Messenger, Ashley

51. Motion Picture Association of America, Inc.

52. Nash Holdings LLC

53. National Press Photographers Association

54. National Public Radio, Inc.

55. NBCUniversal Media, LLC

56. New World Communications of Atlanta, Inc.

57. The New York Times Company (NYT)

58. News Corporation (NWSA and NWS)

59. News Media Alliance

60. Online News Association

61. Osterreicher, Mickey H.

62. Parness, Hillel

63. Pearson PLC (PSO)

64. Pila, Joshua N.

65. Ratner, Micah

66. The Reporters Committee for Freedom of the Press

67. Roth, Jacob M.

68. Ruby Newco, LLC

69. Sabin, Bermant & Gould LLP

70. Satyendra, Indira

71. Schary, Alison

72. Shapiro, Randy L.

73. Sheffner, Ben

74. Suri, Vivek

75. Twenty-First Century Fox, Inc. (FOX and FOXA)

76. Univision Communications, Inc.

77. Univision Holdings, Inc. (UVN)

78.   The Walt Disney Company (DIS)

79.   Weil, Gotshal & Manges LLP

80.   Weiner, Susan E.

81.   Wimmer, Kurt

82.   WP Company LLC

83.   Wyler, Artae

84.   Zucker, John

Dated: January 10, 2019

*/s/* Peter C. Canfield

Peter C. Canfield
*Counsel for Amici Curiae*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

DISCLOSURE STATEMENT ........................................................................ C-1

TABLE OF AUTHORITIES.................................................................................ii

STATEMENT OF IDENTITY OF *AMICI CURIAE*.......................................1

STATEMENT OF ISSUES ...................................................................................2

SUMMARY OF ARGUMENT............................................................................3

ARGUMENT .........................................................................................................4

I.  GEORGIA'S ANTI-SLAPP STATUTE PROVIDES ESSENTIAL PROTECTION

FOR THE PRESS ..............................................................................................4

II.  EXPERIENCE CONFIRMS THE VALUE OF THE PROTECTIONS PROVIDED

BY GEORGIA'S ANTI-SLAPP STATUTE ....................................................6

III.  REFUSING TO APPLY GEORGIA'S ANTI-SLAPP STATUTE IN FEDERAL

COURT UNDERMINES GEORGIA'S LEGISLATIVE PRIORITIES.................11

CONCLUSION ..................................................................................................12

# TABLE OF AUTHORITIES

<strong>Page(s)</strong>

**CASES**

*Adventure Outdoors, Inc. v. Bloomberg*,

    705 S.E. 2d 241 (Ga. Ct. App. 2010) .................................................................................7

*Armington v. Fink*,

    2010 WL 743524 (E.D. La. Feb. 24, 2010) ............................................................. 10, 11

*Boley v. Atl. Monthly Grp.*,

    950 F. Supp. 2d 249 (D.D.C. 2013) ..............................................................................10

*Boxcar Dev. Corp. v. New World Commc'ns of Atlanta, Inc.*,

    No. 08CV2248-10, 2008 WL 1943313 (Ga. Super. Ct. May 1, 2008) .........................7

*CanaRx Servs., Inc. v. LIN Television Corp.*,

    2008 WL 2266348 (S.D. Ind. May 29, 2008) ......................................................... 9, 10

*Critical Care Diagnostics, Inc. v. Am. Ass'n for Clinical Chemistry, Inc.*,

    2014 WL 634206 (S.D. Cal. Feb. 18, 2014) ..................................................................9

*Farah v. Esquire Magazine, Inc.*,

    863 F. Supp. 2d 29 (D.D.C. 2012) ...............................................................................10

*FEC v. Wisc. Right To Life, Inc.*,

    551 U.S. 449 (2007) ........................................................................................................5

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Four Navy Seals v. Associated Press,*

413 F. Supp. 2d 1136 (S.D. Cal. 2005) ........................................................8, 9

*Harkins v. Atlanta Humane Soc'y,*

618 S.E. 2d 16 (Ga. Ct. App. 2005) ...............................................................7

*Hilton v. Hallmark Cards,*

599 F.3d 894 (9th Cir. 2009) ........................................................................4

*Hindu Temple & Cmty. Ctr. v. Raghunathan,*

714 S.E. 2d 628 (Ga. Ct. App. 2011) .............................................................8

*Metzler v. Rowell,*

547 S.E. 2d 311 (Ga. Ct. App. 2001) ..........................................................6, 7

*N.Y. Times Co. v. Sullivan,*

376 U.S. 254 (1964) .....................................................................................5

*Providence Constr. Co. v. Bauer,*

494 S.E. 2d 527 (Ga. App. 1997) ..................................................................6

*Rosser v. Clyatt,*

821 S.E. 2d 140 (Ga. Ct. App. 2018) .............................................................8

*Royalty Network, Inc. v. Harris,*

756 F.3d 1351 (11th Cir. 2014)..................................................................................4

*Sarver v. Chartier,*

813 F.3d 891 (9th Cir. 2016) ....................................................................................9

*Thomas v. L.A. Times Commc'ns LLC,*

45 F. App'x 801 (9th Cir. 2002)..............................................................................9

*Virginia v. Hicks,*

539 U.S. 113 (2003) ..................................................................................................5

**STATUTES**

O.C.G.A. § 9-11-11.1 .......................................................................................... 3, 4, 11

O.C.G.A. § 48-7-40.26..................................................................................................5

**OTHER AUTHORITIES**

Chris Dodd,

*Why Free Speech is Critical to Film and Television Production in Georgia…and*

*Around the World,*

Huffington Post (Oct. 17, 2016) ...............................................................................6

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

Lili Levi,

*The Weaponized Lawsuit Against The Media*,

66 Am. U. L. Rev. 761 (2017) ............................................................................... 4

Todd Longwell,

*Georgia's Production Incentives Seal the Deal for Hollywood*,

Variety (Oct. 26, 2018) ............................................................................... 5

## STATEMENT OF IDENTITY OF *AMICI CURIAE*

*Amici curiae* are 25 leading news and media organizations. They, their members, or their affiliates gather and report news, and produce and distribute motion pictures and television programs, throughout the United States, including in Georgia. They have an interest in advocating for the application of anti-SLAPP laws in federal court, so that newsgathering, reporting, and other First Amendment-protected activities remain shielded from retaliatory federal lawsuits.

*Amici curiae* are: Advance Publications, Inc.; American Broadcasting Companies, Inc.; American Society of News Editors; Association of Alternative Newsmedia; Association of American Publishers, Inc.; Atlantic Media; Bloomberg L.P.; Cox Media Group; Dow Jones & Company, Inc.; The Economist Newspaper Limited; Gannett Co., Inc.; The Georgia Press Association; The Media Law Resource Center, Inc.; Meredith Corporation; Motion Picture Association of America, Inc.; The National Press Photographers Association; National Public Radio, Inc.; NBCUniversal; New World Communications of Atlanta, Inc.; The New York Times Company; The News Media Alliance; Online News Association; The Reporters Committee for Freedom of the Press; Univision Communications Inc.; and The Washington Post.[*]

---

[*] *Amici curiae* have filed a motion for leave to file this brief. No counsel for any party authored any part of this brief. No party or counsel for a party contributed money intended to fund the preparation or submission of this brief. No person (other than *amici curiae*, their members, and their counsel) contributed money intended to fund the preparation or submission of this brief.

## STATEMENT OF ISSUES

A Georgia statute requires anyone bringing a claim that targets speech on public issues to establish at the outset of the litigation that he has a probability of prevailing on the claim. Must a federal court exercising diversity jurisdiction apply this requirement?

**SUMMARY OF ARGUMENT**

*Amici* media organizations agree with Appellant CNN's arguments for granting rehearing en banc. *Amici* submit this brief to underscore one of those arguments: This case involves a question of exceptional importance.

Strategic lawsuits against public participation (SLAPPs) are lawsuits filed to punish an adversary's speech rather than to raise a meritorious claim. The Georgia General Assembly dealt with this threat to free speech by requiring a plaintiff bringing a claim that targets speech or public petitioning to demonstrate, at the outset of the case, "a probability that [it] will prevail" on the claim. O.C.G.A. § 9-11-11.1(b)(1) (2016). This statute protects valuable speech and encourages media organizations to operate in Georgia.

Georgia's anti-SLAPP statute achieves its goals in practice, not just in theory. Since its enactment in 1996, many defendants—including media defendants—have invoked it in Georgia courts to meritless rebuff lawsuits retaliating against them for speech on public issues. Similarly, defendants in other states have invoked those states' anti-SLAPP provisions to overcome lawsuits that take aim at their speech on matters of public concern.

Refusing to apply these provisions in federal court would strip these speakers of much-needed protection from abusive litigation. It would also undermine the Georgia General Assembly's efforts to attract media companies to the state. The importance of these consequences warrants rehearing en banc.

**ARGUMENT**

**I.    GEORGIA'S ANTI-SLAPP STATUTE PROVIDES ESSENTIAL PROTECTION FOR THE PRESS**

A SLAPP is a lawsuit that threatens "to deter common citizens" or members of the press from exercising their constitutional right to speak about matters of public concern. *Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2009). SLAPPs "masquerade as ordinary lawsuits," but the plaintiffs who bring them have little hope of success on the merits. *Id.* at 902. Instead, the plaintiffs attempt to intimidate, coerce, and ultimately silence adversaries by "dragg[ing] [them] into onerous judicial proceedings." *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1357 (11th Cir. 2014). Left unchecked, these suits "imperi[l] … important First Amendment interests." *Id.*

Like twenty-seven other states and the District of Columbia, Georgia has responded to this threat to public debate by enacting a statute meant to curb SLAPPs. *See* Lili Levi, *The Weaponized Lawsuit Against The Media*, 66 Am. U. L. Rev. 761, 822 n.252 (2017). The provision of Georgia's anti-SLAPP law that is relevant here applies to any claim "arising from any act" that "could reasonably be construed as an act in furtherance of the … right of petition or free speech … in connection with an issue of public interest or concern." O.C.G.A. § 9-11-11.1(b)(1) (2016). Under the provision, a court must strike any such claim at the outset unless the claimant establishes "a probability that [it] will prevail on the claim." *Id.*

This anti-SLAPP provision provides essential protection to the press—and, ultimately, to the society that the press serves—by promoting early dismissal of frivolous speech-related lawsuits. Early dismissal is essential because "the threat of burdensome litigation," especially burdensome "discovery," "chill[s] speech." *FEC v. Wisc. Right To Life, Inc.*, 551 U.S. 449, 469 (2007) (opinion of Roberts, C.J.). "Many persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through … litigation, will choose simply to abstain from protected speech, … harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003). By authorizing early dismissal of SLAPP claims, Georgia's anti-SLAPP statute minimizes these social costs, and, ultimately, upholds the United States' "profound national commitment" to the ideal that "debate on public issues should be uninhibited, robust, and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

In addition to promoting free speech, Georgia's anti-SLAPP provision forms a vital component of the state's economic policy. Georgia has encouraged media companies to operate in the state—for example, by enacting the Georgia Entertainment Industry Investment Act, which grants tax credits to entertainment companies that do business in the state. O.C.G.A. § 48-7-40.26; *see, e.g.*, Todd Longwell, *Georgia's Production Incentives Seal the Deal for Hollywood*, Variety (Oct. 26, 2018). The Georgia anti-SLAPP statute is one important part of the state's package of incentives for media companies to locate and maintain substantial operations in the

state. As the then-Chairman and CEO of *amicus* MPAA explained, the Georgia General Assembly enacted the statute, in part, to encourage "the film and television industry … to produce more films and shows in the state of Georgia." Chris Dodd, *Why Free Speech is Critical to Film and Television Production in Georgia…and Around the World*, Huffington Post (Oct. 17, 2016).

**II.     EXPERIENCE CONFIRMS THE VALUE OF THE PROTECTIONS PROVIDED BY GEORGIA'S ANTI-SLAPP STATUTE**

Georgia's anti-SLAPP statute does more than protect freedom of speech and the press in theory. The statute also achieves the goal in practice. To begin, consider a few examples of cases in which Georgia defendants have invoked both the provision at issue here and other provisions of the statute to fight back against plaintiffs trying to silence them.

(1) In *Providence Construction Co. v. Bauer*, 494 S.E. 2d 527, 528 (Ga. App. 1997), residents of a community "circulat[ed] petitions," "wr[ote] letters," and "sp[oke] out" against a property developer's efforts to rezone a plot of land. The developer sued for tortious interference with contract. *Id.* But the residents invoked the anti-SLAPP law and secured a quick escape from this "abusive litigation." *Id.*

(2) In *Metzler v. Rowell*, 547 S.E. 2d 311, 312–13 (Ga. Ct. App. 2001), "concerned residents" vocally opposed "the construction of [new] houses" in the neighborhood. The builder hit them with a lawsuit for tortious interference with

contract. *Id.* at 313. But the anti-SLAPP statute enabled the residents to get the case dismissed. *Id.* at 315.

(3) In *Harkins v. Atlanta Humane Society*, 618 S.E. 2d 16, 18 (Ga. Ct. App. 2005), a "long-time animal-rights activist" criticized the operations of an animal-rights charity. The activist made her remarks "in good faith," with the hope that she could "persuade government officials and the public at large to help change the problems" at the charity. *Id.* The charity sued for defamation, but the activist invoked the anti-SLAPP statute to obtain dismissal. *Id.*

(4) In *Boxcar Development Corp. v. New World Communications of Atlanta, Inc.*, No. 08CV2248-10, 2008 WL 1943313, at *1 (Ga. Super. Ct. May 1, 2008), a local news station aired an investigative report alleging that a business had been committing fraud. The business sued the station, which invoked the anti-SLAPP law to defeat the "unfounded lawsui[t]." *Id.* at *2.

(5) In *Adventure Outdoors, Inc. v. Bloomberg*, 705 S.E. 2d 241, 243 (Ga. Ct. App. 2010), Mayor Michael Bloomberg and other New York City officials held a press conference where they accused a Georgia gun seller of making illegal gun sales. The seller sued the officials for slander. *Id.* The Georgia courts ruled that "citizens of other states" (such as the New York officials) could "receive the benefits of the anti-SLAPP statute." *Id.* at 244. The state courts then applied the statute to dismiss the lawsuit, vindicating the officials' "right of free speech." *Id.* at 245.

(6) In *Hindu Temple & Community Center v. Raghunathan*, 714 S.E. 2d 628, 629 (Ga. Ct. App. 2011), a man helped police officers investigate allegations that a religious institution fraudulently charged donors' credit cards more than the donors had agreed to contribute. The religious institution sued him, in addition to "numerous" others who "claim[ed] to have been victimized by [the group's] alleged criminal activity." *Id.* at 116. A dismissal under the anti-SLAPP statute protected the defendant from this "blatan[t] abus[e]" of "the judicial process." *Id.*

(7) In *Rosser v. Clyatt*, 821 S.E. 2d 140 (Ga. Ct. App. 2018), a utility corporation's members criticized the corporation's president, exposing his nepotism and mismanagement. The president resigned, but sued the customers and a local newspaper that reported their criticism for defamation. The court held that the anti-SLAPP statute protected the defendants' exercise of "freedom of speech." *Id.* at 145.

These examples are far from unique to Georgia. Anti-SLAPP statutes in other states have likewise shielded valuable public reporting and other speech from baseless litigation. Consider these cases in which federal courts from across the country have dismissed claims under state anti-SLAPP laws.

(1) In *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1140 (S.D. Cal. 2005), the Associated Press published unaltered photographs that showed "Navy SEALs potentially engaged in abuse of Iraqi prisoners." The SEALs sued the Associated Press for invasion of privacy. *Id.* A federal court applied California's anti-

SLAPP law to dismiss the case and to protect the Associated Press's "right of free speech." *Id.* at 1149.

(2) In *Thomas v. L.A. Times Commc'ns LLC*, 45 F. App'x 801, 802 (9th Cir. 2002), the *Los Angeles Times* published an article questioning the plaintiff's claims to have engaged in heroic exploits during and after the Second World War. The plaintiff sued for defamation. *Id.* Invoking California's anti-SLAPP law, the district court dismissed the case, and the Ninth Circuit affirmed. *Id.* at 802–03.

(3) *Critical Care Diagnostics, Inc. v. American Association for Clinical Chemistry, Inc.*, 2014 WL 634206 (S.D. Cal. Feb. 18, 2014), concerned an article in a peer-reviewed science journal questioning the effectiveness of a medical product at helping detect heart disease. *Id.* at *1. The patent holder of the medical product responded by suing the publisher of the journal for libel and trade libel. *Id.* at *2. The federal district court explained that the article concerned "an issue of public interest," because heart disease is "the leading cause of death for both men and women" in America. *Id.* at *4–5. Applying California's anti-SLAPP statute, the court dismissed the case. *Id.* at *8.

(4) In *Sarver v. Chartier*, 813 F.3d 891 (9th Cir. 2016), the plaintiff alleged that the Oscar-winning motion picture *The Hurt Locker* portrayed him without his consent, in violation of California's right-of-publicity law. Applying California's anti-SLAPP statute, the Ninth Circuit affirmed the dismissal of the case. *Id.* at 906.

(5) In *CanaRx Services, Inc. v. LIN Television Corp.*, 2008 WL 2266348, at *1 (S.D. Ind. May 29, 2008), a local broadcaster aired a news report raising concerns that a

Canadian company had sold illegal and counterfeit pharmaceutical drugs in the United States. The company sued the broadcaster for defamation. *Id.* at *3. The federal court applied Indiana's anti-SLAPP law to dismiss the case. *Id.* at *9.

(6) In *Farah v. Esquire Magazine, Inc.*, 863 F. Supp. 2d 29, 31 (D.D.C. 2012), *Esquire Magazine* published a blog post that satirized a group of birthers (people who questioned whether President Barack Obama was born in the United States and thus eligible to serve as President). The birthers in question, who had published a book entitled *Where's the Birth Certificate? The Case That Barack Obama Is Not Eligible To Be President*, sued for defamation and interference with business relations. *Id.* A federal court applied the District of Columbia's anti-SLAPP law to dismiss the case. *Id.* at 36.

(7) In *Boley v. Atlantic Monthly Group*, 950 F. Supp. 2d 249, 253 (D.D.C. 2013), *The Atlantic* published articles that referred to George Boley, a Liberian public official during the Liberian Civil War of the early 1990s, as a "warlord." The articles also suggested that Boley "belongs in the Hague" for "war crimes." *Id.* Boley sued for defamation. *Id.* at 254. The district court, however, explained that "statements concerning the alleged commission of war crimes … are quintessentially matters of public rather than private interest." *Id.* at 256. Applying the District of Columbia's anti-SLAPP law, the court dismissed the case. *Id.* at 263.

(8) In *Armington v. Fink*, 2010 WL 743524, at *1 (E.D. La. Feb. 24, 2010), the *New York Times Magazine* published an article suggesting that staff at a New Orleans hospital had euthanized patients in the aftermath of Hurricane Katrina. The article

won the Pulitzer Prize in Investigative Reporting, but it also prompted a defamation lawsuit. The district court applied Louisiana's anti-SLAPP statute and dismissed the plaintiffs' claims. *Id.* at *7.

Put simply, state anti-SLAPP statutes do more than protect freedom of speech in theory. They do so in practice. Time and again, these laws have protected media organizations and other speakers from retaliatory lawsuits seeking to suppress protected speech—in Georgia and also in other states.

## III. REFUSING TO APPLY GEORGIA'S ANTI-SLAPP STATUTE IN FEDERAL COURT UNDERMINES GEORGIA'S LEGISLATIVE PRIORITIES

Refusing to apply anti-SLAPP statutes in federal court would severely undercut the Georgia General Assembly's effort to foster vibrant debate on public issues and to encourage media companies to operate in the state. It would mean, for example, that a Georgia journalist who wants to report on a developer, business, or charity located in a different state would have to think about the threat of retaliatory litigation before speaking his mind—contrary to the Georgia General Assembly's objective of encouraging full participation "in matters of public significance" (O.C.G.A. § 9-11-11.1). Similarly, a media company would have to think about the threat of retaliatory litigation before deciding whether to locate and maintain substantial operations in Georgia—as opposed to, say, California, whose anti-SLAPP statute *does* apply in federal court—contrary to the Georgia General Assembly's objective of attracting media companies to the state. These blows to the freedom of speech and to the

11

legislative priorities of the General Assembly are exceptionally important, and they warrant granting CNN's petition for en banc rehearing.

## CONCLUSION

The Court should grant the petition for rehearing en banc, and rule that federal courts sitting in diversity should apply the provision of Georgia's anti-SLAPP statute requiring claimants to show a probability of prevailing on their claims.

Dated: January 10, 2019

Respectfully submitted,

/*s*/ Peter C. Canfield

Shay Dvoretzky  
Yaakov M. Roth  
Anthony J. Dick  
Vivek Suri  
JONES DAY  
51 Louisiana Avenue, NW  
Washington, DC 20001  
Tel: (202) 879-3939  
Fax: (202) 626-1700  
Email: yroth@jonesday.com

Peter C. Canfield  
   *Counsel of Record*  
JONES DAY  
1420 Peachtree Street, NE  
Suite 800  
Atlanta, GA 30309  
Tel: (404) 521-3939  
Fax: (404) 581-8330  
Email: pcanfield@jonesday.com

*Counsel for Amici Curiae*  
*(additional signatures on next page)*

Richard A. Bernstein  
ADVANCE  
One World Trade Center  
New York, NY 10007  
*Counsel for Advance Publications, Inc.*

John Zucker  
Indira Satyendra  
AMERICAN BROADCASTING COMPANIES, INC.  
77 West 66th St., 15th Fl.  
New York, NY 10023  
*Counsel for American Broadcasting Companies, Inc.*

Kevin M. Goldberg  
FLETCHER, HEALD & HILDRETH, PLC  
1300 N. 17th St., Ste. 110  
Arlington, VA 22209  
*Counsel for American Society of News Editors and Association of Alternative Newsmedia*

Jonathan Bloom  
WEIL, GOTSHAL & MANGES LLP  
767 Fifth Ave.  
New York, NY 10153  
*Counsel for Association of American Publishers, Inc.*

Aretae Wyler  
ATLANTIC MEDIA  
600 New Hampshire Ave., NW  
Washington, DC 20037  
*Counsel for Atlantic Media*

Randy L. Shapiro  
BLOOMBERG L.P.  
731 Lexington Ave.  
New York, NY 10022  
*Counsel for Bloomberg L.P.*

Heidi Eddy-Dorn  
COX MEDIA GROUP  
6205 Peachtree Dunwoody Rd.  
Atlanta, GA 30228  
*Counsel for Cox Media Group*

Jason P. Conti  
Jacob P. Goldstein  
DOW JONES & COMPANY, INC.  
1211 Avenue of the Americas, 7th Fl.  
New York, NY 10036  
*Counsel for Dow Jones & Co., Inc.*

Oscar Grut  
THE ECONOMIST NEWSPAPER LTD.  
20 Cabot Square  
London E14 4QW  
United Kingdom  
*Counsel for Economist Newspaper Ltd.*

Tom Curley  
GANNETT CO., INC.  
7950 Jones Branch Dr.  
McLean, VA 22107  
*Counsel for Gannett Co., Inc.*

David E. Hudson  
HULL BARRETT  
801 Broad St., 7th Fl.  
Augusta, GA 30901  
*Counsel for Georgia Press Association*

George Freeman  
MEDIA LAW RESOURCE CENTER, INC.  
266 West 37th St., 20th Fl.  
New York, NY 10018  
*Counsel for Media Law Resource Center, Inc.*

Joshua N. Pila
MEREDITH CORPORATION
425 14th St., NW
Atlanta, GA 30318
*Counsel for Meredith Corporation*


Ben Sheffner
MOTION PICTURE ASSOCIATION OF
    AMERICA, INC.
15301 Ventura Blvd., Bldg. E
Sherman Oaks, CA 91403
*Counsel for Motion Picture Association of
    America, Inc.*


Mickey H. Osterreicher
NATIONAL PRESS PHOTOGRAPHERS
    ASSOCIATION
120 Hooper St.
Athens, GA 30602
*Counsel for the National Press Photographers
    Association*


Jonathan Hart
Ashley Messenger
Micah Ratner
NATIONAL PUBLIC RADIO, INC.
1111 North Capitol St. NE
Washington, DC 20002
*Counsel for National Public
    Radio, Inc.*


Susan E. Weiner
NBCUNIVERSAL
30 Rockefeller Plaza
New York, NY 10112
*Counsel for NBCUniversal*

Carolyn Forrest
NEW WORLD COMMUNICATIONS OF
    ATLANTA, INC.
1551 Briarcliff Rd. NE
Atlanta, GA 30306
*Counsel for New World Communications of
    Atlanta, Inc.*


David E. McCraw
THE NEW YORK TIMES COMPANY
620 Eighth Ave.
New York, New York 10018
*Counsel for The New York Times Company*


Kurt Wimmer
COVINGTON & BURLING LLP
One City Center
850 Tenth St., NW
Washington, DC 20001
*Counsel for News Media Alliance*


Thomas Burke
Eric J. Feder
Laura Handman
Alison Schary
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave. NW
Washington, DC 20006
*Counsel for Online News Association*


Bruce D. Brown
Katie Townsend
Caitlin Vogus
THE REPORTERS COMMITTEE FOR
    FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
*Counsel for Reporters Committee for Freedom of
    the Press*

Hillel Parness
UNIVISION COMMUNICATIONS INC.
605 Third Ave., 12th Fl.
New York, NY 10158
*Counsel for Univision Communications, Inc.*

Jay Kennedy
James A. McLaughlin
Kalea S. Clark
THE WASHINGTON POST
One Franklin Square
Washington, DC 20071
*Counsel for The Washington Post*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations contained in Federal Rule of Appellate Procedure 29(b)(4) because, excluding the portions exempted by Rule 32(f), the brief contains 2566 words, as determined by the Microsoft Word 2016 program used to prepare it.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Garamond.

Dated: January 10, 2019

/s/ Peter C. Canfield
Peter C. Canfield
*Counsel for Amici Curiae*

# CERTIFICATE OF SERVICE

I certify that on January 10, 2019, I electronically filed the foregoing brief with the United States Court of Appeals for the Eleventh Circuit using the ECF system. All parties have consented to receive electronic service and will be served by the ECF system.

Dated: January 10, 2019

/*s*/ Peter C. Canfield

Peter C. Canfield
*Counsel for Amici Curiae*